UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*, <br><br> *Defendants*. | No. 1:25-cv-00495 |

# EXHIBIT 1

Declaration of Robert Evans

# DECLARATION OF ROBERT EVANS

I, Robert Evans, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am currently the Division Chief for Preparedness and Grant Administration with the Illinois Emergency Management Agency and Office of Homeland Security ("IEMA-OHS"). I have worked in FEMA preparedness grant administration for 22 years, almost the entire history of these programs. I was both the Compliance and Finance coordinator for the Homeland Security Grant Program ("HSGP") and Emergency Management Performance Grant Program ("EMPG") from 2003 to 2014. From 2014 to 2017, I managed another preparedness program, the Nonprofit Security Grant Program, and since November 2017, I have managed HSGP and EMPG programs for IEMA-OHS. I make this declaration based on personal knowledge and on my review of information and records gathered by IEMA-OHS staff.

3. IEMA-OHS is an Illinois executive-branch state agency. IEMA-OHS coordinates the State's disaster mitigation, preparedness, response, and recovery programs. As the primary grantee of the Federal Emergency Management Agency ("FEMA") in Illinois, IEMA-OHS administers a wide range of federal programs meant to assist states and localities in preventing and responding to catastrophic events like terrorist attacks and natural disasters.

4. FEMA administers many grant programs where States are the primary grant recipients. IEMA-OHS administers FEMA's annually funded preparedness grants, including the Homeland Security Grant Program.

**I.    Homeland Security Grant Program**

5. Until this year, FEMA has typically released notices of funding opportunities for preparedness grants, including the Homeland Security Grant Program, around February through May of the federal fiscal year ("FFY") for the grant in question. Once FEMA provides notice of a

1

notice of funding opportunity ("NOFO"), IEMA-OHS can apply for an award by submitting a timely application.

6. A true and correct copy of the final fiscal year 2025 NOFO for HSGP, which FEMA posted to grants.gov on August 1, 2025, is attached as Exhibit A to this declaration. Note that, this year, FEMA also posted prior versions of the NOFO on July 28 and July 29, 2025, twice updating the NOFO without explanation. True and correct copies of those prior versions are attached as Exhibits B and C, respectively, for comparison. All references to the HSGP NOFO going forward refer to the final version, attached as Exhibit A.

7. In past years, IEMA-OHS has typically received an HSGP award within four months of application, so that IEMA-OHS can begin drawing funds on the award by the end of the calendar year.

*State Homeland Security Program*

8. I am familiar with the Homeland Security Grant Program, and in particular its sub-component the State Homeland Security Grant Program ("SHSP"). The SHSP provides federal funding to States to build, sustain, and deliver the capabilities necessary to prevent, prepare for, protect against, and respond to acts of terrorism.

9. SHSP funding is administered in Illinois by IEMA-OHS.

10. In addition to using SHSP funds themselves, States may pass SHSP funds through to subgrantees for the same purposes. IEMA-OHS passes approximately 75% of SHSP funds on to county or local fire departments, law enforcement, and other first responders or emergency preparedness offices.

11. Illinois has applied for and received funds from the SHSP since its creation in the USA PATRIOT ACT in 2001.

12. SHSP funds support IEMA-OHS staff salaries focused on terrorism and targeted violence prevention. Statewide efforts include the Illinois School and Campus Safety Program, which provides preparedness trainings in Illinois schools to raise awareness about how to prevent and respond to emergencies and disasters.

13. SHSP funds provide the near-exclusive source of money for the "mutual aid" networks of police departments, fire departments, emergency services, and public works departments across the country. In Illinois, these organizations are, respectively, the Illinois Law Enforcement Alarm System, the Mutual Aid Box Alarm System, the Illinois Emergency Management Mutual Aid System, and the Illinois Public Works Mutual Aid Network. In a major emergency, these networks mobilize first responders from outside the immediate jurisdiction where the disaster took place. Without them, local first responder capabilities would quickly be overwhelmed.

14. SHGP funds components of the Illinois State Police devoted to preventing and responding to terrorist attacks and other extreme criminal acts. First, the Statewide Terrorism and Intelligence Center ("STIC")—the DHS "fusion center" for Illinois—improves information sharing with and between public safety officials, especially as to national trends and critical incidents where local officials have no other immediate source of information. STIC analysts perform a thorough search of all available databases and resources, thus reducing the need for local officials to make numerous contacts with various organizations. Second, the Special Operations Command includes the State Police's Special Weapons and Tactics ("SWAT") team, which is funded with SHSP dollars.

15. State bomb squads, including the State Police's Statewide Weapons of Mass Destruction Team, are partially funded using SHSP dollars.

