UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>        *Plaintiffs*,<br><br>  v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>        *Defendants.* | No. 1:25-cv-00495 |

# EXHIBIT 8

Findings of Fact Conclusions of Law and Order, *Bennett v. Butz*, No. 4-73 Civil 284 (D. Minn. June 25, 1973)

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| Joseph Bennett and Marguerite Richards, individually and on behalf of all other persons similarly situated, and,<br><br>Northwoods Welfare Committee Anoka County, an unincorporated association, and,<br><br>National Welfare Rights Association, an unincorporated association,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>Earl L. Butz, Secretary of Agriculture of the United States, and,<br><br>Edward J. Hekman, Administrator of the Food and Nutrition Service of the United States Department of Agriculture, and<br><br>James Kocher, Director of the Food Stamp Division of the Food and Nutrition Service of the United States Department of Agriculture,<br><br>　　　　　　　Defendants. | No. 4-73 Civil 284<br><br>FINDINGS OF FACT<br>CONCLUSIONS OF LAW<br>AND ORDER<br><br>Filed JUN 25 1973 19____<br>Harry A. Sieben, Clerk<br>By _Eleanor M____<br>　　　　　　　Deputy |

- - - - - - - - - - -

　　Marino, Becker & Granquist, by Luther A. Granquist, 501 Park Avenue, Minneapolis, Minnesota 55415, attorneys for plaintiff. Ronald F. Pollack and Roger A. Schwartz, 25 West 43rd Street, New York, New York 10036, attorneys for plaintiff National Welfare Rights Association.

　　Robert G. Renner, United States Attorney, by Thorwald Anderson, Assistant United States Attorney, 596 U.S. Court House, Minneapolis, Minnesota 55401, attorneys for defendants.

- - - - - - - - - - -

　　This matter came on for hearing before the Court on June 14, 1973, on plaintiffs' motion for a preliminary injunction. On the basis of the records and proceedings herein, the Court makes the following findings of fact and conclusions of law:

FPI-MI—1-30-73-20M-8744

-1- 

## FINDINGS OF FACT

1. The Food Stamp Program is a federally initiated program intended to provide increased food purchasing power to low-income households and to strengthen the agricultural economy. Under this program, eligible low-income households purchase food coupons or food stamps which have a face or monetary value greater than the purchase price. The difference -- the bonus or free coupons -- is subsidized by the federal government under the administration of the United States Department of Agriculture.

2. The Food Stamp Program formally began in 1964 after the enactment of the Food Stamp Act of 1964, 7 U.S.C. § 2011 et seq. Prior to 1964, successful pilot programs had established that greater food consumption and better nutritional standards were achieved by this program.

3. In the years that followed, the Congress has steadily increased appropriations for the Food Stamp Program, from a beginning figure of $75 million in 1964 to $2.5 billion in fiscal year 1973.

4. For fiscal year 1972, a total of $2.285 billion was appropriated for the Food Stamp Program. Of this sum, a total of $368 million was not spent and was duly noted as an unobligated balance lapsing.

5. In the Budget Message submitted to the Congress in January 1973, the predicted unobligated balance lapsing from the Food Stamp Program appropriation for fiscal year 1973 was set at $302 million. The estimated unobligated balance would, of necessity, have been known to the defendants prior to the actual submission of the budget to the Congress.

6. According to the testimony of George Hall, Budget Director for the Food and Nutrition Service of the United States Department of Agriculture, the current estimated unobligated balance which will lapse for fiscal year 1973 is $250 million.

FPI-MI—1-30-73-20M-8744

-2-

7.  The plaintiffs claim that in accordance with standard federal fiscal policies the portion of the food stamp appropriation which is not obligated by June 30, 1973, will revert to the general treasury and be unavailable for further expenditures after that date.

8.  Budget Director Hall testified that he believed that any unobligated balance which would lapse as of June 30, 1973 could subsequently be withdrawn if this Court were ultimately to find that the defendants abused their discretion or otherwise failed to follow statutory directives in their administration of the Food Stamp Program in fiscal year 1973. He based his judgment upon a portion of the General Accounting Office, Policy and Procedures Manual for Guidance of Federal Agencies, Title 7, Fiscal Procedures, Section 20.1, which reads as follows:

> The need for restoration is usually caused by unforeseen contingencies, an understatement of an obligation, or other circumstances which result in increasing the actual obligations beyond the obligated balance in the applicable account.

Mr. Hall testified that this provision provides a basis to argue that restoration could be made if this Court were not to issue the requested preliminary relief. He also acknowledged that between an appropriate court order and the possibility of restoration without a court order, the order provided more assurance that the unobligated balance would ultimately be available for expenditure.

9.  Mr. Hall's testimony is inconsistent with a statement made in the affidavit of Clayton K. Yeutter, Assistant Secretary of Agriculture for Marketing and Consumer Services that compliance with any final order of this Court "would be promptly effectuated and any increased costs resulting would be borne out of appropriations available at the time the funds become obligated." This statement by Assistant Secretary Yeutter undercuts the already weak position taken by Mr. Hall.

FPI-MI—1-30-73-20M-8744

10. The Court finds that the likelihood that the unobligated balance lapsing from the fiscal year 1973 appropriation will be unavailable for expenditure after June 30, 1973 if the requested preliminary relief is not granted is great. Such a return of funds to the general fund would irreparably harm the plaintiffs and the class of persons they seek to represent.

11. The Court finds that a minimal burden would be placed upon the defendants by granting the requested preliminary relief and would involve merely an accounting procedure to record the obligation of the funds in question.

