UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>    *Plaintiffs*,<br><br> v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al*.,<br><br>    *Defendants*. | No. 1:25-cv-00495 |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER AND UNOPPOSED MOTION TO EXTEND COMPLIANCE DEADLINES**

  Defendants respectfully move the Court to reconsider its September 30, 2025 Temporary Restraining Order ("TRO"), ECF No. 14, by: (1) narrowing the TRO to govern only contested funds—namely, funding obligated to States who received an award amount substantially higher or substantially lower than the amount outlined in the Fiscal Year 2025 Homeland Security Grant Program Notice of Funding Opportunity; and (2) eliminating the requirements that Defendants rescind all fiscal year 2025 Homeland Security Grant Program award notifications, de-obligate the associated funds, and file confirmation of that recission and de-obligation. *See* TRO ¶¶ 2, 3.

  To avoid unnecessary emergency motion practice during the pendency of this motion, the parties have agreed to: (1) extend Defendants' deadline in the TRO to rescind the Fiscal Year 2025 Homeland Security Grant Program awards and de-obligate the associated funds until the Court rules on the reconsideration motion; and (2) extend the deadline for the parties to file a status report regarding further proceedings in this case until three days after the Court rules on

1

this motion. The parties further agree that the TRO will remain in effect through the new status report deadline.

For the reasons set forth below, the Court should grant Defendants' motion because the requested modifications to the TRO are necessary in the interest of justice and further the interests of parties, non-parties, and the public.

## BACKGROUND

On September 30, 2025, this Court entered TRO as to grants administered by the United States Department of Homeland Security ("DHS") as part of the Homeland Security Grant Program ("HSGP"). *See* ECF No. 14. Paragraphs 2-4 of the TRO state:

2. Defendants are directed to rescind all fiscal year 2025 Homeland Security Grant Program award notifications and de-obligate the associated funds; and

3. Defendants are enjoined from disbursing, processing, returning to the U.S. Treasury, re-programming, re-allocating, or otherwise making unavailable by any means all fiscal year 2025 Homeland Security Grant Program funds appropriated by Congress; and

4. The statutory lapse of the funds appropriated by Congress for the fiscal year 2025 Homeland Security Grant Program is immediately suspended pending further order of the Court, pursuant to the Court's equitable authority, 31 U.S.C. § 1502(b), and any other applicable provision of law;

The Court ordered Defendants to file confirmation of the "rescission and de-obligation of the fiscal year 2025 Homeland Security Grant on the Court's docket within 72 hours." *Id*. at 2. Additionally, the Court directed the parties to submit a proposed schedule for further proceedings.

Following entry of the Court's order, the parties conferred and agreed to extend the deadline for Defendants to file the required certification of recission and de-obligation until Tuesday, October 7. *See* ECF No. 21.

The parties conferred again on Monday, October 6. Based on these conferrals, the parties agree that the submission of a status report proposing a schedule for further proceedings should occur three days after the Court rules on this motion. The parties also agree to extend Defendants' deadline outlined in the TRO to rescind the Fiscal Year 2025 Homeland Security Grant Program awards and de-obligate the associated funds until the Court rules on this motion. Further, the parties agree the TRO will remain in effect through the new status report deadline.

Additionally, the parties conferred about (1) narrowing the TRO to apply only to the contested funds at issue in this case, not to all HSGP grant award, and (2) modifying the TRO to eliminate the requirement that Defendants "rescind and de-obligate" HSPG grant awards and associated funds. Plaintiffs were unable to consent to these two modifications without understanding Defendants' position as to why the proposed modifications to the TRO would not moot Plaintiffs' claims. Plaintiffs will file a response outlining their position as to each proposed modification on or before Friday, October 10, or as separately ordered by the Court.

## LEGAL STANDARD

A district court "has the inherent power to reconsider its interlocutory orders." *Fernández–Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008). It is well established that a federal court's reconsideration of its orders is warranted where necessary to correct a clear error of law or to prevent manifest injustice. *See Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22-23 (1st Cir. 1985) (Breyer, J.) (noting a court's inherent power to provide relief from its decisions "as justice requires"); *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (stating reconsideration is appropriate when the original decision "was based on a manifest error of law or was clearly unjust").

