UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>     *Plaintiffs*,<br><br> v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al*.,<br><br>     *Defendants*. | No. 1:25-cv-00495 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER**

  The Parties agree this Court's September 30, 2025 Temporary Restraining Order ("TRO"), ECF No. 14, should be narrowed to govern only the fiscal year 2025 Homeland Security Grant Program ("HSGP") funds contested in this suit: the total amount of funding allocation increases and decreases experienced by jurisdictions between the NOFO target allocation stage and the final award allocation stage. Narrowing the TRO to govern only contested funds is necessary in the interest of justice, and would permit Defendants to: (1) disburse funds up to the Notice of Funding Opportunity ("NOFO") target allocation in any jurisdiction that received a final award allocation higher than or equal to its NOFO target allocation; and (2) disburse funds up to the final award allocation in any jurisdiction that received a final award allocation lower than its NOFO target allocation.

  The Parties disagree, however, about what the status of the contested funds should be during the pendency of this litigation. Plaintiffs ask the Court to order the de-obligation of the contested funds, but that action risks making the funds unavailable to incur new obligations at

1

the conclusion of this litigation. Instead, the Court should limit the TRO to enjoining the disbursement of the contested funds. That interim relief would preserve the status quo and prevent any unfairness that could result to non-party jurisdictions whose funding is rescinded, de-obligated, and potentially unavailable for return should Defendants prevail in this case.

I.  **The Parties Agree the TRO Should be Narrowed to Apply Only to Contested Funds.**

On October 7, 2025, Defendants respectfully moved for the Court to reconsider its TRO by: (1) narrowing the TRO to govern only contested funds—namely, funding obligated to States who received an award amount substantially higher or substantially lower than the amount outlined in the Fiscal Year 2025 Homeland Security Grant Program NOFO[1]; and (2) eliminating the requirements that Defendants rescind all fiscal year 2025 HSGP award notifications, de-obligate the associated funds, and file confirmation of that recission and de-obligation. *See* Defendants' Motion for Reconsideration of TRO, ECF No. 27.

In response, Plaintiffs agreed that the TRO should be narrowed to govern only the contested funds. Plaintiffs' Opposition to Defendants' Motion for Reconsideration of TRO, ECF No. 28 at 1 ("Plaintiff States do not oppose defendants' request to narrow the TRO to immediately contested funds"). However, Plaintiff States defined "contested funds" more

---

[1] In their motion for reconsideration, Defendants stated that "the majority of states and municipalities received final funding allocations similar to their target allocations stated in the HSGP NOFO," ECF No. 27 at 5, and included a list of jurisdictions the Federal Emergency Management Agency ("FEMA") considers to have received final funding allocations "similar" to their NOFO target allocations, *Id*. at 5 n.1. In their response, Plaintiffs take issue with Defendants' inclusion in the list of states that "received millions of extra dollars in HSGP funding," ECF No. 28 at 5. While the list is no longer relevant given Defendants' agreement to adopt Plaintiffs' definition of "contested funds" and their accompanying calculations, to provide assurance that Defendants in no way intended to mislead the Court, Defendants clarify that FEMA considered a state to have a final award amount "similar" to its NOFO target when the delta between the state's NOFO target allocation and final award allocation constituted a relatively small percentage of the state's NOFO target allocation.

expansively than Defendants did in their motion. Plaintiffs define "contested funds" as the "total amount of funding that defendants reallocated between the [Notice of Funding Opportunity ("NOFO")] stage and the award stage, which is $245,565,440." ECF No. 28 at 8. Plaintiffs explained a narrowed order that governs only the $245,565,440 amount would account for all funding allocation increases and decreases experienced by States and territories between the NOFO target allocation stage and the final award allocation stage. *Id*. at 2, 8. Defendants agree that this definition of "contested funds" is appropriate and Plaintiffs' $245,565,440 calculation is correct.[2] Specifically, the contested funds will remain untouched if Defendants are permitted to: (1) disburse funds up to the NOFO target allocation in any jurisdiction that received a final award allocation higher than or equal to its NOFO target allocation, and (2) disburse funds up to the final award allocation in any jurisdiction that received a final award allocation lower than its NOFO target allocation.[3]

---

[2] Defendants note two very small errors in the chart provided by Plaintiffs on pages 3 and 4 of their response, ECF No. 27. Correction of these minor errors does not alter the total amount of contested funds, which Defendants agree is $245,565,440. Alaska's total final award amount should be increased by a single dollar to accurately reflect the state's final award of $6,000,629, and Alaska's total change should, therefore, be increased by a single dollar, making it $1,637,879. Arkansas's total final award amount should be decreased by a single dollar to accurately reflect the state's final award of $6,000,628, and Arkansas's total change should, therefore, be decreased by a single dollar, making it $1,637,878.

[3] Disbursing funds up to the NOFO target allocation in any jurisdiction that received a final award allocation higher than or equal to its NOFO target allocation leads to a sum of $421,252,474 in uncontested funds. Disbursing funds up to the final award allocation in any jurisdiction that received a final award allocation lower than its NOFO target allocation leads to a sum of $260,182,086 in additional uncontested funds. These amounts together constitute $681,434,560 in uncontested funds to be disbursed. $681,434,560 in *uncontested* funds together with the Parties' agreed upon total of $245,565,440 in *contested* funds, correctly amounts to $ 927,000,000—the total SHSP and UASI funding award for fiscal year 2025.

