**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

STATE OF ILLINOIS, *et al.*,

               *Plaintiffs*,

   v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security, *et al.*,

               *Defendants*.

No. 1:25-cv-00495

# EXHIBIT 21

## Declaration of Dawn Brantley

## DECLARATION OF DAWN BRANTLEY

I, Dawn Brantley, pursuant to 28 U.S.C. § 1746, hereby declare:

1.    I am over the age of eighteen and understand the obligations of an oath.

2.    I am currently the Director of the Massachusetts Emergency Management Agency ("MEMA"). I have held this role since 2021 and have worked for MEMA since January 2020. In total, I have nearly 18 years of experience in emergency management and administration. I make this declaration based on personal knowledge and on my review of information and records gathered by MEMA staff.

3.    MEMA is a Massachusetts state agency that coordinates the Commonwealth's disaster mitigation, preparedness, response, and recovery programs. MEMA administers a range of federal programs meant to assist states and localities in mitigating against, preparing for, responding to, and recovering from catastrophic human-caused and natural disasters.

4.    The Federal Emergency Management Agency ("FEMA") administers many grant programs where States are the primary grant recipients. MEMA administers several of FEMA's annually funded preparedness grants, including the Emergency Management Performance Grant Program.

### I.    Emergency Management Performance Grant Program

5.    I am familiar with the Emergency Management Performance Grant Program ("EMPG"). EMPG provides federal funding to States to assist state, local, tribal, and territorial emergency management agencies to implement FEMA's National Preparedness System, including by building continuity-of-government capabilities to ensure essential functions in a catastrophic disaster. EMPG funding is the primary enabler to develop both state and local resilience programs for emergency management.

6.    MEMA is the State Administrating Agency (SAA) for EMPG.

1

7.     Because EMPG grants are formula grants and not competitive grants, each State is entitled to a specific allocation whenever a notice of funding opportunity is posted.

8.     In addition to using EMPG funds themselves, States may pass EMPG funds through to subgrantees for the same purposes. MEMA passes approximately 36% of EMPG funds allocated to Massachusetts on to municipal emergency management agencies.

9.     Massachusetts has applied for and received funds from EMPG since it was codified in the Post-Katrina Emergency Management Reform Act of 2006.

10.     MEMA has one open EMPG award from FFY 2024 totaling $6,361,791.

11.     MEMA applies EMPG funds and state matching funds toward personnel, fringe benefits, travel, equipment (e.g., emergency communications), supplies, facility maintenance/enhancements, and indirect costs to support MEMA's day-to-day operations and activations in response to natural and human-caused disasters and large scale planned events such as the Boston Marathon. EMPG monies also fund the ongoing costs of the software program used at the State Emergency Operations Center, which is the physical location where a state emergency manager would direct all strategic and operational activities in the event of a disaster or public health emergency.

12.     Additionally, the amounts passed through to localities under the EMPG program fund local response and recovery capabilities across Massachusetts. Without these funds, local jurisdictions may not have sufficient funding to sustain and build their own response and recovery capabilities.

## II.     Unprecedented Cuts to the Periods of Performance

13.     The term of FEMA preparedness awards—like EMPG--has generally been three years, meaning that the award remains open for a three-year period for completing allowable

activities. Any program activities supported by the awarded funds and required match must be completed within the award period of performance.

14. It is typical for FEMA preparedness awards to take several years to fully disburse. The EMPG program has used multi-year periods of performance, sometimes even longer than three years, for almost every year of their existence. Moreover, these programs fund essential ongoing operational needs of state and local public safety agencies. As a result, MEMA has structured its budgeting systems for EMPG grants around multi-year disbursements.

15. EMPG awards have historically been back-dated to the start of the federal fiscal year in question. For example, MEMA's fiscal year **2023** EMPG award had a three-year period of performance beginning on October 1, **2022**, and ending on September 30, 2025. DHS's decision this year to instead start the fiscal year 2025 performance period on October 1, 2025—the first day of federal fiscal year 2026—has effectively skipped an entire year of program funding for fiscal year 2025 awards.

16. This year, in keeping with past practice, the EMPG NOFO announced that there would be a three-year period of performance for the program, ranging from October 1, 2024 to September 30, 2027 .

17. The NOFO explained that applications should frame their budget needs by reference to the anticipated three-year period of performance. EMPG stated that "[e]ach goal must be specific, measurable, and achievable within the period of performance."

18. MEMA proposed projects for the EMPG NOFO on that understanding.

19. Yet, without explanation, when the award issued, the period of performance was reduced to one year, running from October 1, 2025, to September 30, 2026.

