**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>    *Defendants*. | No. 1:25-cv-00495 |

# EXHIBIT 24

## Declaration of Daniel J. Engelhardt

## DECLARATION OF DANIEL J. ENGELHARDT

I, Daniel J. Engelhardt, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the Deputy Director of the New Jersey Office of Homeland Security and Preparedness ("NJOHSP"). I began my service with NJOHSP in 2022 as the Director of Preparedness and subsequently promoted to Deputy Director of the agency October 2023. I make this declaration based on personal knowledge and information and records gathered by agency staff.

3. NJOHSP is an executive-branch State agency that coordinates counterterrorism, counterintelligence emergency preparedness, and cybersecurity efforts across all levels of government, law enforcement, nonprofit organizations, and the private sector in New Jersey.

4. FEMA administers many grant programs where States are the primary grant recipients. NJOHSP administers FEMA's annually funded preparedness grants, including the Homeland Security Grant Program.

## I. Homeland Security Grant Program

5. Until this year, FEMA has typically released notices of funding opportunities for preparedness grants, including the Homeland Security Grant Program ("HSGP"), around February through May of the federal fiscal year ("FFY") for the grant in question. Once FEMA provides notice of a notice of funding opportunity ("NOFO"), NJOHSP can apply for an award by submitting a timely application.

6. In past years, NJOHSP has typically received an HSGP award within four months of application, so that NJOHSP can begin drawing funds on the award by the end of the calendar year.

7. I am familiar with the HSGP, including its sub-component the Urban Area Security Initiative ("UASI"). The UASI provides federal funding to States to build, sustain, and deliver the capabilities necessary to prevent, prepare for, protect against, and respond to acts of terrorism. More specifically, UASI focuses its resources on high-threat, high-density urban areas. FEMA determines the eligible urban areas through an analysis of relative risk of terrorism faced by the 100 most populous metropolitan statistical areas in the United States.

8. UASI funding is administered in New Jersey by NJOHSP.

9. New Jersey has applied for and received funds from UASI since it was created by appropriations statute in 2003.

10. In addition to using HSGP funds themselves, States may pass HSGP funds through to subgrantees for the same purposes. NJOHSP passes 80 percent of HSGP funds on to municipal and county governments. The remaining 20 percent of funding is used to support State agency projects. NJOHSP may take up to 5 percent of the total award to support management and administration costs associated with the grant program.

11. New Jersey relies on UASI funding to assist high-threat, high-density urban area efforts to build, sustain, and deliver the capabilities necessary to prevent, prepare for, protect against, mitigate, respond to, and recover from acts of terrorism.

12. For FFY 2022, NJOHSP passed through UASI funding to seven counties (Bergen, Essex, Hudson, Middlesex, Morris, Passaic, and Union) within New Jersey's UASI region, the two core cities of Newark and Jersey City, eight medical centers within the UASI region, and six State-level agencies, including NJOHSP itself.

13. For FFY 2023, NJOHSP passed through UASI funding to the seven counties within New Jersey's UASI region, the two core cities of Newark and Jersey City, nine medical organizations within the UASI region, and six State-level agencies, including NJOHSP itself.

14. For FFY 2024, NJOHSP passed through UASI funding to the seven counties within New Jersey's UASI region, the two core cities of Newark and Jersey City, one hospital within the UASI region, seven performing arts centers within the UASI region, and four State-level agencies, including NJOHSP itself.

15. Specific efforts funded by these HSGP awards include:

a   Efforts to enhance cybersecurity, including strengthening intelligence and information sharing and providing cybersecurity training.

b   Efforts to enhance the protection of soft targets and crowded places, such as activities to establish a unified approach to active shooter events, funding the salaries of Risk Mitigation Planners, and funding public safety equipment such as security cameras and emergency vehicles.

c   Efforts to enhance information and intelligence sharing, including toward systems for sharing data collected through Automated License Plate Recognition, which helps law enforcement investigate terrorist related activities, as well as investigating crime and locating stolen vehicles.

d   Efforts to combat domestic violent extremism, including funding salaries for staffing, supporting unmanned aircraft system detection, and providing relevant training.

e   Efforts to enhance community preparedness and resilience, including strengthening geospatial infrastructure and mapping, as well as funding toward

public outreach and awareness for the "If You See Something, Say Something" campaign, which is the national effort to raise public awareness of indicators of crime and terrorism.

f   Efforts to address emergent threats, including funding a hospital decontamination project, hazmat equipment, and training on explosives and pyrotechnics.

g   Efforts to implement the National Incident Management System and National Response Framework, which provides a uniform nationwide approach to enable all levels of government, nonprofit organizations, and the private sector to work together to prevent, protect against, mitigate, respond to and recover from incidents.

h   Efforts to enhance public safety communication capabilities, including funding a mass notification system and maintenance on the New Jersey Interoperability Communications System, which is a statewide radio system designed to strengthen communication among local, county, state, and federal first responders.

i   Efforts to enhance medical and health capabilities, including funding mass casualty incident preparedness kits, which include supplies designed to help emergency responders rapidly and effectively respond to large-scale incidents.

j   Efforts to enhance urban search and rescue, including training, equipment, and gear upgrades and replacements.

k   NJOHSP's management and administration of this grant funding, including funding salaries for a financial analyst, grant analysts, and data system manager.

### III.   Unprecedented Cuts Between NOFO and Award This Federal Fiscal Year

16.  NJOHSP has *never* experienced any substantial reduction between the NOFO allocations and the final award under the UASI program. NJOHSP is not aware of any instances where there has been a difference between NJOHSP's allocation under the NOFO and its final award since the inception of this program.

17.  The below table shows New Jersey's target allocations as provided in the NOFO and the final awards since 2017:

| Year | UASI NOFO | UASI Award | Difference |
|------|-----------|------------|------------|
| 2017 | $20,034,000 | $20,034,000 | $0 |
| 2018 | $22,750,000 | $22,750,000 | $0 |
| 2019 | $20,050,000 | $20,050,000 | $0 |
| 2020[1] | $19,050,000 | $19,050,000 | $0 |
| 2021 | $19,050,000 | $19,050,000 | $0 |
| 2022 | $18,915,000 | $18,915,000 | $0 |
| 2023 | $18,631,275 | $18,631,275 | $0 |
| 2024 | $16,722,687 | $16,722,687 | $0 |
| 2025 | $13,928,247 | $3,768,628 | -$10,159,619 |

---

[1] In federal fiscal year 2020, FEMA used "target allocation ranges" instead of a single figure. To be conservative, this table presents the high end of the range rather than the low end, which ultimately corresponded to the final award.

