**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>  *Defendants.* | No. 1:25-cv-00495 |

# EXHIBIT 25

# Declaration of Kelly Ottobre

<u>**DECLARATION OF KELLY OTTOBRE**</u>

I, Kelly Ottobre, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am over the age of eighteen and understand the obligations of an oath.

2.      I am the Director of Grant Operations at the New Jersey Department of Law and Public Safety ("NJLPS"). I have held this role since December 19, 2020. I make this declaration based on personal knowledge, professional experience, information compiled from personnel within NJLPS, publicly-available information, and documents that have been provided to me.

3.      NJLPS is a principal Department of New Jersey's executive branch. NJLPS includes, among other Divisions, the New Jersey State Police. The New Jersey Office of Emergency Management ("NJOEM") is a Section within the Division of New Jersey State Police. NJOEM oversees the State's emergency management program and coordinates with federal, state, and local agencies for preparedness, response, and recovery for natural disasters and technological and human-caused incidents. NJOEM plays an integral role in facilitating and delivering training for first responders and emergency management personnel. In its role as the lead emergency management agency for New Jersey, NJOEM administers federal grant program funds pertaining to mitigation and recovery. NJLPS and NJOEM each apply for federal grants through the federal Unique Entity Identifier assigned to NJLPS.

### I.   **Emergency Management Performance Grant Program**

4.      I am familiar with the Emergency Management Performance Grants ("EMPG") program. The purpose of the EMPG Program is to provide federal funding and resources to strengthen overall emergency management infrastructure and serve as a catalyst for training first responders, developing comprehensive emergency plans, and acquiring essential equipment and resources. EMPG funds are typically used by grant recipients to fund costs that support

preparedness efforts to build and sustain core capabilities across the prevention, protection, mitigation, response and recovery mission areas.

5. LPS is the State agency that applies for and receives EMPG funds from the U.S. Department of Homeland Security (DHS) on a yearly basis. Use of the funding is then administered by NJOEM.

6. Because EMPG grants are formula grants and are not competitive grants, each State is entitled to a specific allocation whenever a notice of funding opportunity (NOFO) is posted.

7. The State of New Jersey has applied for and received EMPG funds from the federal government every year since 2006.

8. New Jersey uses EMPG funds to pay for the salaries of full-time and contract staff who are engaged in developing and updating emergency plans for natural and human-caused disasters, such as the State Emergency Operations Plan, hurricane response plans, and severe weather plans and procedures. The funds further provide for emergency management training, including delivery of State and FEMA emergency management classes. EMPG funds also provide for State and regional exercises as well as support for local exercises. As an example, recent exercises are focused on extensive preparedness and response efforts for the State's hosting of the 2025 FIFA Club Cup and 2026 FIFA World Cup. The funds also go to resource and response support for incidents in New Jersey that cannot be handled at the local level, and to purchase vehicles and special equipment used for incident preparedness and response.

9. In addition to using EMPG funds themselves, NJOEM typically subawards EMPG funds through to subgrantees for the same purposes. NJOEM passes approximately $1 million of EMPG funds on to county and municipal emergency management agencies. The amounts passed through to localities under the EMPG program likewise fund the salaries of local emergency

managers and local support staff across New Jersey as well as software and communications to support local emergency response. Without these funds, local jurisdictions may not have sufficient funding support to build emergency management programs, operations plans, and exercise plans, all of which contribute to resiliency and preparedness.

10.     EMPG funds are vital to local communities to help build capacity and sustain vital programs.

11.     Once DHS provides notice of an EMPG funding opportunity, LPS can apply for an award by submitting a timely application. As noted above, because EMPG is a formula grant, and not a competitive grant, each state is entitled to an allocation whenever a grant is awarded.

12.     The term of EMPG awards is typically 3 years, meaning that the award remains open for a 3-year period, subject to extension at the discretion of DHS. Any program activities supported by the awarded funds must be completed within the time the award remains open. After the award closes, any remaining unpaid obligations from such program activities must be paid within 120 days of the close date.

13.     New Jersey currently relies on open EMPG awards from FFY2022, FFY2023, and FFY2024.

   a.   For FFY2024, LPS received $7,658,501 and has $4,725,642.71 remaining.

   b.   For FFY2023, LPS received $8,518,986.00 and has $551,282.09 remaining.

   c.   For FFY2022, LPS received $9,794,016.00 and has $71,801.51 remaining.

14.     EMPG funding is the primary enabler to develop both state and local resilience programs for emergency management.

## II. Unprecedented Cuts to the Periods of Performance

16.     It is typical for FEMA preparedness awards, including EMPG awards, to take several years to fully disburse. The EMPG programs have used multi-year periods of performance,

3

sometimes even longer than three years, for almost every year of their existence. Moreover, these programs fund essential ongoing operational needs of state and local public safety agencies. As a result, NJOEM and other state recipients have structured their budgeting systems for EMPG grants around multi-year disbursements.

