**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| STATE OF ILLINOIS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*, <br><br> *Defendants*. | No. 1:25-cv-00495 |

# EXHIBIT 29

## Declaration of Marc R. Pappas

## DECLARATION OF MARC R. PAPPAS

I, Marc R. Pappas, pursuant to 28 U.S.C. § 1746, hereby declare:

1.     I am over the age of eighteen and understand the obligations of an oath.

2.     I am the Director  of the Rhode Island  Emergency Management Agency ("RIEMA"). I have held this role since 2018. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

3.     The Rhode Island Emergency Management Agency is a Rhode Island executive-branch state agency. The mission of RIEMA is to reduce the loss of life and property for the whole community while ensuring that Rhode Island works to build, sustain, and improve its capability to prepare for, protect against, respond to, recover from, and mitigate all natural, human-caused, and technological hazards. RIEMA works on behalf of the Governor of Rhode Island to manage all activities and departments related to emergency management of the State in response to and in preparation for natural and technological emergencies. RIEMA also plays an integral role in training emergency responders.

4.     RIEMA is the State Administrative Agency ("SAA") for Rhode Island. As the primary grantee of the Federal Emergency Management Agency ("FEMA") in Rhode Island, RIEMA administers a wide range of federal programs meant to assist states and localities in preventing and responding to catastrophic events like terrorist attacks and natural disasters.

5.     FEMA administers many grant programs where States are the primary grant recipients. RIEMA administers FEMA's annually funded preparedness grants, including the Homeland Security Grant Program.

I.     **Homeland Security Grant Program**

       *State Homeland Security Grant Program*

1

6.    I am familiar with the Homeland Security Grant Program ("HSGP"), and in particular, its sub-component the State Homeland Security Grant Program ("SHSP").

7.    HSGP funding is administered in Rhode Island by RIEMA. RIEMA is the SAA for Rhode Island and as such is the only entity eligible to apply for and receive HSGP funding.

8.    The SHSP provides federal funding to States to build, sustain, and deliver the capabilities necessary to prevent, prepare for, protect against, and respond to acts of terrorism.

9.    This money supports Rhode Island's security strategies to address needs in planning, organizing, equipment, training, and exercise in order to prevent, protect against, mitigate, respond to, and recover from, acts of terrorism and other catastrophic events.

10.    HSGP funds several specialized teams that are the only personnel in Rhode Island with the expertise and training to respond to incidents such as a wilderness search and rescue, an attack involving weapons of mass destruction or an explosive device, or a terrorist attack at a polling station. These teams include the Rhode Island Heavy Rescue Task Force; the Hazardous Materials and Mass Decontamination Team; the Rhode Island Critical Stress Management Team; the Rhode Island Disaster Medical Assistance Team; the Rhode Island Medical Reserve Corps; the Wilderness Search and Rescue; the Weapons of Mass Destruction Tactical Team; the Flammable Liquids Task Force; the Port of Providence Marine Strike Team; and the Rhode Island Bomb Squad.

11.    RIEMA's HSGP funds are also passed through to subrecipient Department of Public Safety for the operations of the Rhode Island State Fusion Center, which is the point for the receipt, analysis, gathering, and sharing of threat-related information between federal, state, local, tribal, territorial, and private sector partners.

12.    RIEMA has three open HSGP awards from FEMA from FFYs 2022 to 2024:

      a.      FFY 2022: Original award of $4,847,500;

      b.      FFY 2023: Original award of $4,847,500; and

      c.      FFY 2024: Original award of $4,362,750.

13.      RIEMA was awarded $4,362,750 in HSGP funding for FFY 2025.

## II.      Emergency Management Performance Grant Program

14.      I am familiar with the Emergency Management Performance Grant Program ("EMPG"). EMPG provides federal funding to States to assist state, local, tribal, and territorial emergency management agencies to implement FEMA's National Preparedness System, including by building continuity-of-government capabilities to ensure essential functions in a catastrophic disaster.

15.      EMPG funding is administered in Rhode Island by RIEMA.

16.      Because EMPG grants are formula grants and not competitive grants, each State is entitled to a specific allocation whenever a notice of funding opportunity is posted.

17.      In addition to using EMPG funds themselves, States may pass EMPG funds through to subgrantees for the same purposes. RIEMA passes approximately 15-20% of EMPG funds on to municipal emergency management agencies.

18.      RIEMA has applied for and received funds from EMPG since it was codified in the Post-Katrina Emergency Management Reform Act of 2006.