*Urban Area Security Initiative*

16. I am familiar with the Homeland Security Grant Program, and in particular its sub-component the Urban Area Security Initiative ("UASI"). UASI serves many of the same overall purposes as the SHSP, but it focuses its resources on high-threat, high-density urban areas. FEMA determines the eligible urban areas through an analysis of relative risk of terrorism faced by the 100 most populous metropolitan statistical areas in the United States.

17. UASI funding is administered in Illinois by IEMA-OHS.

18. Illinois has one eligible high-threat, high-density urban area, the Chicago metropolitan statistical area. IEMA-OHS passes approximately 90% of UASI funds on to fire departments, law enforcement, other first responders, and emergency preparedness offices in the greater Chicago area.

19. Illinois has applied for and received funds from UASI since it was created by appropriations statute in 2003.

20. UASI provides funding for the same services discussed above with regard the SHSP, with a particular focus on sub-grantee agencies in the Chicago area.

21. UASI monies provide critical funding for Chicago Office of Emergency Management, the Chicago Crime Prevention and Intelligence Center, and the Cook County Department of Emergency Management and Regional Security.

22. In addition, IEMA-OHS retains about 10% of UASI funds to provide similar support to the Chicago metropolitan statistical directly, including support targeted to areas not within the boundaries of Cook County. UASI funds provide critical support for salaries at the state level in addition to the local level.

**II.     Emergency Management Performance Grant Program**

23.     I am familiar with the Emergency Management Performance Grant Program ("EMPG"). EMPG provides federal funding to States to assist state, local, tribal, and territorial emergency management agencies to implement FEMA's National Preparedness System, including by building continuity-of-government capabilities to ensure essential functions in a catastrophic disaster.

24.     EMPG funding is administered in Illinois by IEMA-OHS.

25.     Because EMPG grants are formula grants and not competitive grants, each State is entitled to a specific allocation whenever a notice of funding opportunity is posted.

26.     In addition to using EMPG funds themselves, States may pass EMPG funds through to subgrantees for the same purposes. IEMA-OHS passes approximately 40% of EMPG funds on to county and municipal emergency management agencies.

27.     Illinois has applied for and received funds from EMPG since it was codified in the Post-Katrina Emergency Management Reform Act of 2006.

28.     IEMA-OHS has two open EMPG awards from FFYs 2023 and 2024:

    a.     FFY 2023: Award of $10,618,545; and

    b.     FFY 2024: Award of $9,504,284.

29.     EMPG funding is the primary enabler to develop both state and local resilience programs for emergency management.

30.     EMPG dollars fund the salaries of IEMA-OHS Operations personnel. Operations personnel lead statewide coordination efforts in response to a disaster or mass casualty event. The EMPG program also funds IEMA-OHS communications, facilities, and vehicles for disaster response.

31. The amounts passed through to localities under the EMPG program likewise fund the salaries of local emergency managers and local support staff across Illinois as well as software and communications to support local emergency response. Without these funds, local jurisdictions will not have sufficient funding support to build emergency management programs, operations plans, and exercise plans which contribute to resiliency and preparedness.

32. EMPG monies fund the ongoing costs of the software program used at the State Emergency Operations Center, which is the physical location where a state emergency manager would direct all strategic and operational activities in the event of a disaster or public health emergency.

33. A true and correct copy of the fiscal year 2025 EMPG NOFO is attached as Exhibit D to this declaration.

### III. Unprecedented Cuts Between NOFO and Award This Federal Fiscal Year

34. IEMA-OHS has *never* experienced any substantial reduction between the NOFO allocations and the final award under the SHSP and UASI programs. In my 22 years of experience in emergency management, I cannot recall a difference between IEMA-OHS's allocation under the NOFO and its final award.

35. The below table shows Illinois's target allocations as provided in the NOFO and the final awards since 2017:

| Year | SHSP NOFO | SHSP Award | Difference | UASI NOFO | UASI Award | Difference |
|---|---|---|---|---|---|---|
| 2017 | $16,391,500 | $16,391,500 | $0 | $68,110,000 | $68,110,000 | $0 |
| 2018 | $15,712,000 | $15,712,000 | $0 | $68,000,000 | $68,000,000 | $0 |
| 2019 | $15,712,000 | $15,712,000 | $0 | $68,000,000 | $68,000,000 | $0 |

| Year | SHSP NOFO | SHSP Award | Difference | UASI NOFO | UASI Award | Difference |
|---|---|---|---|---|---|---|
| 2020[1] | $15,107,000 | $15,107,000 | $0 | $68,000,000 | $68,000,000 | $0 |
| 2021 | $14,427,260 | $14,427,260 | $0 | $68,000,000 | $68,000,000 | $0 |
| 2022 | $13,894,910 | $13,894,910 | $0 | $67,182,000 | $67,182,000 | $0 |
| 2023 | $13,894,910 | $13,894,910 | $0 | $66,174,270 | $66,174,270 | $0 |
| 2024 | $12,505,419 | $12,505,419 | $0 | $59,395,378 | $59,395,378 | $0 |
| 2025 | $10,419,556 | $4,362,750 | **-$6,056,806** | $33,479,819 | $9,395,829 | **-$24,083,990** |