12. The Court finds that the plaintiffs have raised substantial questions regarding the defendants' administration of the Food Stamp Program during fiscal year 1973 after they forecast that a substantial unobligated balance would lapse. The Court finds that the statements in Assistant Secretary Yeutter's affidavit do not establish that the plaintiffs have no chance of success on the merits. There are factual issues which merit further and detailed exploration.

13. Specifically, the Court finds that even if the Economy Diet Plan as implemented by the defendants were the proper basis for the food coupon allowance established by the Secretary, a substantial issue is raised whether an adjustment in that allowance could have been implemented earlier in fiscal year 1973 in light of rising food costs and have resulted in a reduction in the unobligated balance for that fiscal year. The Court also finds that the increased coupon allowances to become effective July 1, 1973 do not appear to have increased the food purchasing power of low-income households in a manner commensurate with the increased cost of food. The Court also notes that substantial questions have been raised regarding the adequacy of the outreach program required pursuant to 7 U.S.C. § 2019(e). The Court, of course, makes no definitive

finding on these issues at this stage of the litigation.

14. The purpose of the Food Stamp Program is the elimination of hunger and malnutrition in the United States. Since substantial questions regarding the implementation of that program to achieve that end have been raised in this action, the public interest would be served by ordering preliminary relief which assures that effective relief could ultimately be granted if the plaintiffs prevail on the merits.

CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1337 of this case arising out of an act of Congress regulating commerce. The Court makes no ruling on the allegation that jurisdiction also exists under 28 U.S.C. §§ 1331 and 1361 or under the Administrative Procedure Act, 5 U.S.C. § 702-04.

2. The legal standard for the granting of a preliminary injunction is set forth in <u>Minnesota Bearing Company v. White Motor Company</u>, 470 F.2d 1323, 1326 (8th Cir. 1973):

> In order to justify the issuance of a preliminary injunction by the trial court, the movant has the burden of showing:
>
> (1) substantial probability of success at trial by the moving party, and
>
> (2) irreparable injury to the moving party absent such issuance.
>
> Other factors which may be considered in the decision to grant or to deny the request are the absence of substantial harm to other interested parties, and the absence of harm to the public interest.

It is the Court's conclusion that the plaintiffs in this matter have made a sufficient showing based on the above principles in order to warrant the granting of the preliminary injunction.

3. At this stage of the proceedings, plaintiffs need not establish with an absolute certainty that they will succeed on the merits, but only a substantial probability of success. The thrust of the plaintiffs' allegations strike at the very core of the Food

FPI-MI—1-30-73-20M-8744

-5-

Stamp Program. Plaintiffs make very serious claims that the program is not being carried out in all ways consistent with the stated purposes and goals as set forth by Congress. The allegations raise substantial questions regarding the defendants' administration of the Food Stamp Program during fiscal year 1973, after they forecast that large sums of funds would not be obligated. Although the matter is at a very preliminary stage and there has been no discovery, it is the Court's conclusion that the plaintiffs have met this burden of establishing a substantial likelihood of success on the merits.

4. If no preliminary injunction were to issue, the funds unobligated for 1973 would lapse into the general fund and may well be unavailable if the plaintiffs were to succeed on the merits. Thus, the likelihood of irreparable harm to the plaintiffs is clear.

5. Moreover, the effect of a preliminary injunction on the defendants appears to be minimal.

6. As for the public interest, it will be served if the Act is carried out consistent with the intent of Congress in enacting it and would not be harmed by the issuance of a preliminary injunction.

7. In accordance with the findings above and in light of 31 U.S.C. § 200(d) and 31 U.S.C. §§ 701 et seq., the Court concludes that injunctive relief is required to assure that the unobligated balance in the fiscal 1973 food stamp appropriation will not revert to the general fund after June 30, 1973 and thereafter be unavailable for restoration and ultimate expenditure.

8. Preservation of the status quo pending the hearing and determination of this action requires that the Court order the defendants to obligate the funds at issue to be disbursed in accordance with further order of this Court.

9. This Court's order constitutes documentary evidence of an

FPI-MI—1-30-73-20M-8744

obligation of the United States pursuant to 31 U.S.C. § 200(a).

10. Nothing in this order is intended to require expenditure of the sums so obligated. This Court specifically reserves the power to vacate this order should the plaintiffs fail to prevail on the merits, and thereby to permit the funds at issue to revert to the general fund.

THEREFORE, IT IS ORDERED

That the defendants Butz, Hekman and Kocher, their agents and employees,

1. shall no later than June 29, 1973, record as an obligation of the United States pursuant to 31 U.S.C. § 200(a)(6) and (8) all such sums appropriated for the Food Stamp Program for the fiscal year ending June 30, 1973, pursuant to Public Law 92-399, including the contingency reserve specified therein, which are not otherwise obligated as of that date or to become duly obligated thereafter, and,

2. shall refrain from withdrawing any unobligated balance from said appropriation in any manner which would cause or permit the reversion of said unobligated balance to the general fund, and,

3. shall retain all such sums obligated pursuant to paragraph one (1) of this order as an obligated balance against the appropriation referred to herein until further order of this Court.

IT IS FURTHER ORDERED that a copy of this order may be served upon the defendants and other responsible officials of the United States Department of Agriculture by any United States Marshal or any other person of suitable age and discretion.

Dated: June 25, 1973

Miles W. Lord
United States District Judge

FPI-MI—1-30-73-20M-8744

-7-