## ARGUMENT

**I.     The TRO Should Be Narrowed to Apply Only to Funding Allocated to Jurisdictions that Received Final Awards Substantially Increased or Decreased Relative to Their NOFO Target Allocations.**

The Court's TRO is overly broad because it applies to "*all* fiscal year 2025 Homeland Security Grant Program" awards, including awards that are not challenged in this case. *See* TRO ¶¶ 2-3. Accordingly, the TRO should be narrowed to apply only to funding allocations challenged by and impacting the Plaintiff States—specifically, 2025 HSGP funding to jurisdictions that received final awards substantially increased or decreased relative to the target allocations stated in the Fiscal Year 2025 HSGP Notice of Funding Opportunity ("NOFO") posted by DHS on August 1, 2025. *See* ECF No. 3-3 ("August 1 NOFO").

Modifying the TRO to allow HSGP funding to be awarded, obligated, and disbursed in jurisdictions that received final funding allocations substantially similar to the target allocations stated in the HSGP NOFO will not harm Plaintiffs. The ultimate relief Plaintiffs seek in this lawsuit is a reduction in the amount of money awarded to a small number of States that received final HSGP awards substantially above the levels stated in the August 1 NOFO. The Plaintiff States' alleged financial harm would be fully remedied by a reallocation of that contested additional funding. Consequently, there is no factual, legal, or equitable basis for the Court's TRO to apply to "all" HSGP grant awards.

The interest of justice is not furthered by an injunction that would prevent the disbursement of money to States that received final HSGP awards that were substantially similar to the amounts in the August 1 NOFO. Narrowing the TRO to govern only contested funds is in the interest of justice, as it is necessary to prevent harm to non-parties in the form of delayed receipt—likely for months—of HSGP funds. Additionally, a narrower TRO would reduce the risk of potential litigation—whether through intervention in this lawsuit or the filing of separate

lawsuits—that could result from a restriction that prohibits the disbursement of HSGP grant funding to these other States. Such litigation would likely complicate and prolong this case, and demand the expenditure of additional resources from both Parties and the Court.

As currently written, however, the TRO requires the de-obligation of HSGP funding to *all* jurisdictions and enjoins the disbursement of *all* HSGP funds. The TRO thus sweeps unnecessarily broadly despite the fact that, on September 27, 2025, the majority of states and municipalities received final funding allocations similar to their target allocations stated in the HSGP NOFO[1], and Plaintiffs do not challenge the funding allocations to those jurisdictions. *See* TRO Mot., ECF No. 3; Compl., ECF No. 1.

Modifying the TRO to apply only to the contested funding allocations is consistent with the requirement that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation marks omitted); *see Trump v. CASA, Inc.,* 606 U.S. 831, 861, (2025). The heart of Plaintiffs' challenge is to the so-called "Reallocation Decision." *See* ECF No. 1 at 42 (asking the Court to declare the Reallocation Decision unconstitutional and/or unlawful, set aside the Reallocation Decision, and direct Defendants to obligate fiscal year 2025 HSGP funds consistent with the target allocations set forth in NOFOs). Plaintiff States challenge Defendants' "decision to reallocate hundreds of millions of dollars from Plaintiff States to others[.]" ECF No. 3 at 28. They take issue with the funding allocations in eight jurisdictions that "received awards reduced substantially relative to [their] NOFO allocations"—California,

---

[1] The Federal Emergency Management Agency ("FEMA") has advised that the list of jurisdictions that received final funding allocations similar to their target allocations stated in the HSGP NOFO includes Alabama, Alaska, Arkansas, Connecticut, Delaware, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Montana, Nebraska, Nevada, New Hampshire, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Dakota, South Carolina, Utah, Vermont, Washington, and West Virginia.

District of Columbia, Illinois, Massachusetts, Minnesota, New Jersey, New York, and Washington—and in states that received awards substantially increased relative to their NOFO allocations—Texas, Missouri, North Carolina, Indiana, Iowa, North Dakota, Tennessee—ECF Nos. 3 at 11-12; 1 at 27-28.[2] Simply put, Plaintiffs allege that money was taken from a short list of states and reallocated to another short list of states. Their concern, therefore, is limited to the allocation (or alleged "re-allocation") of a specific pool of money. Accordingly, this Court's TRO compelling and restraining Defendants' actions should be modified to apply only to this limited pool of money, rather than to *all* fiscal year 2025 HSGP funds.