## II. Plaintiffs' Objections to Striking Defendants' Affirmative Recission and De-obligation Requirements are Misguided.

While the Parties agree that the Court's order should be narrowed to govern only contested funds, there is disagreement as to what the status of the contested funds should be during the pendency of this litigation. Plaintiffs assert that it is necessary for the Court to order the de-obligation of the contested funds, the recission of final awards, and the re-issuance of an amended award in any jurisdiction that received more than its exact NOFO projection. ECF No. 28 at 9; Plaintiffs' Proposed Modified TRO, ECF No. 28-1 ¶2. However, an order requiring rescission and de-obligation instructs a significant change from the status quo in existence when Plaintiffs filed this lawsuit—a change that could result in the potential inability to incur new obligations with those funds, including for award to Plaintiff States. By contrast, a modified TRO that enjoins the disbursement of the contested funds but does not require Defendants to rescind awards and de-obligate the $245,565,440 preserves the status quo in existence on September 29, 2025 and prevents this potential loss.

Plaintiffs cite to *Aoude v. Mobil Oil Corp.*[4] for the proposition that, for the purposes of a TRO or preliminary injunction, the First Circuit defines the status quo as "the last *uncontested* status which preceded the pending controversy." ECF No. 28 at 12. Plaintiffs contend that, for purposes of this litigation, this is "the pre-award status, in which HSGP funds remained available for obligation." *Id*. However, the court in *Aoude* explicitly described "the status quo doctrine [as] one of equity, discretion, and common sense." 862 F.2d at 893. Here, Defendants' insistence on preserving the availability of the contested funds by leaving them obligated as they were when the suit commenced is both equitable and rational. As Defendants previously

---

[4] 862 F.2d 890, 893 (1st Cir. 1988).

outlined, ordering the de-obligation of funds creates a significant risk that no jurisdiction will receive the contested funds through a subsequent, new obligation of those funds because it is unclear whether this Court's equitable authority extends to the suspension or re-writing of lapse dates in appropriations statutes imposed by Congress pursuant to its Appropriations Clause authority. *See* ECF No. 27 at 8-9. Again, Defendants express their concern that, if the contested funds are de-obligated, Defendants will not be able to incur new obligations with these funds at the conclusion of this suit. Defendants' focus on equity is consistent with Justice Kavanaugh's discussion of the need for a flexible definition of "status quo" in order to ensure equitable results in the Supreme Court's recent preliminary injunction stay order in *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 930 (2024) (Kavanaugh, J., concurring) (explaining that "[t]here is no good blanket answer to the question of what the status quo is" and "even if we could settle on one definition of the status quo, applying that one definition consistently. . . . would lead to very troubling" and inequitable results).

 Next, Plaintiffs anticipate that an amended TRO absent a de-obligation requirement would permit Defendants to argue Plaintiffs' claims are moot because the contested funds lapsed at the end of the fiscal year and have already been obligated to other recipients. ECF No. 28 at 6-7, 9. But Plaintiffs' prediction that Defendants will make a jurisdictional mootness argument does not justify a court order effectively awarding Plaintiffs final relief and requiring Defendants to rescind awards, de-obligate contested funds, and re-issue amended awards. As Plaintiffs recognize, *Id*. at 9, a federal court lacks subject matter jurisdiction to hear moot cases. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *see Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the

U.S. Constitution, [w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (internal quotation marks omitted). It naturally follows that a court should not require affirmative actions by defendants—here, the recission of final awards and de-obligation of associated funds—or the reversal of actions taken by defendants—here, the issuance of final awards and obligation of associated funds—in order to create jurisdiction and evade the consequences of Article III mootness. Even if the Court believes, at this preliminary stage, that it has the power to de-obligate previously awarded funds and permanently enjoin the expiration of Congress's statutory lapse period, any such relief would be more appropriate at the conclusion of this case after the parties have fully briefed these issues.

Finally, that Defendants are unwilling to guarantee to Plaintiffs that the Government will not make a jurisdictional mootness argument, *see* ECF No. 28 at 9, can be of no consequence here. The Supreme Court has squarely held that parties cannot waive or stipulate around a mootness problem. *See United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S. Ct. 448, 449, 64 L. Ed. 808 (1920) ("No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court.").

## CONCLUSION

In the interest of justice and to further the interests of Parties, non-parties, and the public, the Court should grant Defendants' motion for reconsideration of the TRO and: (1) narrow the order to govern only the contested fiscal year 2025 HSGP funds—the sum of all funding allocation increases and decreases experienced by jurisdictions between the NOFO target allocation stage and the final award allocation stage—in the amount of $245,565,440; and (2) strike the requirements that Defendants rescind final awards and de-obligate contested funds. A proposed order granting Defendants' motion for reconsideration and containing a further

amended TRO that reflects the consensus among the Parties as to the universe of contested funds is attached as Exhibit 1.

Dated: October 17, 2025                                  Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

ANDREW WARDEN
Assistant Branch Director
Federal Programs Branch

*/s/ Alexandra L. Yeatts*
ALEXANDRA L. YEATTS
*Trial Attorney*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 353-5677
Email: Alexandra.Yeatts@usdoj.gov
CA Bar No. 358762

*Attorney for Defendants*