3

20.     MEMA will face extraordinary challenges in obligating the monies on a suddenly truncated period of performance, as well as using the funds for multi-year projects. In addition, it would be extremely difficult for local governments to successfully complete emergency management related projects under this abbreviated timeline. The ultimate result is likely to be that allocated monies will expire unused, depriving Massachusetts of millions of dollars in needed funds for emergency management and preparedness.

21.     In my nearly 18 years in emergency management and administration, I have never seen FEMA reduce the period of performance announced in a NOFO and relied upon by applicants like this.

## III.     The EMPG Population Certification Condition

22.     The Department of Homeland Security ("DHS") published the EMPG notice of funding opportunity on July 28, 2025, amending it the next day to correct the program title. The NOFO did not include any language stating that States would have to provide any verification of their population in order to apply for or receive EMPG funds.

23.     On September 28, 2025, FEMA issued MEMA's EMPG award for FY 2025 (Award Letter). Two days later, on September 30, FEMA uploaded a revised (though not re-dated) EMPG award letter for Massachusetts through the FEMAGo portal that included the new term described in the next paragraph.

24.     The Award Letter included a lengthy list of "Agreement Articles," the last of which—added on September 30—reads as follows:

**Article 62 Funding Hold: Verification of State's Population**

FEMA has placed a funding hold on this award, and the full amount of the award is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the award.

4

To release the funding hold, the SAA must provide a certification of the recipient state's population as of September 30, 2025. In so doing, the State will explain the methodology it used to determine its population and certify that its reported population does not include individuals that have been removed from the State pursuant to the immigration laws of the United States.

FEMA will rescind the funding hold upon its review and approval of the State's methodology and population certification.

25.     In my nearly 18 years of experience, I have never seen a funding hold based on a population certification condition imposed on any federal grant. Specifically, I understand that no population certification condition has ever been imposed on EMPG funds since that program was created in 2006, until FEMA did so on September 28, 2025. Massachusetts has never independently calculated and submitted population data in relation to EMPG..

26.     FEMA has offered MEMA no explanation as to why it was imposing this new population certification condition.

27.     MEMA does not determine the state's population, and I am not aware of any other Massachusetts state agency that determines the state's population separately from the determination made by the U.S. Census Bureau.

28.     Additionally, MEMA is not informed when people are removed from the State pursuant to federal immigration laws; nor does MEMA keep its own record of people who have been removed from the State pursuant to federal immigration laws. As far as I am aware no other agency in Massachusetts keeps such a record either. Even with such a record, it would be virtually impossible to cross-reference those individuals against a population census to determine whether they were included in the overall population count to begin with.  I have learned that the Department of Homeland Security has, at times, published publicly available statistics regarding the number of individuals whom it has removed, returned, or expelled, but DHS has not updated that data since November 2024, and DHS has not published state-specific data.

29.    In trying to understand this population certification condition, I have found many of the terms ambiguous. The population certification condition fails to define what it means for an individual to be removed "pursuant to the immigration laws of the United States."

30.    In sum, MEMA is responsible for coordinating the State's emergency preparedness efforts, not counting its population or keeping track of persons removed by federal authorities under immigration laws. Consequently, MEMA is not in a position to fulfill the population certification newly imposed on the EMPG Award without involving other entities,engaging in months of work, and investing substantial funds towards the task—and possibly not even then.

31.    While FEMA is asking Massachusetts to develop its own population calculation for EMPG, FEMA continues to rely on U.S. Census figures for its other work. On October 20, 2025, MEMA received notice that FEMA would continue using U.S. Census figures in evaluating whether a disaster meets the criteria for a Presidential disaster declaration and related financial assistance. It is unclear why U.S. Census data would be acceptable for those purposes but not for EMPG.

## IV.    Harms to Preparedness Efforts Caused by DHS's Performance-Period Cuts and Population Certification Condition

32.    If the one-year period of performance reflected in the award letter for the EMPG program took effect, MEMA would be unable to plan multiyear facility/capital projects such as communication tower enhancements, Emergency Operations Center upgrades, and large scale exercises that are critical to sustaining its response and recovery capabilities. Moreover, localities would be unable to sustain their response and recover capabilities.

33.    The Emergency Management Performance Grant program funds response and recovery capabilities for municipalities, Mass211, and MEMA operations.  If these funds are held up entirely pursuant to the population certification condition, it will impact MEMA's execution of

disaster response and recovery programs, provision of critical funding to municipal emergency management programs, and maintenance and enhancement of infrastructure for resilience and preparedness.

34.    The State does not have the budgetary resources or flexibility to make up for the lost funding without drawing funding away from other important public safety operations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of October, 2025, in Framingham, Massachusetts.