18.   Based on my knowledge and experience in this field, the lack of substantial changes in past years reflects long-established practice at FEMA. Until this year, DHS and FEMA have typically released annual, transparent announcements of the risk allocation methodology around December through February of the fiscal year. FEMA has then typically solicited input and feedback from state and local jurisdictions in order to correct any errors or omissions in the yearly allocation before finalizing it in the NOFO.

19.   As a result, the risk-based target allocation in each year's NOFO has served as a definitive allocation for that fiscal year.

20.   Based on many conversations with counterparts in other States in my years of experience in this field, any changes between NOFO and final award have typically been minor based on specific adjustments tied to programmatic needs. Based on my understanding, FEMA has never before made broad cuts between the NOFO and award stages of the HSGP program.

21.   This year was different. First, the NOFO was delayed. While it typically issues between February and May, this year the months of April, May, and June passed with no indication that DHS had any intention to begin the application process.

22.   Not until July 24, 2025, did FEMA reach out to New Jersey with a request for feedback on the fiscal year 2025 UASI Terrorism Risk Methodology. But the request was woefully incomplete as compared to prior years. FEMA did not offer NJOHSP any opportunity to review the actual draft risk profile for New Jersey on an individualized basis. In addition, in prior years, each state was typically afforded multiple weeks to respond to the Risk Methodology. In contrast, this year, NJOHSP was provided only one day to do so, which did not allow sufficient time to prepare a response.

23. On July 28, 2025, the HSGP NOFO issued. As noted above, it had to be updated twice on the grants.gov website until it reached its final form on August 1, 2025.

24. Even at the NOFO stage, the fiscal year 2025 HSGP NOFO significantly reduced the target allocation to New Jersey for UASI as compared to previous years, as noted above. As compared to fiscal year 2024, FEMA cut New Jersey funding at the NOFO stage by over $2.7 million for UASI.

25. But the worst was yet to come. On September 27, 2025, FEMA provided NJOHSP with its final awards on the HSGP program. Without any explanation, the final award cut NJOHSP's allocation for UASI by $10,159,619, a 73 percent reduction as compared to the NOFO. A true and correct copy of the final award is attached as Exhibit A.

26. These cuts were accomplished by either marking as ineligible or dramatically reducing the proposed funding that would go toward specific local government and State agency efforts.

27. For example, approximately $800,000 had been earmarked to fund equipment, training, and exercises for the State's Metro Urban Search and Rescue Strike Team. This Strike Team is composed of first responders from the State's contiguous urban counties and is designed to provide coordinated rescue capabilities to the region and the State's residents. A large portion of this funding supports overtime compensation for first responders to participate in specialized trainings and exercises, including structural collapse response and trench rescue operations, which are critical for maintaining readiness for real-world emergencies.

28. A target-hardening initiative budgeted at over $1 million, intended to provide critical safety equipment for performance centers in the State's seven urban area counties, is

also at risk. This project would fund physical security enhancements at seven performance centers, tailored to each facility's specific safety needs, including the installation of CCTV systems, upgraded entry control systems, and reinforced bollards.

29.    Similarly, the City of Jersey City planned a $600,000 project to strengthen the protection of soft targets and crowded public spaces by upgrading its network of CCTV video surveillance cameras. This critical security initiative is now jeopardized by the proposed funding reductions.

30.    In addition, each of the seven UASI-region counties in the State were forecasting approximately $100,000 in funding toward a Risk Mitigation Planner (RMP) position. These positions are now at risk due to the proposed funding cuts. The work performed by RMPs is essential to public safety, including mapping critical infrastructure and conducting security and target-hardening assessments for nonprofit facilities throughout the State. The RMPs' planned work for 2026 also includes critical security mapping related to the upcoming FIFA 2026 World Cup, an event certain to attract massive tourism and gatherings of tens of thousands of New Jerseyans and visitors to the State, creating a heightened need for robust public safety efforts.

31.    In connection with the 2026 FIFA World Cup and related events, initiatives planned by the New Jersey Department of Environmental Protection and State Police to mitigate public safety threats also face significant blows. With UASI funding, the State Police had projected purchasing new communications equipment such as earpieces, budgeted at approximately $300,000, to equip security personnel for the 2026 World Cup matches scheduled to take place at MetLife Stadium this coming summer. Likewise, the Department of Environmental Protection had projected an initiative budgeted at over $1 million to support

its screening, search, and detection capabilities in advance of World Cup watch parties slated to take place at Liberty State Park in Jersey City. Without this funding, these projects would be compromised, undermining the State's readiness for World Cup games and events in the surrounding area.

32. The foregoing are only a few examples of the initiatives that would be compromised by the reduction in UASI funding.

33. All the reductions were accompanied by four words of explanation and nothing else: "Adjusted per DHS directive."

## IV. Unprecedented Cuts to the Periods of Performance

34. The term of FEMA preparedness awards has generally been three years, meaning that the award remains open for a three-year period for completing reimbursable activities. Any program activities supported by the awarded funds must be completed within the time the award remains open.

35. It is typical for FEMA preparedness awards to take several years to fully disburse. The HSGP program has used multi-year periods of performance, sometimes even longer than three years, for almost every year of their existence. Moreover, these programs fund essential ongoing operational needs of state and local public safety agencies. As a result, NJOHSP and other state recipients have structured their budgeting systems for HSGP grants around multi-year disbursements.

36. NJOHSP would be unable to fiscally accommodate a sudden change to a one-year period of performance. There are substantial outstanding funds on prior-year grants yet to be expended for their planned uses approved by FEMA in prior years. A one-year period of performance would place the fiscal year 2025 funds on a direct collision course with prior-

year funds, making it impossible to timely sub-obligate all outstanding awards to their directed purposes.