17.     NJOEM would be unable to fiscally accommodate a sudden change to a one-year period of performance. There are substantial outstanding funds on prior-year grants yet to be expended for their planned uses approved by FEMA in prior years. A one-year period of performance would place the fiscal year 2025 funds on a direct collision course with prior-year funds, making it impossible to timely obligate all outstanding awards to their directed purposes.

18.     The one-year period of performance would disrupt the multi-year training schedule NJOEM developed based on EMPG's three-year period of performance. A one-year period of performance would constrain ability to attend several important training courses. Many national training courses have long lead times for registration and travel authorization. NJOEM would lose the ability to prepay or commit to multi-year training initiatives. Reduced participation would degrade NJOEM's ability to stay up to date on Preparedness, Response and Recovery issues.

19.     Procurement delays are an inherent part of the state's purchasing process. A one-year period of performance would therefore make it difficult to plan, procure, receive, and pay for larger equipment items such as vehicles, communications systems, detection devices and HazMat supplies within a single grant cycle. Vehicles would specifically be a challenge. There are only two open periods to purchase vehicles during a fiscal year. With the build and upfitting of the vehicle, typical delivery of a completed vehicle takes over a year.

20.     The process of passing through funds includes an application period, technical review, and award notification. This process typically takes longer than one year to complete.

21.    This year, in keeping with past practice, the EMPG NOFO announced that there would be a three-year period of performance.

22.    EMPG stated that "[e]ach goal must be specific, measurable, and achievable within the period of performance."

23.    NJOEM proposed projects for the EMPG NOFO on that understanding.

24.    Yet, without explanation, when the awards were issued, the period of performance was reduced to one year for the EMPG award, running from October 1, 2025, to September 30, 2026.

25.    NJOEM will face extraordinary challenges in obligating the monies on a suddenly truncated period of performance, especially considering that the EMPG is a dollar for dollar match grant, meaning the State will now be required to match the grant amount in one year as opposed to three years. The ultimate result is likely to be that allocated monies will expire unused, depriving New Jersey of millions of dollars in needed funds for emergency management and preparedness.

26.    In my 5 years of experience, I have never seen FEMA reduce the period of performance announced in a NOFO.

### III.    The EMPG Population Certification Condition

27.    The Department of Homeland Security (DHS) published the EMPG NOFO on July 28, 2025, amending it the next day to correct the program title. The NOFO did not include any language stating that States would have to provide any verification of their population in order to apply for or receive EMPG funds.

28.    On September 27, 2025, FEMA issued EMPG awards for FY 2025 (Award Letter). Three days later, on September 30, FEMA released revised (though not re-dated) EMPG award letters through the FEMAGo portal including the new term described in the next paragraph.

5

29.     The Award Letter included a lengthy list of "Agreement Articles," the last of which reads as follows:

**Article 62 Funding Hold: Verification of State's Population**

FEMA has placed a funding hold on this award, and the full amount of the award is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the award.

To release the funding hold, the SAA must provide a certification of the recipient state's population as of September 30, 2025. In so doing, the State will explain the methodology it used to determine its population and certify that its reported population does not include individuals that have been removed from the State pursuant to the immigration laws of the United States.

FEMA will rescind the funding hold upon its review and approval of the State's methodology and population certification.

30.     In my 5 years of experience, I have never seen a funding hold based on a population certification condition imposed on any federal grant. Specifically, I understand that no population certification condition has ever been imposed on EMPG funds since that program was created in 2006, until FEMA did so on September 27, 2025. Instead, I understand that EMPG has always been administered using U.S. census data, without any additional calculations performed by States.

31.     FEMA has offered NJOEM no explanation as to why it was imposing this new population certification condition.

32.     NJOEM does not have a record of people who have been removed from the State pursuant to federal immigration laws, and as far as I am aware no other agency in New Jersey keeps such a record.

33.     I have learned that DHS has, at times, published publicly available statistics regarding the number of individuals whom it has removed, returned, or expelled, but to my knowledge, DHS has not updated that data since November 2024, and DHS has not published state-specific data.

34.    In trying to understand this population certification condition, I have found many of the terms ambiguous. The population certification condition fails to define what it means for an individual to be removed "pursuant to the immigration laws of the United States."

35.    I believe it would be impossible to certify the precise population in New Jersey as of September 30, 2025, without engaging in months of work and investing substantial funds towards the task—and possibly not even then.

## IV.    Harms to Preparedness Efforts Caused by DHS's Funding Cuts, Performance-Period Cuts, and Population Certification Condition

36.    If the one-year period of performance reflected in the award letter for the EMPG program took effect, the result would be the inability to pay salaries, attend necessary trainings, procure critical HazMat equipment, purchase vehicles and communication systems essential for preparing States and localities for natural disasters and emergencies caused by humans.

37.    If the EMPG funds are held up entirely pursuant to the population certification condition, sufficient funding would not exist to support training, purchase of equipment, and performance of exercises associated with preparing State and localities for natural disasters or emergencies caused by humans.

38.    The State does not have the budgetary resources or flexibility to make up for the lost funding without drawing funding away from other important public safety and law enforcement operations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of October, 2025, in Trenton, New Jersey.

Kelly Ottobre

7