19.      RIEMA has three open EMPG awards from FFYs 2022 to 2024:

      a.      FFY 2022: Original award of $3,833,335

      b.      FFY 2023: Original award of $3,354,105;

      c.      FFY 2024: Original award of $3,016,993.

20.      RIEMA was awarded $3,016,730 in EMPG funding for FFY 2025.

3

21.    EMPG funding is the primary enabler to develop both state and local resilience programs for emergency management.

22.    EMPG dollars fund the salaries of RIEMA Operations personnel. Operations personnel lead statewide coordination efforts in response to a disaster or mass casualty event. The EMPG program also funds RIEMA communications, facilities, and vehicles for disaster response.

23.    The amounts passed through to localities under the EMPG program likewise fund the salaries of local emergency managers and local support staff across Rhode Island as well as software and communications to support local emergency response. Without these funds, local jurisdictions will not have sufficient funding support to create emergency management programs, operations plans, and exercise plans which contribute to resiliency and preparedness.

24.    EMPG monies are likewise passed through to municipal fire departments, law enforcement, and other first responders and local emergency preparedness offices to fund the salaries of local emergency managers and local support staff across Rhode Island. Without these funds, local municipalities will not have sufficient funding support to build emergency management programs, operations plans, and exercise plans which contribute to resiliency and preparedness.

25.    EMPG monies fund the ongoing costs of the software program used at the State Emergency Operations Center, which is the physical location where RIEMA directs all strategic and operational activities in the event of a disaster or public health emergency.

**III.    Unprecedented Cuts to the Periods of Performance**

26.    The term of FEMA preparedness awards has generally been three years, meaning that the award remains open for a three-year period for completing reimbursable activities. Any program activities supported by the awarded funds must be completed within the time the award remains open.

27.     It is typical for FEMA preparedness awards to take several years to fully disburse. The HSGP and EMPG programs have used multi-year periods of performance, sometimes even longer than three years, for almost every year of their existence. Moreover, these programs fund essential ongoing operational needs of state and local public safety agencies. As a result, RIEMA and other state recipients have structured their budgeting systems for HSGP and EMPG grants around multi-year disbursements.

28.     RIEMA would be unable to fiscally accommodate a sudden change to a one-year period of performance. There are substantial outstanding funds on prior-year grants yet to be expended for their planned uses approved by FEMA in prior years. A one-year period of performance would place the fiscal year 2025 funds on a direct collision course with prior-year funds, making it impossible to timely sub-obligate all outstanding awards to their directed purposes.

29.     Furthermore, it typically takes approximately two to three months to close out awards and gather all the required documentation at the end of an award period. As a result, a one-year period of performance gives RIEMA and its subgrantees effectively nine to ten months to spend the funding.

30.     As a concrete example of how FEMA has developed, authorized, and permitted the multi-year budget model, FEMA has recently approved extensions of the periods of performance on the EMPG FFY 2022 and 2023 awards such that the grant close date is September 30, 2026. Likewise, FEMA recently approved an extension of the HSGP FFY 2022 award through December 29, 2026.

31.     In addition, FEMA typically extends flexibility during the multi-year periods of performance to make adjustments to funding lines by using the required biannual strategy

implementation reports to re-calibrate needs as they evolve during the grant period. The biannual report adjustments represent another way in which FEMA has built multi-year periods of performance into the basic functioning of HSGP and EMPG.

32.    EMPG awards have historically been back-dated to the start of the federal fiscal year in question. For example, RIEMA's FFY **2023** EMPG award had a three-year period of performance beginning on October 1, **2022**, and ending on September 30, 2025. DHS's decision this year to instead start the fiscal year 2025 performance period on October 1, 2025—the first day of federal fiscal year 2026—has effectively skipped an entire year of program funding for fiscal year 2025 awards.

33.    This year, in keeping with past practice, the HSGP and EMPG NOFOs announced that there would be a three-year period of performance for both programs.

34.    Both NOFOs explained that applications should frame their budget needs by reference to the anticipated three-year period of performance. HSGP stated that projects must be "able to be fully completed within the three-year period of performance." EMPG stated that "[e]ach goal must be specific, measurable, and achievable within the period of performance."

35.    RIEMA proposed projects for both NOFOs on that understanding.

36.    Yet, without explanation, when the awards were issued, the period of performance was reduced to one year on both awards, running from October 1, 2025, to September 30, 2026.