36. Based on my knowledge and experience in this field, the lack of substantial changes in past years reflects long-established practice at FEMA. Until this year, DHS and FEMA have typically released annual, transparent announcements of the risk allocation methodology around December through February of the fiscal year. FEMA has then typically solicited input and feedback from state and local jurisdictions in order to correct any errors or omissions in the yearly allocation before finalizing it in the NOFO.

37. As a result, the risk-based target allocation in each year's NOFO has served as a definitive allocation for that fiscal year.

38. Based on many conversations with counterparts in other States in my two decades in emergency management, any changes between NOFO and final award have typically been minor based on specific adjustments tied to programmatic needs. In my 22 years, FEMA has never before made broad cuts between the NOFO and award stages of the HSGP program.

---

[1] In federal fiscal year 2020, FEMA used "target allocation ranges" instead of a single figure. To be conservative, this table presents the high end of the range rather than the low end, which ultimately corresponded to the final award.

7

39. This year was different. First, the NOFO was delayed. While it typically issues between February and May, this year the months of April, May, and June passed with no indication that DHS had any intention to begin the application process.

40. Not until July 24, 2025, did FEMA reach out to the State of Illinois with a request for feedback on the fiscal year 2025 SHSP/UASI Terrorism Risk Methodology. But the request was woefully incomplete as compared to prior years. FEMA did not offer IEMA-OHS any opportunity to review the actual draft risk profile for Illinois on an individualized basis. The Illinois State Police, a major sub-grantee of IEMA-OHS, responded to FEMA the next day, July 25, asking for the opportunity to review the draft risk profile. FEMA did not respond.

41. On July 28, 2025, the HSGP NOFO issued. As noted above, it had to be updated twice on the grants.gov website until it reached its final form on August 1, 2025. *See* Exhibit A.

42. Even at the NOFO stage, the fiscal year 2025 HSGP NOFO substantially reduced the target allocations to Illinois as compared to previous years, as noted above. *See supra* ¶ 35. As compared to fiscal year 2024, FEMA cut Illinois funding at the NOFO stage by over $2 million for SHSP and by over $25 million for UASI.

43. But the worst was yet to come. On September 27, 2025, FEMA provided IEMA-OHS with its final awards on the HSGP and EMPG programs. Without any explanation, the final award cut IEMA-OHS's allocation for SHSP by $6,056,806, a 58 percent reduction as compared to the NOFO. The final award cut IEMA-OHS's allocation for UASI by $24,083,990, a 72 percent reduction as compared to the NOFO. A true and correct copy of the final award is attached as Exhibit E.

44. These cuts were accomplished by either marking as ineligible or dramatically reducing the proposed funding for specific projects, including: the Statewide Terrorism and

Intelligence Center's cybersecurity intelligence program, statewide law enforcement mutual aid networks, and more. Ex. E at 4–55. The allocation for terrorism research specialists at the Statewide Terrorism and Intelligence Center was reduced from nearly $2 million to a symbolic $1. *Id.* at 22. A proposed project for narcotics interdiction, proposed in response to DHS's own mandate to prioritize border-related activities, was approved but reduced to a symbolic $3. *Id.* at 48. Similarly, a proposed project for screening cargo traffic at O'Hare airport and other Chicago ports for narcotics and firearms distribution was slashed from $3 million to $2 million. *Id.* at 47.

45. All the reductions were accompanied by four words of explanation and nothing else: "Adjusted per DHS directive."

### IV. Unprecedented Cuts to the Periods of Performance

46. The term of FEMA preparedness awards has generally been three years, meaning that the award remains open for a three-year period for completing reimbursable activities. Any program activities supported by the awarded funds must be completed within the time the award remains open.

47. It is typical for FEMA preparedness awards to take several years to fully disburse. The HSGP and EMPG programs have used multi-year periods of performance, sometimes even longer than three years, for almost every year of their existence. Moreover, these programs fund essential ongoing operational needs of state and local public safety agencies. As a result, IEMA-OHS and other state recipients have structured their budgeting systems for HSGP and EMPG grants around multi-year disbursements.

48. IEMA-OHS would be unable to fiscally accommodate a sudden change to a one-year period of performance. There are substantial outstanding funds on prior-year grants yet to be expended for their planned uses approved by FEMA in prior years. A one-year period of performance would place the fiscal year 2025 funds on a direct collision course with prior-year

funds, making it impossible to timely sub-obligate all outstanding awards to their directed purposes.