The Court should therefore modify the TRO to apply only to fiscal year 2025 HSGP funding allocated to jurisdictions that received final awards substantially increased or decreased relative to their NOFO target allocations, thereby permitting the disbursement of HSGP funds to jurisdictions whose final awards are substantially similar to their NOFO target amounts.

**II.     The TRO Should Be Narrowed to Enjoin Only the Disbursement of Funds by Defendants, Not Affirmatively Require the Recission and De-Obligation of Funds.**

Defendants also request the Court strike paragraph 2 from the TRO. That provision requires Defendants to "rescind fiscal year 2025 Homeland Security Grant Program award notifications and de-obligate the associated funds[.]" ECF No. 14. The requirement to "rescind" and "de-obligate" awarded funds would significantly alter the status quo and impose affirmative obligations on Defendants that could adversely impact the potential availably of the funds to the parties at the conclusion of this litigation. *See AARP. v. Trump*, 605 U.S. 91, 96, (2025) ("District courts should approach requests for preliminary relief with care and consideration" and emphasizing that the "purpose of such relief is merely to preserve the relative positions of the

---

[2] FEMA has advised that, in addition to the jurisdictions listed by Plaintiffs, Arizona, Ohio, Virginia, Wisconsin, Florida, and Colorado received awards substantially increased relative to their HSGP NOFO allocations.

parties pending further proceedings") (internal quotations omitted). "The purpose of a TRO is to preserve the status quo—'freezing an existing situation'—before the court holds a hearing on a motion for preliminary injunction." *See Ayinkamiye v. Rhode Island Coll.*, No. CV 17-54S, 2017 WL 1365113, at *2 (D.R.I. Feb. 22, 2017), *report and recommendation adopted*, No. CV 17-054 S, 2017 WL 1365996 (D.R.I. Apr. 12, 2017). Here, the Court imposed an "atypical" mandatory injunction that altered the status quo by requiring Defendants to take affirmative action that would provide Plaintiffs with part of the ultimate relief they are seeking, namely the recission and de-obligation of grant funding provided to other recipients, instead of simply "freezing" the funding as it existed at the time of the lawsuit. *Id.*

When this lawsuit was filed on September 30, DHS had issued final HSGP grant awards to various States, including the Plaintiffs States who filed suit here. *See* ECF Nos. 3-7, 3-18, 3-19, 3-20 (award notification letters to IL, NY, MN, CA). The issuance of these grant award letters constituted a legal obligation of funds under established fiscal law principles. *See* 31 U.S.C. 1501(a)(5) (explaining the "documentary evidence" required to record a grant "as an obligation of the United States Government"). An obligation is a commitment by a federal agency "that creates a legal liability of the government for the payment of goods and services ordered or received . . . ." *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1319 (2020) (internal quotations and citation omitted).

The imposition of time limits on appropriations is one of the primary ways Congress exercises control over its Appropriations Clause power. A time-limited appropriation is available to incur an obligation only during the period of time designated by Congress. *See* 31 U.S.C. § 1502(a) (stating that "the balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of

7

availability"). For the fiscal year 2025 HSGP program, Congress gave DHS one year, until September 30, 2025, to obligate the funds. *See* Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 607, (1)–(2); Full-Year Continuing Appropriations and Extensions Act of 2025, Pub. L. No. 119-4, § 1101(a)(6), 139 Stat. 9, 11. After September 30, federal law prohibits DHS from incurring any new obligations with the funds. *See* 31 U.S.C. § 1502(a).

Given these well-established fiscal law principles, Defendants are concerned that that if the challenged funds are rescinded and de-obligated, Defendants will not be able to re-obligate the money again in the future to anyone, including Plaintiffs. Defendants acknowledge that the TRO suspended the "statutory lapse of the funds appropriated by Congress for the fiscal year 2025," but it is far from clear whether the Court's equitable authority extends so far as to suspend or re-write the time limits Congress has imposed on appropriations statutes pursuant to its Appropriations Clause power. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 428 (1990) (stating that a fundamental purpose of the Appropriations Clause is to ensure that federal funds are spent only "according to the letter of the difficult judgments reached by Congress . . . .") "[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483 (2001). And while Plaintiffs argued in their TRO motion that this Court has equitable power to prevent appropriations from lapsing, *see* Pls.' Mot at 19-21, the line of cases from the 1970s establishing that principle has more recently been criticized as "belonging to a time when courts took a much more freewheeling approach to remedies." *Goodluck v. Biden,* 104 F.4th 920, 928 (D.C. Cir. 2024); *see also Trump v. CASA, Inc.*, 606 U.S. 831 (2025) (stating that

8

courts' equitable authority "encompass only those sorts of equitable remedies traditionally accorded by courts of equity' at our country's inception") (internal quotations omitted).