Dawn Brantley
Director
Massachusetts Emergency Management Agency

# EXHIBIT A

## Award Letter

U.S. Department of Homeland Security
Washington, D.C. 20472

Effective date: 09/26/2025



Lorri Gifford
EMERGENCY MANAGEMENT AGENCY MASSACHUSETTS
400 WORCESTER ROAD
FRAMINGHAM, MA 01702

EMB-2025-EP-05007

Dear Lorri Gifford,

Congratulations on behalf of the Department of Homeland Security, your application submitted for the Fiscal Year (FY) 2025 Emergency Management Performance Grants, has been approved in the amount of $6,377,029.00 in Federal funding. This award of federal assistance is executed as a Grant. As a condition of this award, you are required to contribute non-Federal funds equal to or greater than $6,377,029.00 for a total approved budget of $12,754,058.00. Please see the Fiscal Year 2025 Emergency Management Performance Grant (EMPG) Program for information on how to meet this cost share requirement.

Before you request and receive any of the Federal funds awarded to you, you must establish acceptance of the award through the FEMA Grants Outcomes (FEMA GO) system. By accepting this award, you acknowledge that the terms of the following documents are incorporated into the terms of your award:

- Award Summary - included in this document
- Agreement Articles - included in this document
- Obligating Document - included in this document
- Fiscal Year (FY) 2025 Emergency Management Performance Grants Notice of Funding Opportunity
- FEMA Preparedness Grants Manual

Please make sure you read, understand, and maintain a copy of these documents in your official file for this award.

Sincerely,

Christopher Rolleston

Grants Services Branch Chief
Grants Division

# Award Summary

**Program:** Fiscal Year 2025 Emergency Management Performance Grant
**Recipient:** EMERGENCY MANAGEMENT AGENCY MASSACHUSETTS
**UEI-EFT:** TTWNNQRC9U11
**Award number:** EMB-2025-EP-05007

## Summary description of award

The Fiscal Year (FY) 2025 Emergency Management Performance Grant (EMPG) Program is one of the grant programs that constitute DHS/FEMA's focus on all-hazards emergency preparedness. These grant programs are part of a comprehensive set of measures authorized by Congress and implemented by DHS/FEMA to assist state, local, tribal, and territorial emergency management agencies to implement the National Preparedness System and the National Preparedness Goal of a secure and resilient nation

## Amount awarded table

The amount of the award is detailed in the attached Obligating Document for Award.

The following are the budgeted estimates for object classes for this award (including Federal share plus your cost share, if applicable):

| Object Class | Total |
|---|---|
| Personnel | $5,467,156.00 |
| Fringe benefits | $2,374,933.00 |
| Travel | $0.00 |
| Equipment | $0.00 |
| Supplies | $0.00 |
| Contractual | $4,592,500.00 |
| Construction | $0.00 |
| Other | $0.00 |
| Indirect charges | $319,469.00 |
| Federal | $6,377,029.00 |
| Non-federal | $6,377,029.00 |
| Total | $12,754,058.00 |
| Program Income | $0.00 |

## Approved scope of work

After review of your application, FEMA has approved the below scope of work. Justifications are provided for any differences between the scope of work in the original application and the approved scope of work under this award. You must submit scope or budget revision requests for FEMA's prior approval, via an amendment request, as appropriate per 2 C.F.R. § 200.308 and the FY2025 EMPG NOFO.

**Approved request details:**

## Investment

## Operational support

DESCRIPTION

MEMA will apply EMPG funds to include personnel, related fringe benefits, travel, equipment, supplies an indirect costs. Funds will be used over the course of this grant performance period to support MEMA's operational needs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $5,467,156.00 | $5,467,156.00 |

BUDGET CLASS

Personnel

## Operational support

DESCRIPTION

MEMA will apply EMPG funds to include personnel, related fringe benefits, travel, equipment, supplies an indirect costs. Funds will be used over the coure of this grant performance period to support MEMA's operational needs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $2,374,933.00 | $2,374,933.00 |

BUDGET CLASS

Fringe benefits

# Investment

## Operational support

DESCRIPTION

Pass thru findings to towns, cities, and tribes with Emergency Management programs to assist them with planning, training, exercises, equipment/supplies needed to sustain and enhance their ability to respond to and recover from emergencies and disasters.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $4,000,000.00 | $4,000,000.00 |

BUDGET CLASS

Contractual

# Investment

## Operational support

DESCRIPTION

MEMA will utilize EMPG fund to contract with Council of Massachusetts Unit Ways (Mass 211), as its official public hotline for disaster information and instructions: http://www.mass211.org

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $592,500.00 | $592,500.00 |

BUDGET CLASS

Contractual

# Indirect expenses

## Indirect expenses

DESCRIPTION

MEMA utilizes EMPG funds for financial support of its emergency management activities. All personnel funded via EMPG will work to meet the training standards set by FEMA.