37. As a concrete example of how FEMA has developed, authorized, and permitted the multi-year budget model, in 2023, NJOHSP requested, and FEMA approved, a one-year extension of the period of performance on the FFY 2021 HSGP award into 2024.

38. In addition, FEMA typically extends flexibility during the multi-year periods of performance to make adjustments to funding lines by using the required biannual strategy implementation reports to re-calibrate needs as they evolve during the grant period. The biannual report adjustments represent another way in which FEMA has built multi-year periods of performance into the basic functioning of HSGP.

39. This year, in keeping with past practice, the HSGP NOFO announced that there would be a three-year period of performance.

40. The NOFO explained that applications should frame their budget needs by reference to the anticipated three-year period of performance. HSGP stated that projects must be "able to be fully completed within the three-year period of performance."

41. NJOHSP proposed projects for the NOFO based on that understanding.

42. Yet, without explanation, when the awards issued, the period of performance was reduced to one year on the award, running from October 1, 2025, to September 30, 2026.

43. NJOHSP will face great challenges in obligating the monies on a suddenly truncated period of performance. The ultimate result is likely to be that allocated monies will expire unused, depriving New Jersey of millions of dollars in needed funds for emergency management and preparedness.

44. In my years of experience and based on understanding from others within NJOHSP, New Jersey has never seen FEMA reduce the period of performance announced in a NOFO and relied upon by applicants like this.

## V. Harms to Preparedness Efforts Caused by DHS's Funding and Performance-Period Cuts

45. The Homeland Security Grant Program provides funding for critical equipment, specialized training, and public safety planning activities across the State. If the reallocation of funds reflected in the award letter were to take effect, these programs would face significant reductions or elimination, resulting in decreased preparedness, first responder capabilities, and access to essential equipment necessary to mitigate and respond effectively to emergencies.

46. In addition to the State's ongoing efforts to increase capabilities and upgrade equipment in the localities funded by UASI grants, as well as at the State level, New Jersey has a particularly special need for UASI funding considering the State will be serving as a host for the FIFA 2026 World Cup coming up next year, involving matches taking place at MetLife stadium, a venue with a capacity of over 80,000 spectators. If the reallocation of funds reflected in the award letter were implemented, the reduction of these resources would significantly undermine the State's ability to prevent, mitigate, and respond to security threats associated with this major international event and in the surrounding areas.

47. If the one-year period of performance reflected in the award letter for the HSGP were to take effect, it would result in significant harms. Completing approved projects within such a limited timeframe would present substantial challenges, as these projects involve multiple time-intensive steps, including steps such as obtaining permits, securing approvals

from the appropriate regulators and administrative bodies, and installing complex permanent safety equipment. Achieving all of these steps within a single year for the full scope of projects planned under the anticipated funding would be extremely difficult, if not impossible.

48. The State lacks the budgetary resources and flexibility to make up for the lost funding without drawing funding away from other important public safety and law enforcement operations.

49. The UASI funding allows the State to build and expand capabilities that exceed what regular State and municipal budgets can support. This funding enables the State to address complex threats and strengthen coordination and preparedness in ways that would not be feasible with existing resources alone. Reductions in UASI funding for FFY 2025 would effectively stall the development of critical, not fully established capabilities, undermining the State's ability to enhance public safety and readiness beyond the scope of standard operating budgets.

50. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of October 2025, in Hamilton, New Jersey.

_____
Daniel J. Engelhardt
Deputy Director
New Jersey Office of Homeland Security and Preparedness

# Exhibit A

# Award Letter

U.S. Department of Homeland Security
Washington, D.C. 20472

Effective date: 09/26/2025



Daniel Morocco
HOMELAND SECURITY & PREPAREDNESS, NEW JERSEY DEPARTMENT OF
1200 NEGRON DR
TRENTON, NJ 08691

EMW-2025-SS-05054

Dear Daniel Morocco,

Congratulations on behalf of the Department of Homeland Security, your application submitted for the Fiscal Year (FY) 2025 Homeland Security Grant Program, has been approved in the amount of $9,769,257.00 in Federal funding. This award of federal assistance is executed as a Grant.

Before you request and receive any of the Federal funds awarded to you, you must establish acceptance of the award through the FEMA Grants Outcomes (FEMA GO) system. By accepting this award, you acknowledge that the terms of the following documents are incorporated into the terms of your award:

- Award Summary - included in this document
- Agreement Articles - included in this document
- Obligating Document - included in this document
- Fiscal Year (FY) 2025 Homeland Security Grant Program (HSGP) Notice of Funding Opportunity
- The Preparedness Grant Manual (PGM)

Please make sure you read, understand, and maintain a copy of these documents in your official file for this award.

Sincerely,

Stacey Street
Deputy Assistant Administrator
Grants Program Directorate

# Award Summary

**Program:** Fiscal Year 2025 Homeland Security Grant Program
**Recipient:** HOMELAND SECURITY & PREPAREDNESS, NEW JERSEY DEPARTMENT OF
**UEI-EFT:** W24JBYL47HP5
**Award number:** EMW-2025-SS-05054

## Summary description of award

The Fiscal Year (FY) 2025 Homeland Security Grant Program (HSGP) is one of three grant programs that constitute the DHS/FEMA focus on enhancing the ability of state, local, tribal, and territorial governments, as well as nonprofits, to prevent, protect against, respond to, and recover from terrorist attacks. These grant programs are part of a comprehensive set of measures authorized by Congress and implemented by DHS to help strengthen the Nation's communities against potential terrorist attacks. Among the five basic homeland security missions noted in the DHS Strategic Plan, the HSGP supports the goal to Strengthen National Preparedness and Resilience.

## Amount awarded table

The amount of the award is detailed in the attached Obligating Document for Award.