37.    RIEMA will face extraordinary challenges in obligating the monies on a suddenly truncated period of performance. The ultimate result is likely to be that allocated monies will expire unused, depriving Rhode Island of millions of dollars in needed funds for emergency management and preparedness.

38.     In my 16 years of experience, I have never seen FEMA reduce the period of performance announced in a NOFO and relied upon by applicants like this.

## IV.     The EMPG Population Certification Condition

39.     The Department of Homeland Security (DHS) published the EMPG notice of funding opportunity on July 28, 2025, amending it the next day to correct the program title. The NOFO did not include any language stating that States would have to provide any verification of their population in order to apply for or receive EMPG funds.

40.     On September 27, 2025, FEMA issued EMPG awards for FY 2025 (Award Letter). Three days later, on September 30, FEMA released revised (though not re-dated) EMPG award letters through the FEMAGo portal including the new term described in the next paragraph.

41.     The Award Letter included a lengthy list of "Agreement Articles," the last of which reads as follows:

**Article 62 Funding Hold: Verification of State's Population**

FEMA has placed a funding hold on this award, and the full amount of the award is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the award.

To release the funding hold, the SAA must provide a certification of the recipient state's population as of September 30, 2025. In so doing, the State will explain the methodology it used to determine its population and certify that its reported population does not include individuals that have been removed from the State pursuant to the immigration laws of the United States.

FEMA will rescind the funding hold upon its review and approval of the State's methodology and population certification.

42.     In my 16 years of experience, I have never seen a funding hold based on a population certification condition imposed on any federal grant. Specifically, I understand that no population certification condition has ever been imposed on EMPG funds since that program was created in 2006, until FEMA did so on September 27, 2025. Instead, I understand that EMPG has

7

always been administered using U.S. census data, without any additional calculations performed by States. Nor am I aware of any population certification condition prior to my time with RIEMA.

43.     FEMA has offered RIEMA no explanation as to why it was imposing this new population certification condition.

44.     RIEMA does not have a record of people who have been removed from the State pursuant to immigration laws, and as far as I am aware no other agency in Rhode Island keeps such a record.

45.     In investigating whether RIEMA could comply with the new population certification condition, I have learned that Rhode Island does not have an independent agency tasked with tallying the state population. I have learned that the Department of Homeland Security has, at times, published publicly available statistics regarding the number of individuals whom it has removed, returned, or expelled, but DHS has not updated that data since November 2024, and DHS has not published state-specific data.

46.     In trying to understand this population certification condition, I have found many of the terms ambiguous. The population certification condition fails to define what it means for an individual to be removed "pursuant to the immigration laws of the United States."

47.     I believe it would be impossible to certify the precise population in Rhode Island as of September 30, 2025. It would require months of work and investing substantial funds towards the task as Rhode Island does not estimate its population independent of the U.S. census.

## V.     Harms to Preparedness Efforts Caused by DHS's Performance-Period Cuts and Population Certification Condition

48.     Both the HSGP and EMPG programs provide critical funding that Rhode Island relies upon to prepare for natural disasters, terrorist attacks, and other emergencies. Such preparation often takes years to plan and execute, and if the one-year period of performance were

8

to be enforced, the safety and security of Rhode Islanders would be jeopardized as the funds go unspent or else are spent in suboptimal ways due to the surprise, expedited timeline imposed by DHS.

49.    Worse, if EMPG's population certification condition were enforced, Rhode Island would lose access to millions of dollars in essential emergency preparedness funding as the State has no way to independently assess the population count issued by the U.S. Census Bureau.

50.    Without these funds, Rhode Island will be less ready to face emergencies and less able to recuperate in the aftermath. The very nature of emergencies—which in some ways, such as natural disasters, are getting worse year after year—requires proactive measures to safeguard lives, property, and well-being as much as possible. FEMA grants are the lifeblood of these preparedness programs.

51.    Moreover, without FEMA grant funding, state, local, and federal law enforcement, first responders, and emergency management agencies will be left without the critical assistance of the specialized teams funded by these grants. As a result, first responders would face life-threatening situations, such as wilderness search-and-rescue operations, a weapon of mass destruction event, or a terrorist attack at a port, without the proper training and expertise.

52.    The State does not have the budgetary resources or flexibility to make up for the lost funding without drawing funding away from other important public safety and law enforcement operations. Not receiving this funding will require lay-offs and/or reduction in worktime, crippling Rhode Island's ability to prepare for and respond to emergencies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this *16* day of October, 2025, in Cranston, Rhode Island.

Marc R. Pappas
Director
Rhode Island Emergency Management Agency