49. As a concrete example of how FEMA has developed, authorized, and permitted the multi-year budget model, on September 17, 2025, FEMA approved a one-year extension of the period of performance on the FFY 2023 HSGP award through August 31, 2027.

50. In addition, FEMA typically extends flexibility during the multi-year periods of performance to make adjustments to funding lines by using the required biannual strategy implementation reports to re-calibrate needs as they evolve during the grant period. The biannual report adjustments represent another way in which FEMA has built multi-year periods of performance into the basic functioning of HSGP and EMPG.

51. This year, in keeping with past practice, the HSGP and EMPG NOFOs announced that there would be a three-year period of performance for both programs. Ex. A at 4; Ex. D at 4.

52. Both NOFOs explained that applications should frame their budget needs by reference to the anticipated three-year period of performance. HSGP stated that projects must be "able to be fully completed within the three-year period of performance." Ex. A at 38. EMPG stated that "[e]ach goal must be specific, measurable, and achievable within the period of performance." Ex. D at 50.

53. IEMA-OHS proposed projects for both NOFOs on that understanding.

54. Yet, without explanation, when the awards issued, the period of performance was reduced to one year on both awards, running from October 1, 2025, to September 30, 2026.

55. IEMA-OHS will face great challenges in obligating the monies on a suddenly truncated period of performance. The ultimate result is likely to be that allocated monies will expire

unused, depriving Illinois of millions of dollars in needed funds for emergency management and preparedness.

56. In my 22 years of experience, I have never seen FEMA reduce the period of performance announced in a NOFO and relied upon by applicants like this.

V. **Harms to Preparedness Efforts Caused by DHS's Funding and Performance-Period Cuts**

57. The Homeland Security Grant Program funds mutual aid organizations for law enforcement, fire services, emergency services, and public works. *See supra* ¶ 13. These organizations rely on Homeland Security Grant Program funding for 100% of their operating budgets and would be forced to shut down if FEMA cuts off funding.

58. The Urban Areas Security initiative funds the Urban Area Working Group, which coordinates response from Chicago, Cook County, and its municipalities during a disaster, terrorist attack, or other mass-casualty event. This coordinated effort relies entirely on FEMA funds, so their termination could leave one of the most populous areas of the country without a coordinated response to the next disaster.

59. The Emergency Management Performance Grant program funds the salaries of state and local emergency management staff as well as equipment and facilities. *See supra* ¶¶ 30–31. 119 local emergency management agencies in Illinois could be shut down if EMPG funding is discontinued. These local emergency management agencies are first line of defense during a disaster. At the state level, IEMA-OHS operations could likewise be decimated, leaving no state agency to coordinate disaster response.

60. The State does not have the budgetary resources or flexibility to make up for the lost funding without drawing funding away from other important public safety and law enforcement operations.

11

61. The categorical freeze on FEMA funds that FEMA imposed from early February 2025 through April 4, 2025 provides direct evidence of the impending effects of the new funding conditions.

62. Between February 14 and April 4, 2025, IEMA-OHS received almost no disbursements of any FEMA funds on any of its active awards. There were two minor exceptions: On February 24, 2025, FEMA released approximately $18,827.28 on one Hazard Mitigation grant; and on April 2, 2025, FEMA released $12,548.43 related to two Public Assistance grants.

63. As a result of this freeze, by April 4, 2025, IEMA-OHS had $63,683,672.01 of payment requests pending with FEMA payment systems. The consequences of the recent funding freeze directly illustrate what will come to pass because of the new funding conditions if they are allowed to go into effect.

64. During the funding freeze, mutual aid organizations for law enforcement, fire services, emergency services, and public works in Illinois, discussed *supra* ¶ 13, were operating on reserve funding. IEMA-OHS had disbursed a fiscal quarter's worth of payroll funding to the mutual aid organizations on or about January 28, 2025, before the freeze went into effect. The mutual aid organizations advised IEMA-OHS that they could only continue to operate through June 2025, at which point they would have needed to curtail their operations.

65. During the funding freeze, the Cook County Department of Emergency Management and Regional Security discontinued all discretionary activities including trainings, local emergency management funding, and its own support for the police, fire, emergency services, and public works mutual aid organizations. Even a temporary disruption in funds therefore undermines statewide preparedness for natural disasters and terrorist attacks.

66.     These examples of the effects of a temporary funding freeze for approximately two months in February and April only hint at the effects of a permanent reduction of funds, which would ultimately require winding down the many preparedness programs that protect Illinois residents from life-threatening dangers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of September, 2025, in Springfield, Illinois.

_____  9-29-25

Robert Evans
Division Chief
Division of Preparedness and Grant Administration
Illinois Emergency Management Agency and Office of
    Homeland Security