The TRO also cited 31 U.S.C. § 1502(b) as a basis to extend the lapse date, but that provision has no application here. Section 1502(b) provides that "a provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance." In this case, the appropriations provision provides that available funds lapse if not obligated by September 30, not that the funds will be returned to the Treasury's general fund on that date. When budget authority lapses, appropriated funds remain in an agency's Treasury account for a period of five years to liquidate obligations incurred before the lapse date. *See* 31 U.S.C. § 1553. After those five years, funds revert to the Treasury's general fund, as provided under 31 U.S.C. § 1551, *et seq*. Section 1502(b) thus cannot be read as authorizing the Court to extend or suspend the lapse date of the fiscal year 2025 HSGP funds.

To avoid the potential complications from having the challenged funds remain in an unobligated status after the statutory lapse period, the Court should amend the TRO to strike paragraph 2. Such a result would preserve the status quo as it existed at the time Plaintiffs filed this lawsuit. And nothing about limiting the TRO in this respect would preclude Plaintiffs from seeking that additional relief after further briefing on its appropriateness at a later stage of this case. Further, the prohibition in paragraph 3 of the TRO is sufficient to avoid any disbursement or diminution of the funds. That provision enjoins Defendants "from disbursing, processing, returning to the U.S. Treasury, re-programming, re-allocating, or otherwise making unavailable

by any means" the challenged funds. Accordingly, there is no risk that the challenged funds will be given to another recipient.

This more limited approach is consistent with a recent decision from the Southern District of New York in a case raising a similar challenge to HSGP grant awards. *See State of New York v. Noem*, 28-CV-8106 (AK) (S.D.N.Y.). There, the TRO was limited to enjoining Defendants from "[o]bligating" or "[d]isbursing, processing, returning to the U.S. Treasury, or otherwise making unavailable to plaintiff by any means" the challenged funds at issue in that case. *See* Exhibit 1. The TRO in *New York* did not contain the more expansive and problematic requirement to "rescind" and "de-obligate" funds that had previously been awarded to grant recipients. Given the potential complications associated with that broader form of relief, the Court should modify the TRO in this case to match the TRO in *New York* to enjoin Defendants only from *further* obligating and disbursing funding without requiring the recission of grant awards or de-obligation of funds.

### III. The Court Should Stay the Requirement to Rescind and De-Obligate All HSGP Grant Awards Pending Resolution of this Motion.

As noted above, the parties have conferred and agree the Court should stay Defendants' obligation to file confirmation of the rescission of all HSGP awards and de-obligation of associated funds during the pendency of this motion. The parties also agree that the Court should extend the deadline for the parties to submit a proposed schedule for further proceedings until three days after resolution of this motion. Resolution of this motion is likely to impact how the parties proceed going forward and the timeline for doing so. Accordingly, party and judicial economy would be furthered by extending the deadline for the parties to submit proposed schedules governing future proceedings until the Court rules on this motion.

## **CONCLUSION**

For the reasons stated above, Defendants' motion for reconsideration of the TRO should be granted. A proposed order granting Defendants' unopposed motion to extend compliance deadlines is attached as Exhibit 2. Also attached is a proposed order granting Defendants' motion for reconsideration and containing an amended TRO, Exhibit 3, and a redline showing changes from the original TRO, Exhibit 4.

Dated: October 7, 2025                    Respectfully submitted,

                                                      BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

ANDREW WARDEN
Assistant Branch Director
Federal Programs Branch

*/s/ Alexandra L. Yeatts*
ALEXANDRA L. YEATTS
*Trial Attorney*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov
CA Bar No. 358762

*Attorney for Defendants*