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $319,469.00 | $319,469.00 |

BUDGET CLASS

Indirect charges

Of the total Federal funds, $6377029.00 has been placed on hold. See the following terms in the Agreement Articles for more details:

| Article number | Title | Payment hold |
| --- | --- | --- |
| Article 61 | Funding Hold: Additional Information Required | $6377029.00 |

# Agreement Articles

**Program:** Fiscal Year 2025 Emergency Management Performance Grant
**Recipient:** EMERGENCY MANAGEMENT AGENCY MASSACHUSETTS
**UEI-EFT:** TTWNNQRC9U11
**Award number:** EMB-2025-EP-05007

# Table of contents

| Article 1 | Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications |
|---|---|
| Article 2 | General Acknowledgements and Assurances |
| Article 3 | Acknowledgement of Federal Funding from DHS |
| Article 4 | Activities Conducted Abroad |
| Article 5 | Age Discrimination Act of 1975 |
| Article 6 | Americans with Disabilities Act of 1990 |
| Article 7 | Best Practices for Collection and Use of Personally Identifiable Information |
| Article 8 | CHIPS and Science Act of 2022, Public Law 117-167 CHIPS |
| Article 9 | Civil Rights Act of 1964 – Title VI |
| Article 10 | Civil Rights Act of 1968 |
| Article 11 | Communication and Cooperation with the Department of Homeland Security and Immigration Officials |
| Article 12 | Copyright |
| Article 13 | Debarment and Suspension |
| Article 14 | Drug-Free Workplace Regulations |
| Article 15 | Duplicative Costs |
| Article 16 | Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX |
| Article 17 | Energy Policy and Conservation Act |
| Article 18 | Equal Treatment of Faith-Based Organizations |
| Article 19 | Anti-Discrimination |
| Article 20 | False Claims Act and Program Fraud Civil Remedies |
| Article 21 | Federal Debt Status |
| Article 22 | Federal Leadership on Reducing Text Messaging while Driving |
| Article 23 | Fly America Act of 1974 |
| Article 24 | Hotel and Motel Fire Safety Act of 1990 |
| Article 25 | John S. McCain National Defense Authorization Act of Fiscal Year 2019 |
| Article 26 | Limited English Proficiency (Civil Rights Act of 1964, Title VI) |
| Article 27 | Lobbying Prohibitions |

| | |
|---|---|
| Article 28 | National Environmental Policy Act |
| Article 29 | National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254 |
| Article 30 | Non-Supplanting Requirement |
| Article 31 | Notice of Funding Opportunity Requirements |
| Article 32 | Patents and Intellectual Property Rights |
| Article 33 | Presidential Executive Orders |
| Article 34 | Procurement of Recovered Materials |
| Article 35 | Rehabilitation Act of 1973 |
| Article 36 | Reporting Recipient Integrity and Performance Matters |
| Article 37 | Reporting Subawards and Executive Compensation |
| Article 38 | Required Use of American Iron, Steel, Manufactured Products, and Construction Materials |
| Article 39 | SAFECOM |
| Article 40 | Subrecipient Monitoring and Management |
| Article 41 | System for Award Management and Unique Entity Identifier Requirements |
| Article 42 | Termination of a Federal Award |
| Article 43 | Terrorist Financing |
| Article 44 | Trafficking Victims Protection Act of 2000(TVPA) |
| Article 45 | Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56 |
| Article 46 | Use of DHS Seal, Logo and Flags |
| Article 47 | Whistleblower Protection Act |
| Article 48 | Environmental Planning and Historic Preservation (EHP) Review |
| Article 49 | Applicability of DHS Standard Terms and Conditions to Tribal Nations |
| Article 50 | Acceptance of Post Award Changes |
| Article 51 | Disposition of Equipment Acquired Under the Federal Award |
| Article 52 | Prior Approval for Modification of Approved Budget |
| Article 53 | Indirect Cost Rate |
| Article 54 | Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification |

| Article 55 | Compliance with Federal Immigration Law |
| Article 56 | Non-Applicability of Specific Terms and Agreement Articles |
| Article 57 | Impact of San Francisco v. Trump Preliminary Injunction |
| Article 58 | Impact of State of Illinois v. FEMA Injunction |
| Article 59 | Non-Applicability of Specific Agreement Articles |
| Article 60 | Period of Performance and Budget Period |
| Article 61 | Funding Hold: Additional Information Required |
| Article 62 | Funding Hold: Verification of State's Population |