The following are the budgeted estimates for object classes for this award (including Federal share plus your cost share, if applicable):

| Object Class | Total |
| --- | --- |
| Personnel | $0.00 |
| Fringe benefits | $0.00 |
| Travel | $0.00 |
| Equipment | $9,769,257.00 |
| Supplies | $0.00 |
| Contractual | $0.00 |
| Construction | $0.00 |
| Other | $0.00 |
| Indirect charges | $0.00 |
| Federal | $9,769,257.00 |
| Non-federal | $0.00 |
| Total | $9,769,257.00 |
| Program Income | $0.00 |

## Approved scope of work

After review of your application, FEMA has approved the below scope of work. Justifications are provided for any differences between the scope of work in the original application and the approved scope of work under this award. You must submit scope or budget revision requests for FEMA's prior approval, via an amendment request, as appropriate per 2 C.F.R. § 200.308 and the FY2025 HSGP NOFO.

**Approved request details:**

## Investment

## Developing related terrorism and other catastrophic event prevention activities

DESCRIPTION

purchasing ALPR, intel software

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $6,000,629.00 | $6,000,629.00 |

BUDGET CLASS

Equipment

CHANGE FROM APPLICATION

**Unit price** from **$4,052,620.80** to **$6,000,629.00**

JUSTIFICATION
adjusted per dhs directive

## ~~Developing related terrorism and other catastrophic event prevention activities~~

**Ineligible**

DESCRIPTION

Intel Analyst, software, ALPR

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,013,155.20 | $1,013,155.20 |

BUDGET CLASS

Equipment

CHANGE FROM APPLICATION

**Item** marked **ineligible**

JUSTIFICATION
ds=hs directive - post award adjustment necessary.

## Investment

### Developing related terrorism and other catastrophic event prevention activities

DESCRIPTION

projects will include equipment, training, exercises

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1.00 | $1.00 |

BUDGET CLASS

Equipment

CHANGE FROM APPLICATION

**Unit price** from **$11,142,597.60** to **$1.00**

JUSTIFICATION

per dhs directive - adjustments needed post award.

### Developing and implementing homeland security support programs and adopting ongoing DHS/FEMA national initiatives

DESCRIPTION

projects will be for the purchasing of equipment, conducting training and exercises.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $3,768,627.00 | $3,768,627.00 |

BUDGET CLASS

Equipment

CHANGE FROM APPLICATION

**Unit price** from **$2,785,649.40** to **$3,768,627.00**

JUSTIFICATION

Adjusted per DHS directive. Please update post award.

Of the total Federal funds, $9769257.00 has been placed on hold. See the following terms in the
Agreement Articles for more details:

| Article number | Title | Payment hold |
|---|---|---|
| Article 56 | Funding Hold: Additional Information Required | $9769257.00 |

# Agreement Articles

**Program:** Fiscal Year 2025 Homeland Security Grant Program
**Recipient:** HOMELAND SECURITY & PREPAREDNESS, NEW JERSEY DEPARTMENT OF
**UEI-EFT:** W24JBYL47HP5
**Award number:** EMW-2025-SS-05054

# Table of contents

| Article 1 | Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications |
|---|---|
| Article 2 | General Acknowledgements and Assurances |
| Article 3 | Acknowledgement of Federal Funding from DHS |
| Article 4 | Activities Conducted Abroad |
| Article 5 | Age Discrimination Act of 1975 |
| Article 6 | Americans with Disabilities Act of 1990 |
| Article 7 | Best Practices for Collection and Use of Personally Identifiable Information |
| Article 8 | CHIPS and Science Act of 2022, Public Law 117-167 CHIPS |
| Article 9 | Civil Rights Act of 1964 – Title VI |
| Article 10 | Civil Rights Act of 1968 |
| Article 11 | Communication and Cooperation with the Department of Homeland Security and Immigration Officials |
| Article 12 | Copyright |
| Article 13 | Debarment and Suspension |
| Article 14 | Drug-Free Workplace Regulations |
| Article 15 | Duplicative Costs |
| Article 16 | Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX |
| Article 17 | Energy Policy and Conservation Act |
| Article 18 | Equal Treatment of Faith-Based Organizations |
| Article 19 | Anti-Discrimination |
| Article 20 | False Claims Act and Program Fraud Civil Remedies |
| Article 21 | Federal Debt Status |
| Article 22 | Federal Leadership on Reducing Text Messaging while Driving |
| Article 23 | Fly America Act of 1974 |
| Article 24 | Hotel and Motel Fire Safety Act of 1990 |
| Article 25 | John S. McCain National Defense Authorization Act of Fiscal Year 2019 |
| Article 26 | Limited English Proficiency (Civil Rights Act of 1964, Title VI) |

Article 27    Lobbying Prohibitions

Article 28    National Environmental Policy Act

Article 29    National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254

Article 30    Non-Supplanting Requirement

Article 31    Notice of Funding Opportunity Requirements

Article 32    Patents and Intellectual Property Rights

Article 33    Presidential Executive Orders

Article 34    Procurement of Recovered Materials

Article 35    Rehabilitation Act of 1973

Article 36    Reporting Recipient Integrity and Performance Matters

Article 37    Reporting Subawards and Executive Compensation

Article 38    Required Use of American Iron, Steel, Manufactured Products, and Construction Materials

Article 39    SAFECOM

Article 40    Subrecipient Monitoring and Management

Article 41    System for Award Management and Unique Entity Identifier Requirements

Article 42    Termination of a Federal Award

Article 43    Terrorist Financing

Article 44    Trafficking Victims Protection Act of 2000(TVPA)

Article 45    Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56

Article 46    Use of DHS Seal, Logo and Flags

Article 47    Whistleblower Protection Act

Article 48    Environmental Planning and Historic Preservation (EHP) Review

Article 49    Applicability of DHS Standard Terms and Conditions to Tribal Nations