| | |
|---|---|
| **Article 1** | **Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications**<br>I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed. |
| **Article 2** | **General Acknowledgements and Assurances**<br>Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10. All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337. I. Recipients must cooperate with any DHS compliance reviews or compliance investigations. II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel. III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports. IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference. V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance. |
| **Article 3** | **Acknowledgement of Federal Funding from DHS**<br>Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds. |
| **Article 4** | **Activities Conducted Abroad**<br>Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals. |
| **Article 5** | **Age Discrimination Act of 1975**<br>Recipients must comply with the requirements of the Age Discrimination Act of 1975, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 et seq.), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance. |

| | |
|---|---|
| **Article 6** | **Americans with Disabilities Act of 1990**<br>Recipients must comply with the requirements of Titles I, II, and III of the Americans with Disabilities Act, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities. |
| **Article 7** | **Best Practices for Collection and Use of Personally Identifiable Information**<br>(1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect. (2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively. |

**Article 8**    **CHIPS and Science Act of 2022, Public Law 117-167 CHIPS**
(1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution. (2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include: (a) Award number, (b) Name of PI or Co-PI being reported, (c) Awardee name, (d) Awardee address, (e) AOR name, title, phone, and email address, (f) Indication of the report type: (i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made. (ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment. (iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the Family Educational Rights in Privacy Act. (3) Definitions. (a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements. (b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law. (c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations. (d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity. (e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor.

**Article 9**    **Civil Rights Act of 1964 – Title VI**
Recipients must comply with the requirements of Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d et seq.), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7.

**Article 10**    **Civil Rights Act of 1968**
Recipients must comply with Title VIII of the Civil Rights Act of 1968, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 et seq.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

**Article 11**    **Communication and Cooperation with the Department of Homeland Security and Immigration Officials**
(1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: (a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity; (b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes; (c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance; (d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and (e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation. (2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award. (3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term.

| | |
|---|---|
| **Article 12** | **Copyright** |
| | Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so. |
| **Article 13** | **Debarment and Suspension** |
| | Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities. |
| **Article 14** | **Drug-Free Workplace Regulations** |
| | Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 8101-8106). |
| **Article 15** | **Duplicative Costs** |
| | Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions. |
| **Article 16** | **Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX** |
| | Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 et seq.), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19. |
| **Article 17** | **Energy Policy and Conservation Act** |
| | Recipients must comply with the requirements of the Energy Policy and Conservation Act, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 et seq.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act. |

| **Article 18** | **Equal Treatment of Faith-Based Organizations** |
| | It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries. Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs. |
| **Article 19** | **Anti-Discrimination** |
| | Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4). (1) Definitions. As used in this clause – (a) DEI means "diversity, equity, and inclusion." (b) DEIA means "diversity, equity, inclusion, and accessibility." (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025. (d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin. (e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.(2) Grant award certification. (a) By accepting the grant award, recipients are certifying that: (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and (ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott. (iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration. (3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2). (4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law. |
| **Article 20** | **False Claims Act and Program Fraud Civil Remedies** |
| | Recipients must comply with the requirements of the False Claims Act, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.) |
| **Article 21** | **Federal Debt Status** |
| | All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129. |

| | |
|---|---|
| **Article 22** | **Federal Leadership on Reducing Text Messaging while Driving**<br>Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513. |
| **Article 23** | **Fly America Act of 1974**<br>Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List \| US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-aircarriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the International Air Transportation Fair Competitive Practices Act of 1974, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942. |
| **Article 24** | **Hotel and Motel Fire Safety Act of 1990**<br>Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the Hotel and Motel Fire Safety Act of 1990, 15 U.S.C. § 2225a. |
| **Article 25** | **John S. McCain National Defense Authorization Act of Fiscal Year 2019**<br>Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons. |
| **Article 26** | **Limited English Proficiency (Civil Rights Act of 1964, Title VI)**<br>Recipients must comply with Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help- department-supported-organizationsprovide-meaningful-access-people-limited and additional resources on http://www.lep.gov. |

| **Article 27** | **Lobbying Prohibitions** |
| | Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL). |
| **Article 28** | **National Environmental Policy Act** |
| | Recipients must comply with the requirements of the National Environmental Policy Act of 1969, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 et seq.) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans. |
| **Article 29** | **National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254** |
| | (1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to: (a) cybersecurity; (b) foreign travel security; (c) research security training; and (d) export control training, as appropriate. (2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year." |
| **Article 30** | **Non-Supplanting Requirement** |
| | Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose. |
| **Article 31** | **Notice of Funding Opportunity Requirements** |
| | All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect. |

**Article 32**     **Patents and Intellectual Property Rights**
Recipients are subject to the Bayh-Dole Act, 35 U.S.C. § 200 et seq. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14.