Article 50    Acceptance of Post Award Changes

Article 51    Disposition of Equipment Acquired Under the Federal Award

Article 52    Prior Approval for Modification of Approved Budget

**Article 53**  Indirect Cost Rate

**Article 54**  Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification

**Article 55**  HSGP Performance Goal

**Article 56**  Funding Hold: Additional Information Required

**Article 57**  Non-Applicability of Specific Agreement Articles

**Article 58**  Period of Performance and Budget Period

**Article 59**  State Homeland Security Program: Compliance with Federal Immigration Law

**Article 60**  State Homeland Security Program: Non-Applicability of Specific Terms and Agreement Articles

**Article 61**  State Homeland Security Program: Impact of San Francisco v. Trump Preliminary Injunction

**Article 62**  State Homeland Security Program: Impact of State of Illinois v. FEMA Injunction

**Article 63**  Urban Area Security Initiative: Compliance with Federal Immigration Law

**Article 64**  Urban Area Security Initiative: Non-Applicability of Specific Terms and Agreement Articles

**Article 65**  Urban Area Security Initiative: Impact of San Francisco v. Trump Preliminary Injunction

**Article 66**  Urban Area Security Initiative: Impact of State of Illinois v. FEMA Injunction

**Article 67**  Summary Description of Award and Subprograms

| Article 1 | **Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications**<br>I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed. |
| --- | --- |
| Article 2 | **General Acknowledgements and Assurances**<br>Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10. All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337. I. Recipients must cooperate with any DHS compliance reviews or compliance investigations. II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel. III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports. IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference. V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance. |
| Article 3 | **Acknowledgement of Federal Funding from DHS**<br>Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds. |
| Article 4 | **Activities Conducted Abroad**<br>Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals. |
| Article 5 | **Age Discrimination Act of 1975**<br>Recipients must comply with the requirements of the Age Discrimination Act of 1975, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 et seq.), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance. |

| | |
|---|---|
| **Article 6** | **Americans with Disabilities Act of 1990**<br>Recipients must comply with the requirements of Titles I, II, and III of the Americans with Disabilities Act, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities. |
| **Article 7** | **Best Practices for Collection and Use of Personally Identifiable Information**<br>(1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect. (2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively. |

| | |
|---|---|
| **Article 8** | **CHIPS and Science Act of 2022, Public Law 117-167 CHIPS** |
| | (1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution. (2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include: (a) Award number, (b) Name of PI or Co-PI being reported, (c) Awardee name, (d) Awardee address, (e) AOR name, title, phone, and email address, (f) Indication of the report type: (i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made. (ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment. (iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the Family Educational Rights in Privacy Act. (3) Definitions. (a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements. (b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law. (c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations. (d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity. (e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor. |
| **Article 9** | **Civil Rights Act of 1964 – Title VI** |
| | Recipients must comply with the requirements of Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d et seq.), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7. |

| | |
|---|---|
| **Article 10** | **Civil Rights Act of 1968** |
| | Recipients must comply with Title VIII of the Civil Rights Act of 1968, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 et seq.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.) |
| **Article 11** | **Communication and Cooperation with the Department of Homeland Security and Immigration Officials** |
| | (1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: (a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity; (b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes; (c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance; (d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and (e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation. (2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award. (3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term. |

| **Article 12** | **Copyright** |
|---|---|
| | Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so. |
| **Article 13** | **Debarment and Suspension** |
| | Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities. |
| **Article 14** | **Drug-Free Workplace Regulations** |
| | Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 8101-8106). |
| **Article 15** | **Duplicative Costs** |
| | Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions. |
| **Article 16** | **Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX** |
| | Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 et seq.), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19. |
| **Article 17** | **Energy Policy and Conservation Act** |
| | Recipients must comply with the requirements of the Energy Policy and Conservation Act, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 et seq.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act. |

| Article 18 | **Equal Treatment of Faith-Based Organizations** |
|---|---|
| | It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries. Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs. |
| Article 19 | **Anti-Discrimination** |
| | Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4). (1) Definitions. As used in this clause – (a) DEI means "diversity, equity, and inclusion." (b) DEIA means "diversity, equity, inclusion, and accessibility." (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025. (d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin. (e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.(2) Grant award certification. (a) By accepting the grant award, recipients are certifying that: (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and (ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott. (iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration. (3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2). (4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law. |
| Article 20 | **False Claims Act and Program Fraud Civil Remedies** |
| | Recipients must comply with the requirements of the False Claims Act, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.) |
| Article 21 | **Federal Debt Status** |
| | All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129. |

| | |
|---|---|
| **Article 22** | **Federal Leadership on Reducing Text Messaging while Driving**<br>Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513. |
| **Article 23** | **Fly America Act of 1974**<br>Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List \| US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-aircarriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the International Air Transportation Fair Competitive Practices Act of 1974, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942. |
| **Article 24** | **Hotel and Motel Fire Safety Act of 1990**<br>Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the Hotel and Motel Fire Safety Act of 1990, 15 U.S.C. § 2225a. |
| **Article 25** | **John S. McCain National Defense Authorization Act of Fiscal Year 2019**<br>Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons. |
| **Article 26** | **Limited English Proficiency (Civil Rights Act of 1964, Title VI)**<br>Recipients must comply with Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help- department-supported-organizationsprovide-meaningful-access-people-limited and additional resources on http://www.lep.gov. |

| **Article 27** | **Lobbying Prohibitions** |
|---|---|
| | Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL). |
| **Article 28** | **National Environmental Policy Act** |
| | Recipients must comply with the requirements of the National Environmental Policy Act of 1969, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 et seq.) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans. |
| **Article 29** | **National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254** |
| | (1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to: (a) cybersecurity; (b) foreign travel security; (c) research security training; and (d) export control training, as appropriate. (2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year." |
| **Article 30** | **Non-Supplanting Requirement** |
| | Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose. |
| **Article 31** | **Notice of Funding Opportunity Requirements** |
| | All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect. |

| | |
|---|---|
| **Article 32** | **Patents and Intellectual Property Rights**<br>Recipients are subject to the Bayh-Dole Act, 35 U.S.C. § 200 et seq. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14. |
| **Article 33** | **Presidential Executive Orders**<br>Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference. |
| **Article 34** | **Procurement of Recovered Materials**<br>States, political subdivisions of states, and their contractors must comply with Section 6002 of the Solid Waste Disposal Act, Pub. L. No. 89-272 (1965) (codified as amended by the Resource Conservation and Recovery Act at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition. |
| **Article 35** | **Rehabilitation Act of 1973**<br>Recipients must comply with the requirements of Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. |
| **Article 36** | **Reporting Recipient Integrity and Performance Matters**<br>If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference. |
| **Article 37** | **Reporting Subawards and Executive Compensation**<br>For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference. |

**Article 38**    **Required Use of American Iron, Steel, Manufactured Products, and Construction Materials**

(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless: (a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States; (b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and (c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States. (2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project. (3) Waivers When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements. (a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that: (i) applying the domestic content procurement preference would be inconsistent with the public interest; (ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or (iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent. (b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office. (c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov. (4) Definitions. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

| | |
|---|---|
| **Article 39** | **SAFECOM**<br>Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment \| CISA. |
| **Article 40** | **Subrecipient Monitoring and Management**<br>Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333. |
| **Article 41** | **System for Award Management and Unique Entity Identifier Requirements**<br>Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference. |
| **Article 42** | **Termination of a Federal Award**<br>(1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons: (a) If the recipient fails to comply with the terms and conditions of the federal award; (b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or (c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities. (3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety. (4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination. (5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344200.345 after an award is terminated. |
| **Article 43** | **Terrorist Financing**<br>Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws. |

**Article 44**    **Trafficking Victims Protection Act of 2000(TVPA)**
Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference.