**Article 33**     **Presidential Executive Orders**
Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference.

**Article 34**     **Procurement of Recovered Materials**
States, political subdivisions of states, and their contractors must comply with Section 6002 of the Solid Waste Disposal Act, Pub. L. No. 89-272 (1965) (codified as amended by the Resource Conservation and Recovery Act at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition.

**Article 35**     **Rehabilitation Act of 1973**
Recipients must comply with the requirements of Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

**Article 36**     **Reporting Recipient Integrity and Performance Matters**
If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference.

**Article 37**     **Reporting Subawards and Executive Compensation**
For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference.

**Article 38**    **Required Use of American Iron, Steel, Manufactured Products, and Construction Materials**

(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless: (a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States; (b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and (c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States. (2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project. (3) Waivers When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements. (a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that: (i) applying the domestic content procurement preference would be inconsistent with the public interest; (ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or (iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent. (b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office. (c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov. (4) Definitions. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

| | |
|---|---|
| **Article 39** | **SAFECOM**<br>Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment | CISA. |
| **Article 40** | **Subrecipient Monitoring and Management**<br>Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333. |
| **Article 41** | **System for Award Management and Unique Entity Identifier Requirements**<br>Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference. |
| **Article 42** | **Termination of a Federal Award**<br>(1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons: (a) If the recipient fails to comply with the terms and conditions of the federal award; (b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or (c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities. (3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety. (4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination. (5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344200.345 after an award is terminated. |
| **Article 43** | **Terrorist Financing**<br>Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws. |

**Article 44**   **Trafficking Victims Protection Act of 2000(TVPA)**
Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference.

**Article 45**   **Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56**
Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c.

**Article 46**   **Use of DHS Seal, Logo and Flags**
Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials.

**Article 47**   **Whistleblower Protection Act**
Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712.

**Article 48**    **Environmental Planning and Historic Preservation (EHP) Review**
DHS/FEMA funded activities that could have an impact on the environment are subject to the FEMA EHP review process. This review does not address all federal, state, and local requirements. Acceptance of federal funding requires the recipient to comply with all federal, state, and local laws. DHS/FEMA is required to consider the potential impacts to natural and cultural resources of all projects funded by DHS/FEMA grant funds, through its EHP review process, as mandated by: the National Environmental Policy Act; Endangered Species Act; National Historic Preservation Act of 1966, as amended; Clean Water Act; Clean Air Act; National Flood Insurance Program regulations; and any other applicable laws, regulations and executive orders. General guidance for FEMA's EHP process is available on the DHS/FEMA Website. Specific applicant guidance on how to submit information for EHP review depends on the individual grant program. Applicants should contact their grant Program Officer to be put into contact with EHP staff responsible for assisting their specific grant program. The FEMA EHP review process must be completed before funds are released to carry out the proposed project, otherwise, DHS/FEMA may not be able to fund the project due to noncompliance with EHP laws, executive orders, regulations, and policies. DHS/FEMA may also need to perform a project closeout review to ensure the applicant complied with all required EHP conditions identified in the initial review. If ground disturbing activities occur during construction, the applicant will monitor the ground disturbance, and if any potential archaeological resources are discovered, the applicant will immediately cease work in that area and notify the pass-through entity, if applicable, and DHS/FEMA. EO 11988, Floodplain Management, and EO 11990, Protection of Wetlands, require that all federal actions in or affecting the floodplain or wetlands be reviewed for opportunities to relocate, and be evaluated for social, economic, historical, environmental, legal, and safety considerations. FEMA's regulations at 44 C.F.R. Part 9 implement the EOs and require an eight-step review process if a proposed action is in a floodplain or wetland or has the potential to affect or be affected by a floodplain or wetland. The regulation also requires that the federal agency provide public notice of the proposed action at the earliest possible time to provide the opportunity for public involvement in the decision-making process (44 C.F.R. § 9.8). Where there is no opportunity to relocate the federal action, FEMA is required to undertake a detailed review to determine what measures can be taken to minimize future damages to the floodplain or wetland.

**Article 49**    **Applicability of DHS Standard Terms and Conditions to Tribal Nations**
The DHS Standard Terms and Conditions are a restatement of general requirements imposed upon recipients and flow down to sub-recipients as a matter of law, regulation, or executive order. If the requirement does not apply to Tribal Nations, or there is a federal law or regulation exempting its application to Tribal Nations, then the acceptance by Tribal Nations, or acquiescence to DHS Standard Terms and Conditions does not change or alter its inapplicability to a Tribal Nation. The execution of grant documents is not intended to change, alter, amend, or impose additional liability or responsibility upon the Tribal Nations where it does not already exist.