**Article 45**    **Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56**
Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c.

**Article 46**    **Use of DHS Seal, Logo and Flags**
Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials.

**Article 47**    **Whistleblower Protection Act**
Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712.

**Article 48**    **Environmental Planning and Historic Preservation (EHP) Review**
DHS/FEMA funded activities that could have an impact on the environment are subject to the FEMA EHP review process. This review does not address all federal, state, and local requirements. Acceptance of federal funding requires the recipient to comply with all federal, state, and local laws. DHS/FEMA is required to consider the potential impacts to natural and cultural resources of all projects funded by DHS/FEMA grant funds, through its EHP review process, as mandated by: the National Environmental Policy Act; Endangered Species Act; National Historic Preservation Act of 1966, as amended; Clean Water Act; Clean Air Act; National Flood Insurance Program regulations; and any other applicable laws, regulations and executive orders. General guidance for FEMA's EHP process is available on the DHS/FEMA Website. Specific applicant guidance on how to submit information for EHP review depends on the individual grant program. Applicants should contact their grant Program Officer to be put into contact with EHP staff responsible for assisting their specific grant program. The FEMA EHP review process must be completed before funds are released to carry out the proposed project, otherwise, DHS/FEMA may not be able to fund the project due to noncompliance with EHP laws, executive orders, regulations, and policies. DHS/FEMA may also need to perform a project closeout review to ensure the applicant complied with all required EHP conditions identified in the initial review. If ground disturbing activities occur during construction, the applicant will monitor the ground disturbance, and if any potential archaeological resources are discovered, the applicant will immediately cease work in that area and notify the pass-through entity, if applicable, and DHS/FEMA. EO 11988, Floodplain Management, and EO 11990, Protection of Wetlands, require that all federal actions in or affecting the floodplain or wetlands be reviewed for opportunities to relocate, and be evaluated for social, economic, historical, environmental, legal, and safety considerations. FEMA's regulations at 44 C.F.R. Part 9 implement the EOs and require an eight-step review process if a proposed action is in a floodplain or wetland or has the potential to affect or be affected by a floodplain or wetland. The regulation also requires that the federal agency provide public notice of the proposed action at the earliest possible time to provide the opportunity for public involvement in the decision-making process (44 C.F.R. § 9.8). Where there is no opportunity to relocate the federal action, FEMA is required to undertake a detailed review to determine what measures can be taken to minimize future damages to the floodplain or wetland.

**Article 49**    **Applicability of DHS Standard Terms and Conditions to Tribal Nations**
The DHS Standard Terms and Conditions are a restatement of general requirements imposed upon recipients and flow down to sub-recipients as a matter of law, regulation, or executive order. If the requirement does not apply to Tribal Nations, or there is a federal law or regulation exempting its application to Tribal Nations, then the acceptance by Tribal Nations, or acquiescence to DHS Standard Terms and Conditions does not change or alter its inapplicability to a Tribal Nation. The execution of grant documents is not intended to change, alter, amend, or impose additional liability or responsibility upon the Tribal Nations where it does not already exist.

| **Article 50** | **Acceptance of Post Award Changes** |
|---|---|
| | In the event FEMA determines that an error in the award package has been made, or if an administrative change must be made to the award package, recipients will be notified of the change in writing. Once the notification has been made, any subsequent requests for funds will indicate recipient acceptance of the changes to the award. Please email FEMA Grant Management Operations at: ASK-GMD@fema.dhs.gov for any questions. |
| **Article 51** | **Disposition of Equipment Acquired Under the Federal Award** |
| | When original or replacement equipment acquired under this award is no longer needed for the original project or program or for other activities currently or previously supported by a federal awarding agency, the non-state recipient or subrecipient (including subrecipients of a State or Tribal Nation), must request instructions from FEMA to make proper disposition of the equipment pursuant to 2 C.F.R. section 200.313(e). State recipients must follow the disposition requirements in accordance with State laws and procedures. 2 C.F.R. section 200.313(b). Tribal Nations must follow the disposition requirements in accordance with Tribal laws and procedures noted in 2 C.F.R. section 200.313(b); and if such laws and procedures do not exist, then Tribal Nations must follow the disposition instructions in 2 C.F.R. section 200.313(e). |
| **Article 52** | **Prior Approval for Modification of Approved Budget** |
| | Before making any change to the FEMA approved budget for this award, a written request must be submitted and approved by FEMA as required by 2 C.F.R. section 200.308. For purposes of non-construction projects, FEMA is utilizing its discretion to impose an additional restriction under 2 C.F.R. section 200.308(i) regarding the transfer of funds among direct cost categories, programs, functions, or activities. For awards with an approved budget where the federal share is greater than the simplified acquisition threshold (currently $250,000) and where the cumulative amount of such transfers exceeds or is expected to exceed ten percent (10%) of the total budget FEMA last approved, transferring funds among direct cost categories, programs, functions, or activities is unallowable without prior written approval from FEMA. For purposes of awards that support both construction and non-construction work, 2 C.F.R. section 200.308((f)(9) requires the recipient to obtain prior written approval from FEMA before making any fund or budget transfers between the two types of work. Any deviations from a FEMA approved budget must be reported in the first Federal Financial Report (SF-425) that is submitted following any budget deviation, regardless of whether the budget deviation requires prior written approval. |
| **Article 53** | **Indirect Cost Rate** |
| | 2 C.F.R. section 200.211(b)(16) requires the terms of the award to include the indirect cost rate for the federal award. If applicable, the indirect cost rate for the award is stated in the budget documents or other materials approved by FEMA and included in the award file. |