**Article 50**      **Acceptance of Post Award Changes**
In the event FEMA determines that an error in the award package has been made, or if an administrative change must be made to the award package, recipients will be notified of the change in writing. Once the notification has been made, any subsequent requests for funds will indicate recipient acceptance of the changes to the award. Please email FEMA Grant Management Operations at: ASK-GMD@fema.dhs.gov for any questions.

**Article 51**      **Disposition of Equipment Acquired Under the Federal Award**
When original or replacement equipment acquired under this award is no longer needed for the original project or program or for other activities currently or previously supported by a federal awarding agency, the non-state recipient or subrecipient (including subrecipients of a State or Tribal Nation), must request instructions from FEMA to make proper disposition of the equipment pursuant to 2 C.F.R. section 200.313(e). State recipients must follow the disposition requirements in accordance with State laws and procedures. 2 C.F.R. section 200.313(b). Tribal Nations must follow the disposition requirements in accordance with Tribal laws and procedures noted in 2 C.F.R. section 200.313(b); and if such laws and procedures do not exist, then Tribal Nations must follow the disposition instructions in 2 C.F.R. section 200.313(e).

**Article 52**      **Prior Approval for Modification of Approved Budget**
Before making any change to the FEMA approved budget for this award, a written request must be submitted and approved by FEMA as required by 2 C.F.R. section 200.308. For purposes of non-construction projects, FEMA is utilizing its discretion to impose an additional restriction under 2 C.F.R. section 200.308(i) regarding the transfer of funds among direct cost categories, programs, functions, or activities. For awards with an approved budget where the federal share is greater than the simplified acquisition threshold (currently $250,000) and where the cumulative amount of such transfers exceeds or is expected to exceed ten percent (10%) of the total budget FEMA last approved, transferring funds among direct cost categories, programs, functions, or activities is unallowable without prior written approval from FEMA. For purposes of awards that support both construction and non-construction work, 2 C.F.R. section 200.308((f)(9) requires the recipient to obtain prior written approval from FEMA before making any fund or budget transfers between the two types of work. Any deviations from a FEMA approved budget must be reported in the first Federal Financial Report (SF-425) that is submitted following any budget deviation, regardless of whether the budget deviation requires prior written approval.

**Article 53**      **Indirect Cost Rate**
2 C.F.R. section 200.211(b)(16) requires the terms of the award to include the indirect cost rate for the federal award. If applicable, the indirect cost rate for the award is stated in the budget documents or other materials approved by FEMA and included in the award file.

**Article 54**     **Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification**

In addition to the DHS Standard Terms & Conditions regarding Required Use of American Iron, Steel, Manufactured Products, and Construction Materials, recipients and subrecipients of FEMA financial assistance for programs that are subject to BABAA must include a Buy America preference contract provision as noted in 2 C.F.R. section 184.4 and a self-certification as required by the FEMA Buy America Preference in FEMA Financial Assistance Programs for Infrastructure (FEMA Interim Policy #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). This requirement applies to all subawards, contracts, and purchase orders for work performed, or products supplied under the FEMA award subject to BABAA.

**Article 55**     **Compliance with Federal Immigration Law**

1. Prohibition a. The state or territorial recipient is prohibited from making subawards to a local government that the Department of Homeland Security or the Department of Justice has designated as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a local government as a sanctuary jurisdiction after the state or territorial recipient makes a subaward to that local government, the state or territorial recipient must suspend the subaward, the state or territorial recipient must not make any additional payments to the local government, and the local government is prohibited from making any financial obligations under the subaward on and after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. b. The Department of Homeland Security designates a local government as a sanctuary jurisdiction if it fails to comply with the requirements set forth in paragraphs 2.a.i to v of this term and condition. 2. Certification a. The state or territorial recipient must require all local government subrecipients to certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that the local government will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity. ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes. iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien. v. They will not leak or otherwise publicize the existence of an immigration enforcement operation. b. The state or territorial recipient must require a local government subrecipient to make the certification above before providing them with any funding under the subaward. 3. Materiality and Remedies for Noncompliance This term and condition is material to the Department of Homeland Security's decision to make this grant award and the Department of Homeland Security may take any remedy for noncompliance, including termination, if the state or territorial recipient or any local government subrecipient fails to comply with this term and condition.

| | |
|---|---|
| **Article 56** | **Non-Applicability of Specific Terms and Agreement Articles**<br>Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; and (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package. |
| **Article 57** | **Impact of San Francisco v. Trump Preliminary Injunction**<br>Pursuant to the preliminary injunction order issued on August 22, 2025, in City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the preliminary injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Compliance with Federal Immigration Law" Agreement Article. If the preliminary injunction is stayed, vacated, or extinguished, the "Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |
| **Article 58** | **Impact of State of Illinois v. FEMA Injunction**<br>Pursuant to the memorandum and order issued on September 24, 2025, in State of Illinois, et al. v. Federal Emergency Management Agency, et. al, No. 25-206 (D. R.I.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Compliance with Federal Immigration Law" Agreement Article. If the injunction is stayed, vacated, or extinguished, the "Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |

**Article 59**  **Non-Applicability of Specific Agreement Articles**
Notwithstanding its inclusion in this award package, the following Agreement Article does not apply to this grant award: 1. Termination of a Federal Award This provision is consistent with any terms of the Notice of Funding Opportunity that state Paragraph C.XL (Termination of a Federal Award) of the FY 2025 DHS Standard Terms and Conditions does not apply to this award. Refer to the Notice of Funding Opportunity for the terms governing award termination.

**Article 60**  **Period of Performance and Budget Period**
Notwithstanding language in the Obligating Document or in the other terms of this award package, the Period of Performance and the Budget Period for this grant award is October 1, 2025 to September 30, 2026. The Period of Performance and Budget Period stated in the Obligating Document shall not apply.

**Article 61**  **Funding Hold: Additional Information Required**
FEMA has placed a funding hold on this award, and $6,377,029.00 is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the following investments/projects. Project/Investment: # EMB-2025-EP-05007 Award amount: $6,377,029.00 To release the funding hold, the recipient must provide a detailed cost breakdown and justification for the investments/projects listed above. FEMA will rescind the funding hold upon its review and approval of the detailed cost breakdown and justification. If you believe this funding hold was placed in error, please contact the relevant Preparedness Officer or Grants Management Specialist.

**Article 62**  **Funding Hold: Verification of State's Population**
FEMA has placed a funding hold on this award, and the full amount of the award is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the award.

To release the funding hold, the SAA must provide a certification of the recipient state's population as of September 30, 2025. In so doing, the State will explain the methodology it used to determine its population and certify that its reported population does not include individuals that have been removed from the State pursuant to the immigration laws of the United States.

FEMA will rescind the funding hold upon its review and approval of the State's methodology and population certification.

# Obligating document

| 1. Agreement No. EMB-2025-EP-05007 | 2. Amendment No. N/A | 3. Recipient No. 046002284 | 4. Type of Action AWARD | 5. Control No. BX00156N2025T |
|---|---|---|---|---|

| 6. Recipient Name and Address EMERGENCY MANAGEMENT AGENCY MASSACHUSETTS 400 WORCESTER RD FRAMINGHAM, MA 01702 | | 7. Issuing FEMA Office and Address FEMA Region I 99 High Street, 6th Floor Boston, Massachusetts 02110 877-336-2734 | 8. Payment Office and Address FEMA, Financial Services Branch 500 C Street, S.W., Room 723 Washington DC, 20742 |
|---|---|---|---|

| 9. Name of Recipient Project Officer Lorri Gifford | 9a. Phone No. 5083808816 | 10. Name of FEMA Project Coordinator Emergency Management Performance Grant Grant Program | 10a. Phone No. 1-877-585-3242 |
|---|---|---|---|

| 11. Effective Date of This Action 09/26/2025 | 12. Method of Payment OTHER - FEMA GO | 13. Assistance Arrangement COST SHARING | 14. Performance Period 10/01/2025 to 09/30/2026 **Budget Period** 10/01/2025 to 09/30/2026 |
|---|---|---|---|

### 15. Description of Action a. (Indicate funding data for awards or financial changes)

| Program Name Abbreviation | Assistance Listing No. | Accounting Data (ACCS Code) | Prior Total Award | Amount Awarded This Action + or (-) | Current Total Award | Cumulative Non-Federal Commitment |
|---|---|---|---|---|---|---|
| EMPG | 97.042 | 2025-FA-GA01 - R017-xxxx-4101-D | $0.00 | $6,377,029.00 | $6,377,029.00 | See Totals |
| | | | Totals $0.00 | $6,377,029.00 | $6,377,029.00 | $6,377,029.00 |

**b. To describe changes other than funding data or financial changes, attach schedule and check here:**
N/A

~~16.FOR NON-DISASTER PROGRAMS: RECIPIENT IS REQUIRED TO SIGN AND RETURN THREE (3) COPIES OF THIS DOCUMENT TO FEMA (See Block 7 for address)~~
This field is not applicable for digitally signed grant agreements

| 17. RECIPIENT SIGNATORY OFFICIAL (Name and Title) | DATE |
|---|---|
| 18. FEMA SIGNATORY OFFICIAL (Name and Title) Christopher Rolleston, Grants Services Branch Chief Grants Division | DATE 09/26/2025 |