| | |
|---|---|
| **Article 54** | **Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification**<br>In addition to the DHS Standard Terms & Conditions regarding Required Use of American Iron, Steel, Manufactured Products, and Construction Materials, recipients and subrecipients of FEMA financial assistance for programs that are subject to BABAA must include a Buy America preference contract provision as noted in 2 C.F.R. section 184.4 and a self-certification as required by the FEMA Buy America Preference in FEMA Financial Assistance Programs for Infrastructure (FEMA Interim Policy #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). This requirement applies to all subawards, contracts, and purchase orders for work performed, or products supplied under the FEMA award subject to BABAA. |
| **Article 55** | **HSGP Performance Goal**<br>In addition to the Biannual Strategy Implementation Report (BSIR) submission requirements outlined in the Preparedness Grants Manual, recipients must demonstrate how the grant-funded project addressed the core capability gap associated with this project and identified in the Threat and Hazard Identification and Risk Analysis (THIRA) or Stakeholder Preparedness Review (SPR) or sustains existing capabilities as applicable. The capability gap reduction must be addressed in the Project Description of the BSIR for each project. |
| **Article 56** | **Funding Hold: Additional Information Required**<br>FEMA has placed a funding hold on this award, and $9,769,257 is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the following Homeland Security Grant Program subprogram(s)/investment(s). To release the funding hold, the recipient must provide a detailed cost breakdown and justification for the investments/projects listed above. FEMA will rescind the funding hold upon its review and approval of the detailed cost breakdown and justification. If you have questions about this funding hold, please contact the DHS/FEMA Headquarters Preparedness Officer. |
| **Article 57** | **Non-Applicability of Specific Agreement Articles**<br>Notwithstanding its inclusion in this award package, the following Agreement Article does not apply to this grant award: 1. Termination of a Federal Award. This provision is consistent with any terms of the Notice of Funding Opportunity that state Paragraph C.XL (Termination of a Federal Award) of the FY 2025 DHS Standard Terms and Conditions does not apply to this award. Refer to the Notice of Funding Opportunity for the terms governing award termination. |
| **Article 58** | **Period of Performance and Budget Period**<br>Notwithstanding language in the Obligating Document or in the other terms of this award package, the Period of Performance and the Budget Period for this grant award is October 1, 2025 to September 30, 2026. The Period of Performance and Budget Period stated in the Obligating Document shall not apply. |

**Article 59**    **State Homeland Security Program: Compliance with Federal Immigration Law**

The following term applies to State Homeland Security Program funding under this award: 1. Prohibition a. The state, territorial, or local recipient is prohibited from being designated by the Department of Homeland Security or the Department of Justice as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state or territory as a sanctuary jurisdiction after the Department of Homeland Security makes a grant award, the state or territorial recipient is prohibited from making any financial obligations under the grant award on or after the date of designation until the Department of Homeland Security removes that designation. The Department of Homeland Security will suspend that portion of the grant award supported by risk-based funding and not make payments to the state or territorial recipient on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. This term and condition applies to the funding provided under the relative risk methodology pursuant to Section 2007 of the Homeland Security Act of 2002 (6 U.S.C. § 608) and does not apply to the minimum allocation to that state or territory required by Section 2004(e) of the Homeland Security Act of 2002 (6 U.S.C. § 605(e)). b. The state, territorial, or local recipient is prohibited from making subawards to a state, territorial, or local government that the Department of Homeland Security or Department of Justice has designated as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state, territorial, or local government as a sanctuary jurisdiction after the state, territorial, or local government recipient makes a subaward to that state, territorial, or local government, the state, territorial, or local recipient must suspend the subaward, the state, territorial, or local recipient must not make any additional payments to the state, territorial, or local government, and the state, territorial, or local government is prohibited from making any financial obligations under the subaward on and after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. This term and condition applies to all funding provided to the state or territorial recipient, including both the statutory minimum as well as risk-based funding allocations. c. The Department of Homeland Security designates a state, territory, or local government as a sanctuary jurisdiction if it fails to comply with that requirements set forth in paragraphs 2.a.i to v of this term and condition. 2. Certification a. The state, territorial or local recipient and subrecipients must certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity. ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. §

1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes. iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien. v. They will not leak or otherwise publicize the existence of an immigration enforcement operation. b. The state or territorial recipient must require a state, territorial, or local government subrecipient to make the certification above before providing them with any funding under the subaward. 3. Materiality and Remedies for Noncompliance This term and condition is material to the Department of Homeland Security's decision to continue with this grant award and the Department of Homeland Security may take any remedy for noncompliance, including termination, if the state or territorial recipient or a local government subrecipient fails to comply with this term and condition.

| Article 60 | **State Homeland Security Program: Non-Applicability of Specific Terms and Agreement Articles**<br>The following term applies to State Homeland Security Program funding under this award: Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; and (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package. |
|---|---|
| Article 61 | **State Homeland Security Program: Impact of San Francisco v. Trump Preliminary Injunction**<br>The following term applies to State Homeland Security Program funding under this award: Pursuant to the preliminary injunction order issued on August 22, 2025, in City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the preliminary injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article. If the preliminary injunction is stayed, vacated, or extinguished, the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |

**Article 62**     **State Homeland Security Program: Impact of State of Illinois v. FEMA Injunction**

Pursuant to the memorandum and order issued on September 24, 2025, in State of Illinois, et al. v. Federal Emergency Management Agency, et. al, No. 25-206 (D. R.I.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article. If the injunction is stayed, vacated, or extinguished, the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article will immediately become effective.

**Article 63**   **Urban Area Security Initiative: Compliance with Federal Immigration Law**
The following term applies to Urban Area Security Initiative funding under this award: 1. Prohibition a. The state, territorial, or local government recipient is prohibited from being designated by the Department of Homeland Security or Department of Justice as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates the state, territory, or local government as a sanctuary jurisdiction after the Department of Homeland Security has made the grant award, the state, territorial, or local government recipient is prohibited from making any financial obligations under the grant award on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. The Department of Homeland Security will suspend the grant award and not make payments to the state, local, or territorial recipient on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. b. The state, local, or territorial recipient is prohibited from making subawards to a state, local, or territorial government that the Department of Homeland Security or Department of Justice has designated as sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state, local, or territorial government as a sanctuary jurisdiction after the recipient makes a subaward, the recipient must suspend the subaward, the recipient must not make any additional payments to the subrecipient, and the subrecipient is prohibited from making any financial obligations under the subaward on and after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. c. The Department of Homeland Security designates a state, territory, or local government as a sanctuary jurisdiction if it fails to comply with that requirements set forth in paragraphs 2.a.i to v of this term and condition. 2. Certification a. The state, territorial or local recipient and subrecipients must certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity. ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes. iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien. v. They will not leak or otherwise publicize the

existence of an immigration enforcement operation. b. The state or territorial recipient must require a state, territorial, or local government subrecipient to make the certification above before providing them with any funding under the subaward.

| | |
|---|---|
| Article 64 | **Urban Area Security Initiative: Non-Applicability of Specific Terms and Agreement Articles**<br>The following term applies to Urban Area Security Initiative funding under this award: Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; and (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package. |
| Article 65 | **Urban Area Security Initiative: Impact of San Francisco v. Trump Preliminary Injunction**<br>The following term applies to Urban Area Security Initiative funding under this award: Pursuant to the preliminary injunction order issued on August 22, 2025, in City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the preliminary injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Urban Area Security Initiative: Compliance with Federal Immigration Law" Agreement Article. If the preliminary injunction is stayed, vacated, or extinguished, the "Urban Area Security Initiative; Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |

**Article 66**    **Urban Area Security Initiative: Impact of State of Illinois v. FEMA Injunction**

The following term applies to Urban Area Security Initiative funding under this award: Pursuant to the memorandum and order issued on September 24, 2025, in State of Illinois, et al. v. Federal Emergency Management Agency, et. al, No. 25-206 (D. R.I.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Urban Area Security Initiative: Compliance with Federal Immigration Law" Agreement Article. If the injunction is stayed, vacated, or extinguished, the "Urban Area Security Initiative: Compliance with Federal Immigration Law" Agreement Article will immediately become effective.

**Article 67**    **Summary Description of Award and Subprograms**

The purpose of the FY 2025 HSGP is to support state and local efforts to prevent terrorism and other catastrophic events and to prepare the Nation for the threats and hazards that pose the greatest risk to the security of the United States. The HSGP provides funding to implement investments that build, sustain, and deliver the 32 core capabilities essential to achieving the National Preparedness Goal of a secure and resilient Nation. Among the five basic homeland security missions noted in the DHS Quadrennial Homeland Security Review, HSGP supports the goal to Strengthen National Preparedness and Resilience. The building, sustainment, and delivery of these core capabilities are not exclusive to any single level of government, organization, or community, but rather, require the combined effort of the whole community. This HSGP award consists of State Homeland Security Program (SHSP) funding in the amount of $6,000,629 and Urban Area Security Initiative (UASI) funding in the amount of $3,768,628 (Newark-Jersey City-New Brunswick Urban Area, $3,768,628). These grant programs fund a range of activities, including planning, organization, equipment purchase, training, exercises, and management and administration across all core capabilities and mission areas.

# Obligating document

| 1. Agreement No. EMW-2025-SS-05054 | 2. Amendment No. N/A | 3. Recipient No. 216000928 | 4. Type of Action AWARD | 5. Control No. WX04775N2025T, WX04777N2025T | |
|---|---|---|---|---|---|
| 6. Recipient Name and Address HOMELAND SECURITY & PREPAREDNESS, NEW JERSEY DEPARTMENT OF 1200 NEGRON RD TRENTON, NJ 08691 | | | 7. Issuing FEMA Office and Address Grant Programs Directorate 500 C Street, S.W. Washington DC, 20528-7000 1-866-927-5646 | | 8. Payment Office and Address FEMA, Financial Services Branch 500 C Street, S.W., Room 723 Washington DC, 20742 |
| 9. Name of Recipient Project Officer Daniel Morocco | | 9a. Phone No. 6095844832 | 10. Name of FEMA Project Coordinator Homeland Security Grant Program Grant Program | | 10a. Phone No. 1-877-585-3242 |
| 11. Effective Date of This Action 09/26/2025 | | 12. Method of Payment OTHER - FEMA GO | 13. Assistance Arrangement COST REIMBURSEMENT | | 14. Performance Period 10/01/2025 to 09/30/2026 **Budget Period** 10/01/2025 to 09/30/2026 |

| 15. Description of Action a. (Indicate funding data for awards or financial changes) | | | | | | |
|---|---|---|---|---|---|---|
| Program Name Abbreviation | Assistance Listing No. | Accounting Data (ACCS Code) | Prior Total Award | Amount Awarded This Action + or (-) | Current Total Award | Cumulative Non-Federal Commitment |
| HSGP | 97.067 | 2025-FA-GG01 - P410-xxxx-4101-D | $0.00 | $6,000,629.00 | $6,000,629.00 | See Totals |
| HSGP | 97.067 | 2025-FA-GH01 - P410-xxxx-4101-D | $0.00 | $3,768,628.00 | $3,768,628.00 | See Totals |
| | | Totals | $0.00 | $9,769,257.00 | $9,769,257.00 | $0.00 |

**b. To describe changes other than funding data or financial changes, attach schedule and check here:**
N/A

~~16.FOR NON-DISASTER PROGRAMS: RECIPIENT IS REQUIRED TO SIGN AND RETURN THREE (3) COPIES OF THIS DOCUMENT TO FEMA (See Block 7 for address)~~
This field is not applicable for digitally signed grant agreements

| 17. RECIPIENT SIGNATORY OFFICIAL (Name and Title) | DATE |
|---|---|
| 18. FEMA SIGNATORY OFFICIAL (Name and Title) Stacey Street, Deputy Assistant Administrator Grants Program Directorate | DATE 09/26/2025 |