**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF ILLINOIS; *et al.,*

                     *Plaintiffs,*

V.

KRISTI NOEM, IN HER OFFICIAL CAPACITY AS
SECRETARY OF HOMELAND SECURITY; *et al.,*

                     *Defendants,*

AND

STATE OF TEXAS,

                     *Intervenor-Defendant.*

CASE NO. 1:25-CV-495

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY STATE OF TEXAS

### INTRODUCTION

The State of Texas, by and through Attorney General of Texas Ken Paxton, moves pursuant to Federal Rule of Civil Procedure Rule 24 for leave to intervene as a Defendant in this important matter.

Texas shares 1,254 miles of international border with Mexico. This is over half of the entire border between the United States and Mexico. No other State (except Alaska) has an international border with another country even half this long. Moreover, Mexican criminal cartels recognized as foreign terrorist organizations are active along nearly all the Texas border with Mexico, and within Texas itself. Accordingly, America's fight to keep our country secure from foreign terrorist threats must disproportionally be fought within and by the State of Texas.[1]

Effective September 26, 2025, the Federal Emergency Management Agency (FEMA) approved an award to Texas under the FY 2025 Homeland Security Grant Program (HSGP) of $

---

[1] The State of Texas also is subject to more than its share of hurricanes, floods, and other natural disasters. In July 2025, catastrophic floods in central Texas cost at least 135 lives, destroyed thousands of homes, and cost an estimated $ 18 to 22 billion in damages.

139,495,980.2 The availability of this FEMA award to the State of Texas, a matter on which Texas is vitally interested, will or may be affected by the outcome of this case. The availability of that award to the State of Texas, and its timing, currently is being adjudicated without Texas having any ability to make its voice heard in this Court.

Texas deserves a fair opportunity to explain to the Court why the pressing national security, immigration, and natural disaster needs and risks that uniquely affect it should entitle the State to the increased HSGP allocation that FEMA has determined in its discretion should be awarded. Given the direct fiscal interest the State has in these funds, Texas seeks and is entitled to intervene as of right under Rule 24(a)(2). In addition, or in the alternative, Texas seeks permissive intervention. Intervention by Texas is both timely and necessary. Texas will comply with any scheduling order or other directives of the Court.3

The Homeland Security Act expressly allows the Department of Homeland Security (DHS) to prioritize some States when allocating HSGP funds and directs the Department to consider both the "relative" threat level potential recipients face "from acts of terrorism" as well as "the anticipated effectiveness of the proposed use of the grant by the State." See 8 U.S.C. § 608. Prioritizing Texas over Plaintiffs in HSGP grants makes sense under these statutory criteria. Congress has given DHS discretion to consider and assess such criteria in making HSGP grants.

Texas is at the forefront of our Nation's ongoing immigration and trans-national crime crisis. Texas suffers disproportionately from concomitant cartel-related crime, including fentanyl and other drug smuggling, human trafficking, and the smuggling of potential foreign terrorists into the United States. Many of the criminal cartels that enter the country through the Texas border are themselves designated terrorist organizations, rendering Texas's border region a chokepoint where law enforcement has an early opportunity "to prevent, prepare for, protect against…acts of

---

[2] A copy of this letter from Stacey Street of FEMA to the Office of the Governor of Texas is attached hereto as Appendix 1.

[3] The current parties filed a Joint Stipulation Converting the Temporary Restraining Order into Preliminary Injunction and Joint Proposal for briefing schedule (ECF No.34). The Court has not yet ordered the parties' briefing schedule.

terrorism." 8 U.S.C. § 608(a)(2). Such prevention, preparation, and protection efforts by Texas benefit not only the citizens of Texas, but the entire nation.

Conversely, Plaintiffs' stated and/or demonstrated unwillingness to aid in the enforcement of federal immigration law means that HSGP dollars likely are less effective in their hands. Unfettered unlawful immigration exposes the United States to greater risks of terrorism and transnational cartel-driven crime. A lack of control over border entryways allows malevolent terrorist or criminal actors to enter the country undetected, often with the assistance of Mexican cartels. Because illegal immigration serves as cover and catalyst for terrorism risks, States that actively assist in preventing or deterring immigration crime are more effective stewards of the HSGP money that Congress has allocated. DHS can therefore reasonably treat active cooperation with federal immigration law enforcement as a valid consideration in awarding HSGP funds.

Consistent with this close connection between uncontrolled immigration and the effective use of law enforcement grants, on January 20, 2025, President Trump issued Executive Order 14159, entitled "Protecting the American People Against Invasion." The President ordered DHS to take "any lawful actions to ensure that so-called 'sanctuary' jurisdictions, which seek to interfere with the lawful exercise of Federal law enforcement operations, do not receive access to Federal funds." 90 Fed. Reg. 8443, 8446 (Jan. 20, 2025).

Unhappy with the new policies of the Trump Administration, Plaintiffs raise policy grievances under the guise of alleged violations of the Administrative Procedure Act (APA) and the Constitution. But Texas has a clear interest in this case because it threatens to reduce its award of HSGP funding even as the State must tackle aggressive cartel activity.

**BACKGROUND**

## A.  EXECUTIVE ORDER 14159

On January 20, 2025, President Donald J. Trump signed an Executive Order designed to fulfill one of his central campaign promises to the American voters: the promise to combat the illegal immigration, trans-national crime, and the terrorism crisis that grew dramatically under the

previous Administration, especially at our southern border. President Trump directed the Attorney General and the Secretary of DHS to "evaluate and undertake any other lawful actions…that they deem warranted based on any such [State] jurisdiction's practices that interfere with the enforcement of Federal law." 90 Fed. Reg. 8443, 8446 (Jan. 20, 2025).

On September 27, 2025, FEMA issued formal award notifications for the Homeland Security Grant Program (HSGP) for fiscal year 2025, which began on October 1, 2025. The final awards by FEMA were substantially different for some States—including Texas—than the preliminary notice of funding opportunity (NOFO).

### B.    Plaintiffs' Policy Grievances

Plaintiffs, in disagreement with the policy positions of the new Administration when it comes to policing the border and enforcing federal immigration laws, seek declaratory and injunctive relief against the Executive Order.  ECF # 1 ¶ 12.  Plaintiffs ask this Court to "direct Defendants to obligate fiscal year 2025 HSGP funds consistent with the statutory criteria or, in the alternative, the target allocations set forth in the fiscal year 2025 notice of funding opportunity." *Id.* at 43.

### C.    Proposed Intervenor State Of Texas

Proposed Intervenor Texas is a sovereign State of the United States of America who, by and through the Attorney General of Texas, seeks to intervene in this action to protect its interests, which includes significant economic interests as well as interests in using the HSGP funds awarded to it to protect its own citizens from trans-national crime and terrorism. At stake for Texas is approximately $25 million. And no existing party can adequately represent Texas's unique interest.[4] Indeed, Plaintiffs in their Complaint (ECF No. 1) even admit and identify the potential effect of this action on Texas's interest.  Plaintiffs complain that Texas "was preliminarily allocated

---

[4] Texas is not only the State with the longest border with Mexico, but it is the only State that has spent billions of its own taxpayers' funds to secure the southern border and whose Governor declared its right under Art. IV, Section 3 of the United States Constitution to defend itself from invasion across that border.

$113 million in HSGP funds by the NOFO, but…ultimately received $138 million—a 22 percent increase." *Id.* at ¶ 114.

ARGUMENT

## I. LEGAL STANDARD

Under Federal Rule 24, a federal court "must permit any [applicant] to intervene" if the applicant demonstrates that: (1) the motion to intervene is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." Fed. R. Civ. P. 24(a)(2); *In re Efron,* 746 F.3d 30, 35 (1st Cir. 2014) (citation and quotations omitted). "A district court's discretion to deny a motion to intervene as of right is circumscribed by Rule 24(a)'s explicit directive that the court 'must' allow intervention as of right by parties who satisfy the enumerated requirements." *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 38 (1st Cir. 2020); *see also Cotter v. Massachusetts Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000) (stating that "Rule 24(a)(2)'s explicit standards considerably restrict the district court's discretion.") (quotation omitted). Additionally, federal courts grant permissive intervention when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Texas seeks to intervene as a defendant and does not seek affirmative relief in this action. Accordingly, Texas does not need to establish standing. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (holding as of right intervenors only need to show standing when they seek different relief from other plaintiffs).

## II. TEXAS IS ENTITLED TO INTERVENE AS OF RIGHT

Texas satisfies all four requirements to intervene as of right.  *See Efron,* 746 F.3d at 35.

## A. TEXAS'S MOTION TO INTERVENE IS TIMELY.

"As a general matter, the case law reflects four factors that inform the timeliness inquiry: (i) the length of time that the putative intervenor knew or reasonably should have known that his

interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). Of these, "the most important factor is the length of time that the putative intervenor knew or reasonably should have known that his interest was imperiled before he deigned to seek intervention." *Efron,* 746 F.3d at 35.

Texas easily satisfies the timeliness requirement. *First*, the proceedings have just begun, with the Complaint filed September 29, 2025. No responsive pleading has been filed or dispositive issues have been decided by the Court. Texas's Motion is undoubtedly punctual. *See, e.g., NERO Int'l Holding Co., Inc. v. NEROtix Unlimited Inc.* (*NERO*)*,* 585 F. Supp. 3d 152, 156 (D. Mass. 2022) (finding that intervention was timely when filed "roughly two-and-a-half months after Plaintiffs filed the Complaint"). Moreover, FEMA's September 26 HSGP award to Texas constitutes the first time at which Texas "reasonably should have known" of the potential challenge at issue in this action. On October 24, the Department issued a bulletin announcing that it had revised Texas's award in compliance with this Court's Temporary Restraining Order. Texas has acted diligently since "[receiv[ing] actual or constructive notice of the impending threat" to its rights. *R & G Mortg. Corp.*, 584 F.3d at 8.

*Second*, the existing parties will not suffer any prejudice from intervention by Texas. Texas's Motion is made at the very beginning of these proceedings. Texas does not demand any postponement of current schedules or deadlines, but only the same right to be heard as the Defendants already in this case.

*Third*, Texas would be prejudiced by a denial of its motion to intervene. Plaintiffs have asked the Court to significantly reduce the amount of its HSGP award. If that relief is granted, it would inflict a direct pocketbook injury to Texas. Moreover, Texas best knows the unique security challenges that it faces and that justify its higher HSGP award amount. The Court should not strip Texas of any share of its funding without allowing it to an opportunity to be heard.

*Fourth*, there are no special factors weighing against intervention.

Therefore, under the totality of the circumstances, Texas's Motion is timely.

### B. TEXAS HAS A SIGNIFICANT PROTECTABLE INTEREST RELATING TO THE GRANT FUNDS THAT ARE THE SUBJECT OF THE ACTION.

Rule 24(a)(2) does not impose a rigid, property-based "interest" test. As the First Circuit explains: "There is no precise and authoritative definition of the interest required to sustain a right to intervene … What is clear, however, is that the intervenor's claim must bear a 'sufficiently close relationship' to the dispute between the original litigants. The interest must be direct, not contingent." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989). *See also Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (reciting the four Rule 24(a)(2) requirements); *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567–69 (1st Cir. 1999).

Texas has a straightforward fiscal interest in this litigation. "Potential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) (citing *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992). In addition, Texas has a non-economic interest in using the HSGP funds at issue to better protect its citizens from international terrorism and crime.

### C. THE DISPOSITION OF THIS CASE WILL, AS A PRACTICAL MATTER, IMPAIR OR IMPEDE TEXAS'S ABILITY TO PROTECT ITS INTERESTS.

A proposed intervenor possesses a significant protectable interest when he is "so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest." *Travelers Indem.*, 884 F.2d at 637; *see also* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("If [a proposed intervenor] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene ….").

Here, an unfavorable resolution would inflict a clear economic injury on Texas. Should Plaintiffs ultimately succeed in reversing the Department's HSGP grant allocations, Texas will

receive less money to fund its security preparedness initiatives. This interest is "direct, not contingent" and has a clear and "close relationship to the dispute between the original litigants." *Travelers Indem.*, 884 F.2d at 638. And if the HSGP award to Texas were to be reduced by a judgment of this Court, Texas will have no reasonable way to protect its interests in those funds; as a practical matter, there can be no question that its interests in those funds would be "impaired or impeded," if not destroyed.

### D.   THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT TEXAS'S INTERESTS.

"The burden of showing a lack of adequate representation of the intervenor's position is a minimal one." *NERO*, 585 F. Supp. 3d at 157. It suffices "if the applicant shows that representation of his interest *may be* inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also T-Mobile*, 969 F.3d at 39 (stating the "requirement typically demands only a showing that an existing party's representation may prove inadequate").

Texas satisfies this requirement. The existing Defendants seek to defend the HSGP grants for Fiscal Year 2025 as to all States, but only Texas is focused on defending the specific $ 139 million grant to Texas. That focus will result in presentation to the Court of the unique facts and circumstances facing Texas that justify that award, including the extent and nature of terrorist and Mexican cartel activity across the Texas-Mexico border and within the State of Texas. Through Operation Lone Star beginning in 2021, Texas devoted billions of its own taxpayer dollars to combatting the Mexican cartels and gained broad and deep knowledge of the security threats to Texas and the nation that more than justify the HSGP funds awarded to it. The Court should have access to that knowledge in deciding this case.

Courts have routinely permitted States to intervene as defendants alongside the federal government. *See, e.g., WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 2, 4-5 (D.D.C. 2017) (granting States of Wyoming, Colorado, and Utah leave to intervene as defendants alongside federal defendants) (acknowledging other cases resulting in similar interventions (collecting cases)); *id.* at 5 (finding "the Federal Defendants do not adequately represent the interests of Wyoming,

Colorado, or Utah" because "[w]hile the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens" and "may have unique sovereign interests not shared by the federal government"); *Miccosukee Tribe of Indians of Fla. v. EPA*, No. 22-cv-22459, 2022 WL 19296576, at *2 (S.D. Fla. Oct. 14, 2022) (granting intervention to State of Florida even though the federal defendants shared similar objective, noting that the federal defendants' "interests … are aligned with but distinct from the Florida Applicants' interests"); *see also WildEarth Guardians v. Haaland*, No. 21-cv-175, 2021 WL 12241918, at *2 (D.D.C. July 14, 2021) ("Generally, the [federal] government does not adequately represent the interests of an intervenor because the government has an obligation to represent the interests of all its citizens while an intervenor's interests are often more specific."); *cf. Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (permitting intervention alongside federal agency by certain regulated private parties after concluding that Secretary's deference to the public interest could did not represent their particular interests).

To be sure, Texas and the existing federal Defendants do share the same ultimate objective of defending the HSGP award amounts. But Texas's interests diverge from the Department's in at least one respect. In particular, Texas is adversely affected Defendants' decision to shorten the length of its HSGP grants from three years to one year. Such potential adversity of interest is enough to show that an applicant for intervention is not adequately represented by existing parties. *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). This difference shows that "enough likelihood of conflict or divergence of interest exists to defeat any claim that the applicant's interest is adequately represented by existing parties." *Cotter v. Massachusetts Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 36 (1st Cir. 2000) Texas "need only make a minimal showing" that the representation afforded by existing parties may prove inadequate. *Patch*, 136 F.3d at 207; *see also Trbovich*, 404 U.S. at 823 (finding presumption of adequacy rebutted where interests were not "sufficiently congruent" and where proposed intervenors would "likely offer important elements to the proceedings that the existing parties would likely neglect"). Texas has easily met

its "minimal" burden demonstrating that the existing parties do not adequately represent their interests. Texas is entitled to intervene as of right.

### III. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

The State of Texas, in the alternative, request that the Court grant permissive intervention under Rule 24(b). Courts grant permissive intervention when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In evaluating permissive intervention, "the district court can consider almost any factor rationally relevant." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999). "The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention." *Id*. Additionally, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, Texas has demonstrated that its intervention is timely. *See supra*. By the same token, intervention would not "unduly delay or prejudice the adjudication" of this case. *See* Fed. R. Civ. P. 24(b)(3). Moreover, the intervention will not in any way affect the Court's jurisdiction in this federal question case. *See* 7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1917 (3d ed. 2010) ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant ….").

Texas's defense of the Executive Orders as constitutional also plainly "shares a common question of law or fact with [Plaintiffs'] action." Texas, like the existing Defendants, will assert that the HSGP grant to Texas was fully consistent with the APA, the Constitution, and the Homeland Security Act, and Plaintiffs assert the opposite. Texas therefore requests and is entitled to intervene pursuant to Rule 24(b).

### CONCLUSION

For these reasons, Texas respectfully requests that the Court grant their motion and leave to intervene as of right or, in the alternative, permissive intervention.

Date: November 10, 2025

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division
Texas Bar No. 24060998

Respectfully submitted.

/s/ *David Bryant*
DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

/s/ *Munera Al-Fuhaid*
**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS**

# APPENDIX

# Award Letter

U.S. Department of Homeland Security
Washington, D.C. 20472

**FEMA**

Effective date: 09/26/2025

Aimee Snoddy
GOVERNOR, TEXAS OFFICE OF THE
FINANCIAL SERVICES PO BOX 12428
AUSTIN, TX 78711

EMW-2025-SS-05028

Dear Aimee Snoddy,

Congratulations on behalf of the Department of Homeland Security, your application submitted for the Fiscal Year (FY) 2025 Homeland Security Grant Program, has been approved in the amount of $139,495,980.00 in Federal funding. This award of federal assistance is executed as a Grant.

Before you request and receive any of the Federal funds awarded to you, you must establish acceptance of the award through the FEMA Grants Outcomes (FEMA GO) system. By accepting this award, you acknowledge that the terms of the following documents are incorporated into the terms of your award:

- Award Summary - included in this document
- Agreement Articles - included in this document
- Obligating Document - included in this document
- Fiscal Year (FY) 2025 Homeland Security Grant Program (HSGP) Notice of Funding Opportunity
- The Preparedness Grant Manual (PGM)

Please make sure you read, understand, and maintain a copy of these documents in your official file for this award.

Sincerely,

Stacey Street
Deputy Assistant Administrator
Grants Program Directorate

# Award Summary

**Program:** Fiscal Year 2025 Homeland Security Grant Program
**Recipient:** GOVERNOR, TEXAS OFFICE OF THE
**UEI-EFT:** DBEDWRMSZ5A5
**Award number:** EMW-2025-SS-05028

## Summary description of award

The Fiscal Year (FY) 2025 Homeland Security Grant Program (HSGP) is one of three grant programs that constitute the DHS/FEMA focus on enhancing the ability of state, local, tribal, and territorial governments, as well as nonprofits, to prevent, protect against, respond to, and recover from terrorist attacks. These grant programs are part of a comprehensive set of measures authorized by Congress and implemented by DHS to help strengthen the Nation's communities against potential terrorist attacks. Among the five basic homeland security missions noted in the DHS Strategic Plan, the HSGP supports the goal to Strengthen National Preparedness and Resilience.

## Amount awarded table

The amount of the award is detailed in the attached Obligating Document for Award.

The following are the budgeted estimates for object classes for this award (including Federal share plus your cost share, if applicable):

| Object Class | Total |
|---|---|
| Personnel | $826,497.93 |
| Fringe benefits | $9,790,781.32 |
| Travel | $17,450.00 |
| Equipment | $36,391,213.02 |
| Supplies | $13,500.00 |
| Contractual | $80,955,665.29 |
| Construction | $0.00 |
| Other | $10,239,924.35 |
| Indirect charges | $1,260,948.09 |
| Federal | $139,495,980.00 |
| Non-federal | $0.00 |
| Total | $139,495,980.00 |
| Program Income | $0.00 |

**App. 003**

## Approved scope of work

After review of your application, FEMA has approved the below scope of work. Justifications are provided for any differences between the scope of work in the original application and the approved scope of work under this award. You must submit scope or budget revision requests for FEMA's prior approval, via an amendment request, as appropriate per 2 C.F.R. § 200.308 and the FY2025 HSGP NOFO.

**Approved request details:**

## Indirect expenses

### Indirect expenses

DESCRIPTION

Consolidated SAA Indirect Costs ar a rate of 1.10%

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,260,948.09 | $1,260,948.09 |

BUDGET CLASS

Indirect charges

## Investment

### Operational support

DESCRIPTION

This is the consolidated SHSP Budget for the Border Crisis Response and Enforcement projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,433,673.83 | $1,433,673.83 |

BUDGET CLASS

Other

## Immigration enforcement training

DESCRIPTION

This is the consolidated UASI budgets under the Border Crisis Response and Enforcement Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $3,204,738.54 | $3,204,738.54 |

BUDGET CLASS

Other

## Immigration enforcement training

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Border Crisis Response and Enforcement project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,173,005.87 | $1,173,005.87 |

BUDGET CLASS

Other

## Immigration enforcement training

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Border Crisis Response and Enforcement Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $2,136,492.36 | $2,136,492.36 |

BUDGET CLASS

Other

## Investment

### Developing and implementing homeland security support programs and adopting ongoing DHS/FEMA national initiatives

DESCRIPTION

This is the consolidated SHSP Budget for the Enhancing Election Security projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $430,102.15 | $430,102.15 |

BUDGET CLASS

Contractual

### Developing and implementing homeland security support programs and adopting ongoing DHS/FEMA national initiatives

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Enhancing Election Security project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $351,901.76 | $351,901.76 |

BUDGET CLASS

Contractual

## Developing and implementing homeland security support programs and adopting ongoing DHS/FEMA national initiatives

DESCRIPTION

This is the consolidated UASI budgets under the Enhancing Election Security Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $961,421.56 | $961,421.56 |

BUDGET CLASS

Contractual

## Developing and implementing homeland security support programs and adopting ongoing DHS/FEMA national initiatives

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Enhancing Election Security Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $640,947.71 | $640,947.71 |

BUDGET CLASS

Contractual

# Investment

App. 007

## Physical Security Enhancement Equipment

DESCRIPTION

This is the consolidated SHSP Budget for the Protection of Soft Targets/Crowded Places projects intended to be submitted prior to the first BSIR.

QUANTITY              UNIT PRICE              TOTAL
1                     $1,720,408.60           $1,720,408.60

BUDGET CLASS

Contractual

## Physical Security Enhancement Equipment

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Protection of Soft Targets/Crowded Places project that are intended to be entered before the before the first BSIR.

QUANTITY              UNIT PRICE              TOTAL
1                     $26,873,781.04          $26,873,781.04

BUDGET CLASS

Contractual

CHANGE FROM APPLICATION

**Unit price** from **$1,407,607.04** to **$26,873,781.04**

JUSTIFICATION
Adjusted per DHS directive. Please update post award.

## Physical Security Enhancement Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Protection of Soft Targets/Crowded Places Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $4,363,662.76 | $4,363,662.76 |

BUDGET CLASS

Contractual

## Physical Security Enhancement Equipment

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Protection of Soft Targets/Crowded Places Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $2,909,108.50 | $2,909,108.50 |

BUDGET CLASS

Contractual

# Investment

**Maturation, enhancement, and sustainment of designated state and major Urban Area fusion centers, including information sharing and analysis, threat recognition, terrorist interdiction, and intelligence analyst training and salaries (subject to certain conditions)**

DESCRIPTION

This is the consolidated SHSP Budget for the Supporting Homeland Security Task Forces and Fusion Centers projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $716,836.92 | $716,836.92 |

BUDGET CLASS

Contractual

**Maturation, enhancement, and sustainment of designated state and major Urban Area fusion centers, including information sharing and analysis, threat recognition, terrorist interdiction, and intelligence analyst training and salaries (subject to certain conditions)**

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Supporting Homeland Security Task Forces and Fusion Centers project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $586,502.93 | $586,502.93 |

BUDGET CLASS

Contractual

**Maturation, enhancement, and sustainment of designated state and major Urban Area fusion centers, including information sharing and analysis, threat recognition, terrorist interdiction, and intelligence analyst training and salaries (subject to certain conditions)**

DESCRIPTION

This is the consolidated UASI budgets under the Supporting Homeland Security Task Forces and Fusion Centers Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $2,619,330.92 | $2,619,330.92 |

BUDGET CLASS

Contractual

**Maturation, enhancement, and sustainment of designated state and major Urban Area fusion centers, including information sharing and analysis, threat recognition, terrorist interdiction, and intelligence analyst training and salaries (subject to certain conditions)**

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Supporting Homeland Security Task Forces and Fusion Centers Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,746,220.62 | $1,746,220.62 |

BUDGET CLASS

Contractual

## Investment

## Cybersecurity Enhancement Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Enhancing Cybersecurity Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $590,342.40 | $590,342.40 |

BUDGET CLASS

Equipment

## Cybersecurity Enhancement Equipment

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Enhancing Cybersecurity Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $393,561.60 | $393,561.60 |

BUDGET CLASS

Equipment

## Investment

## Coordination and material support to Citizen Corps Councils and local firehouses for the establishment, training and maintenance of CERTs

DESCRIPTION

This is the consolidated SHSP Budget for the Community Preparedness and Resilience projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,863,775.99 | $1,863,775.99 |

BUDGET CLASS

Equipment

## Coordination and material support to Citizen Corps Councils and local firehouses for the establishment, training and maintenance of CERTs

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Community Preparedness and Resilience project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,524,907.62 | $1,524,907.62 |

BUDGET CLASS

Equipment

## Coordination and material support to Citizen Corps Councils and local firehouses for the establishment, training and maintenance of CERTs

DESCRIPTION

This is the consolidated UASI budgets under the Community Preparedness and Resilience Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,641,204.27 | $1,641,204.27 |

BUDGET CLASS

Equipment

App. 013

### Coordination and material support to Citizen Corps Councils and local firehouses for the establishment, training and maintenance of CERTs

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Community Preparedness and Resilience Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,094,136.18 | $1,094,136.18 |

BUDGET CLASS

Equipment

## Investment

### Other Authorized Equipment

DESCRIPTION

This is the consolidated SHSP Budget for the Emergency Operations Center Technology and Enhancements projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,863,775.99 | $1,863,775.99 |

BUDGET CLASS

Equipment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Emergency Operations Center Technology and Enhancements project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,524,907.62 | $1,524,907.62 |

BUDGET CLASS

Equipment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Emergency Operations Center Technology and Enhancements Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,182,380.06 | $1,182,380.06 |

BUDGET CLASS

Equipment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Emergency Operations Center Technology and Enhancements Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $788,253.38 | $788,253.38 |

BUDGET CLASS

Equipment

## Investment

### Interoperable Communications Equipment

DESCRIPTION

This is the consolidated SHSP Budget for the Interoperable Emergency Communications projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $3,388,683.61 | $3,388,683.61 |

BUDGET CLASS

Equipment

### Interoperable Communications Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Interoperable Emergency Communications Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $2,609,962.55 | $2,609,962.55 |

BUDGET CLASS

Equipment

### Other Authorized Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Interoperable Emergency Communications Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $1,739,975.03 | $1,739,975.03 |

BUDGET CLASS

Equipment

## Investment

### Activities to achieve planning inclusive of people with disabilities and others with access and functional needs and limited English proficiency

DESCRIPTION

This is the consolidated SHSP Budget for the Planning – Homeland Security projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,863,775.99 | $1,863,775.99 |

BUDGET CLASS

Equipment

### Other Authorized Equipment

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Planning – Homeland Security project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,524,907.62 | $1,524,907.62 |

BUDGET CLASS

Equipment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Planning – Homeland Security Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $3,148,513.42 | $3,148,513.42 |

BUDGET CLASS

Equipment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Planning – Homeland Security project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $2,099,008.94 | $2,099,008.94 |

BUDGET CLASS

Contractual

# Investment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated SHSP Budget for the Support of First Responder Capabilities projects intended to be submitted prior to the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $1,863,775.99 | $1,863,775.99 |

BUDGET CLASS

Equipment

## Other Authorized Equipment

DESCRIPTION

This is the consolidated SHSP LETPA budget for the Support of First Responder Capabilities project that are intended to be entered before the before the first BSIR.

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $1,524,907.62 | $1,524,907.62 |

BUDGET CLASS

Equipment

## CBRNE Operational Search and Rescue Equipment

DESCRIPTION

This is the consolidated UASI projects under the Support of First Responder Capabilities Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs. Individual UASI IJs listed by investment type have been uploaded to the upload section.

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $9,389,199.11 | $9,389,199.11 |

BUDGET CLASS

Fringe benefits

## Other Authorized Equipment

DESCRIPTION

This is the consolidated UASI LETPA budgets under the Support of First Responder Capabilities area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs.

| QUANTITY | UNIT PRICE | TOTAL |
| --- | --- | --- |
| 1 | $6,259,466.08 | $6,259,466.08 |

BUDGET CLASS

Equipment

## Investment

### Operational support

DESCRIPTION

This is a placeholder project that will be broken out once the final selection of individual projects are determined by CBP and DHS.

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $33,708,000.00 | $33,708,000.00 |

BUDGET CLASS

Contractual

CHANGE FROM APPLICATION

**Unit price** from **$32,865,300.00** to **$33,708,000.00**

JUSTIFICATION

Adjusted per DHS directive. Please update post award.

## Investment

### Other Authorized Equipment

DESCRIPTION

This is the consolidated UASI budgets under the Management and Administration Capabilities Investment area that are intended to be submitted prior to the first BSIR. This includes the Austin, Dallis/Fort Worth/Arlington, Houston, and San Antonio UASIs

| QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $2,292,013.75 | $2,292,013.75 |

BUDGET CLASS

Other

## Management and/or Administration costs

## Personnel

DESCRIPTION

Funding From OPSG award to manage and administer the OPSG award.

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $282,660.00 | $282,660.00 | Personnel |

## Personnel

DESCRIPTION

Funding from SHSP award to manage and administer the SHSP Award

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $237,622.93 | $237,622.93 | Personnel |

## Personnel

DESCRIPTION

Funding from UASI award to manage and administer the UASI Award

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $306,215.00 | $306,215.00 | Personnel |

## Fringe benefits

DESCRIPTION

SHSP Fringe benifits

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $115,457.21 | $115,457.21 | Fringe benefits |

## Fringe benefits

DESCRIPTION

UASI Fringe benifits

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $148,785.00 | $148,785.00 | Fringe benefits |

## Fringe benefits

DESCRIPTION

OPSG Fringe benifits

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $137,340.00 | $137,340.00 | Fringe benefits |

## Travel

DESCRIPTION

SHSP Travel Costs

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $3,350.00 | $3,350.00 | Travel |

## Travel

DESCRIPTION

OPSG Travel Costs

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $6,100.00 | $6,100.00 | Travel |

## Travel

DESCRIPTION

UASI Travel Costs

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $8,000.00 | $8,000.00 | Travel |

## Supplies

DESCRIPTION

SHSP Supply Costs

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $3,000.00 | $3,000.00 | Supplies |

## Supplies

DESCRIPTION

OPSG Supply Costs

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $3,500.00 | $3,500.00 | Supplies |

## Supplies

DESCRIPTION

UASI Supply Costs

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $7,000.00 | $7,000.00 | Supplies |

## Contractual

DESCRIPTION

SHSP Contractual M&A

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $600,000.00 | $600,000.00 | Contractual |

## Contractual

DESCRIPTION

OPSG Contractual M&A

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $42,312.00 | $42,312.00 | Contractual |

## Contractual

DESCRIPTION

UASI Contractual M&A

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $586,118.88 | $586,118.88 | Contractual |

Of the total Federal funds, $139495980.00 has been placed on hold. See the following terms in the Agreement Articles for more details:

| Article number | Title | Payment hold |
|---|---|---|
| Article 59 | Funding Hold: Additional Information Required | $139495980.00 |

# Agreement Articles

**Program:** Fiscal Year 2025 Homeland Security Grant Program
**Recipient:** GOVERNOR, TEXAS OFFICE OF THE
**UEI-EFT:** DBEDWRMSZ5A5
**Award number:** EMW-2025-SS-05028

# Table of contents

| Article 1 | Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications |
| Article 2 | General Acknowledgements and Assurances |
| Article 3 | Acknowledgement of Federal Funding from DHS |
| Article 4 | Activities Conducted Abroad |
| Article 5 | Age Discrimination Act of 1975 |
| Article 6 | Americans with Disabilities Act of 1990 |
| Article 7 | Best Practices for Collection and Use of Personally Identifiable Information |
| Article 8 | CHIPS and Science Act of 2022, Public Law 117-167 CHIPS |
| Article 9 | Civil Rights Act of 1964 – Title VI |
| Article 10 | Civil Rights Act of 1968 |
| Article 11 | Communication and Cooperation with the Department of Homeland Security and Immigration Officials |
| Article 12 | Copyright |
| Article 13 | Debarment and Suspension |
| Article 14 | Drug-Free Workplace Regulations |
| Article 15 | Duplicative Costs |
| Article 16 | Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX |
| Article 17 | Energy Policy and Conservation Act |
| Article 18 | Equal Treatment of Faith-Based Organizations |
| Article 19 | Anti-Discrimination |
| Article 20 | False Claims Act and Program Fraud Civil Remedies |
| Article 21 | Federal Debt Status |
| Article 22 | Federal Leadership on Reducing Text Messaging while Driving |
| Article 23 | Fly America Act of 1974 |
| Article 24 | Hotel and Motel Fire Safety Act of 1990 |
| Article 25 | John S. McCain National Defense Authorization Act of Fiscal Year 2019 |
| Article 26 | Limited English Proficiency (Civil Rights Act of 1964, Title VI) |
| Article 27 | Lobbying Prohibitions |
| Article 28 | National Environmental Policy Act |

| Article 29 | National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254 |
|---|---|
| Article 30 | Non-Supplanting Requirement |
| Article 31 | Notice of Funding Opportunity Requirements |
| Article 32 | Patents and Intellectual Property Rights |
| Article 33 | Presidential Executive Orders |
| Article 34 | Procurement of Recovered Materials |
| Article 35 | Rehabilitation Act of 1973 |
| Article 36 | Reporting Recipient Integrity and Performance Matters |
| Article 37 | Reporting Subawards and Executive Compensation |
| Article 38 | Required Use of American Iron, Steel, Manufactured Products, and Construction Materials |
| Article 39 | SAFECOM |
| Article 40 | Subrecipient Monitoring and Management |
| Article 41 | System for Award Management and Unique Entity Identifier Requirements |
| Article 42 | Termination of a Federal Award |
| Article 43 | Terrorist Financing |
| Article 44 | Trafficking Victims Protection Act of 2000(TVPA) |
| Article 45 | Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56 |
| Article 46 | Use of DHS Seal, Logo and Flags |
| Article 47 | Whistleblower Protection Act |
| Article 48 | Environmental Planning and Historic Preservation (EHP) Review |
| Article 49 | Applicability of DHS Standard Terms and Conditions to Tribal Nations |
| Article 50 | Acceptance of Post Award Changes |
| Article 51 | Disposition of Equipment Acquired Under the Federal Award |
| Article 52 | Prior Approval for Modification of Approved Budget |
| Article 53 | Indirect Cost Rate |
| Article 54 | Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification |
| Article 55 | Summary Description of Award and Subprograms |
| Article 56 | HSGP Performance Goal |

App. 027

| | |
|---|---|
| Article 57 | Operation Stonegarden Program Hold |
| Article 58 | OPSG Program Performance Goal |
| Article 59 | Funding Hold: Additional Information Required |
| Article 60 | Non-Applicability of Specific Agreement Articles |
| Article 61 | Period of Performance and Budget Period |
| Article 62 | State Homeland Security Program: Compliance with Federal Immigration Law |
| Article 63 | State Homeland Security Program: Non-Applicability of Specific Terms and Agreement Articles |
| Article 64 | State Homeland Security Program: Impact of San Francisco v. Trump Preliminary Injunction |
| Article 65 | State Homeland Security Program: Impact of State of Illinois v. FEMA Injunction |
| Article 66 | Urban Area Security Initiative: Compliance with Federal Immigration Law |
| Article 67 | Urban Area Security Initiative: Non-Applicability of Specific Terms and Agreement Articles |
| Article 68 | Urban Area Security Initiative: Impact of San Francisco v. Trump Preliminary Injunction |
| Article 69 | Urban Area Security Initiative: Impact of State of Illinois v. FEMA Injunction |
| Article 70 | Operation Stonegarden: Non-Applicability of Specific Terms and Agreement Articles |

App. 028

| Article 1 | **Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications**<br>I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed. |
|---|---|
| Article 2 | **General Acknowledgements and Assurances**<br>Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10. All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337. I. Recipients must cooperate with any DHS compliance reviews or compliance investigations. II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel. III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports. IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference. V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance. |
| Article 3 | **Acknowledgement of Federal Funding from DHS**<br>Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds. |
| Article 4 | **Activities Conducted Abroad**<br>Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals. |
| Article 5 | **Age Discrimination Act of 1975**<br>Recipients must comply with the requirements of the Age Discrimination Act of 1975, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 et seq.), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance. |

| | |
|---|---|
| **Article 6** | **Americans with Disabilities Act of 1990**<br>Recipients must comply with the requirements of Titles I, II, and III of the Americans with Disabilities Act, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities. |
| **Article 7** | **Best Practices for Collection and Use of Personally Identifiable Information**<br>(1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect. (2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively. |
| **Article 8** | **CHIPS and Science Act of 2022, Public Law 117-167 CHIPS**<br>(1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution. (2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include: (a) Award number, (b) Name of PI or Co-PI being reported, (c) Awardee name, (d) Awardee address, (e) AOR name, title, phone, and email address, (f) Indication of the report type: (i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made. (ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment. (iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the Family Educational Rights in Privacy Act. (3) Definitions. (a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements. (b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law. (c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations. (d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity. (e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor. |

**App. 030**

| | |
|---|---|
| **Article 9** | **Civil Rights Act of 1964 – Title VI**<br>Recipients must comply with the requirements of Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d et seq.), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7. |
| **Article 10** | **Civil Rights Act of 1968**<br>Recipients must comply with Title VIII of the Civil Rights Act of 1968, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 et seq.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.) |

| Article 11 | **Communication and Cooperation with the Department of Homeland Security and Immigration Officials** |
|---|---|

(1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: (a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity; (b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes; (c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance; (d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and (e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation. (2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award. (3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term.

| Article 12 | **Copyright** |
|---|---|

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so.

| Article 13 | **Debarment and Suspension** |
|---|---|

Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

| Article 14 | **Drug-Free Workplace Regulations**<br>Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government-wide implementation (2 C.F.R. Part 182) of the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 8101-8106). |
|---|---|
| Article 15 | **Duplicative Costs**<br>Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions. |
| Article 16 | **Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX**<br>Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 et seq.), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19. |
| Article 17 | **Energy Policy and Conservation Act**<br>Recipients must comply with the requirements of the Energy Policy and Conservation Act, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 et seq.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act. |
| Article 18 | **Equal Treatment of Faith-Based Organizations**<br>It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries. Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs. |

| Article 19 | **Anti-Discrimination**<br>Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4). (1) Definitions. As used in this clause – (a) DEI means "diversity, equity, and inclusion." (b) DEIA means "diversity, equity, inclusion, and accessibility." (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025. (d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin. (e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.(2) Grant award certification. (a) By accepting the grant award, recipients are certifying that: (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and (ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott. (iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration. (3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2). (4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law. |
|---|---|
| Article 20 | **False Claims Act and Program Fraud Civil Remedies**<br>Recipients must comply with the requirements of the False Claims Act, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.) |
| Article 21 | **Federal Debt Status**<br>All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129. |
| Article 22 | **Federal Leadership on Reducing Text Messaging while Driving**<br>Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513. |
| Article 23 | **Fly America Act of 1974**<br>Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List \| US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-aircarriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the International Air Transportation Fair Competitive Practices Act of 1974, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942. |

| | |
|---|---|
| **Article 24** | **Hotel and Motel Fire Safety Act of 1990**<br>Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the Hotel and Motel Fire Safety Act of 1990, 15 U.S.C. § 2225a. |
| **Article 25** | **John S. McCain National Defense Authorization Act of Fiscal Year 2019**<br>Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons. |
| **Article 26** | **Limited English Proficiency (Civil Rights Act of 1964, Title VI)**<br>Recipients must comply with Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help-department-supported-organizationsprovide-meaningful-access-people-limited and additional resources on http://www.lep.gov. |
| **Article 27** | **Lobbying Prohibitions**<br>Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL). |
| **Article 28** | **National Environmental Policy Act**<br>Recipients must comply with the requirements of the National Environmental Policy Act of 1969, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 et seq.) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans. |

| Article 29 | **National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254** |
|---|---|
| | (1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to: (a) cybersecurity; (b) foreign travel security; (c) research security training; and (d) export control training, as appropriate. (2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year." |

| Article 30 | **Non-Supplanting Requirement** |
|---|---|
| | Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose. |

| Article 31 | **Notice of Funding Opportunity Requirements** |
|---|---|
| | All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect. |

| Article 32 | **Patents and Intellectual Property Rights** |
|---|---|
| | Recipients are subject to the Bayh-Dole Act, 35 U.S.C. § 200 et seq. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14. |

| Article 33 | **Presidential Executive Orders** |
|---|---|
| | Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference. |

| Article 34 | **Procurement of Recovered Materials** |
|---|---|
| | States, political subdivisions of states, and their contractors must comply with Section 6002 of the Solid Waste Disposal Act, Pub. L. No. 89-272 (1965) (codified as amended by the Resource Conservation and Recovery Act at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition. |

| | |
|---|---|
| **Article 35** | **Rehabilitation Act of 1973** |
| | Recipients must comply with the requirements of Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. |
| **Article 36** | **Reporting Recipient Integrity and Performance Matters** |
| | If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference. |
| **Article 37** | **Reporting Subawards and Executive Compensation** |
| | For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference. |

| Article 38 | **Required Use of American Iron, Steel, Manufactured Products, and Construction Materials**<br>(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless: (a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States; (b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and (c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States. (2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project. (3) Waivers When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements. (a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that: (i) applying the domestic content procurement preference would be inconsistent with the public interest; (ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or (iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent. (b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office. (c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure \| FEMA.gov. (4) Definitions. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference. |
|---|---|
| Article 39 | **SAFECOM**<br>Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment \| CISA. |
| Article 40 | **Subrecipient Monitoring and Management**<br>Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333. |

| | |
|---|---|
| **Article 41** | **System for Award Management and Unique Entity Identifier Requirements**<br>Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference. |
| **Article 42** | **Termination of a Federal Award**<br>(1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons: (a) If the recipient fails to comply with the terms and conditions of the federal award; (b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or (c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities. (3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety. (4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination. (5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344200.345 after an award is terminated. |
| **Article 43** | **Terrorist Financing**<br>Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws. |
| **Article 44** | **Trafficking Victims Protection Act of 2000(TVPA)**<br>Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference. |
| **Article 45** | **Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56**<br>Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c. |
| **Article 46** | **Use of DHS Seal, Logo and Flags**<br>Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials. |

**Article 47**    **Whistleblower Protection Act**
Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712.

**Article 48**    **Environmental Planning and Historic Preservation (EHP) Review**
DHS/FEMA funded activities that could have an impact on the environment are subject to the FEMA EHP review process. This review does not address all federal, state, and local requirements. Acceptance of federal funding requires the recipient to comply with all federal, state, and local laws. DHS/FEMA is required to consider the potential impacts to natural and cultural resources of all projects funded by DHS/FEMA grant funds, through its EHP review process, as mandated by: the National Environmental Policy Act; Endangered Species Act; National Historic Preservation Act of 1966, as amended; Clean Water Act; Clean Air Act; National Flood Insurance Program regulations; and any other applicable laws, regulations and executive orders. General guidance for FEMA's EHP process is available on the DHS/FEMA Website. Specific applicant guidance on how to submit information for EHP review depends on the individual grant program. Applicants should contact their grant Program Officer to be put into contact with EHP staff responsible for assisting their specific grant program. The FEMA EHP review process must be completed before funds are released to carry out the proposed project, otherwise, DHS/FEMA may not be able to fund the project due to noncompliance with EHP laws, executive orders, regulations, and policies. DHS/FEMA may also need to perform a project closeout review to ensure the applicant complied with all required EHP conditions identified in the initial review. If ground disturbing activities occur during construction, the applicant will monitor the ground disturbance, and if any potential archaeological resources are discovered, the applicant will immediately cease work in that area and notify the pass-through entity, if applicable, and DHS/FEMA. EO 11988, Floodplain Management, and EO 11990, Protection of Wetlands, require that all federal actions in or affecting the floodplain or wetlands be reviewed for opportunities to relocate, and be evaluated for social, economic, historical, environmental, legal, and safety considerations. FEMA's regulations at 44 C.F.R. Part 9 implement the EOs and require an eight-step review process if a proposed action is in a floodplain or wetland or has the potential to affect or be affected by a floodplain or wetland. The regulation also requires that the federal agency provide public notice of the proposed action at the earliest possible time to provide the opportunity for public involvement in the decision-making process (44 C.F.R. § 9.8). Where there is no opportunity to relocate the federal action, FEMA is required to undertake a detailed review to determine what measures can be taken to minimize future damages to the floodplain or wetland.

**Article 49**    **Applicability of DHS Standard Terms and Conditions to Tribal Nations**
The DHS Standard Terms and Conditions are a restatement of general requirements imposed upon recipients and flow down to sub-recipients as a matter of law, regulation, or executive order. If the requirement does not apply to Tribal Nations, or there is a federal law or regulation exempting its application to Tribal Nations, then the acceptance by Tribal Nations, or acquiescence to DHS Standard Terms and Conditions does not change or alter its inapplicability to a Tribal Nation. The execution of grant documents is not intended to change, alter, amend, or impose additional liability or responsibility upon the Tribal Nations where it does not already exist.

**Article 50**  **Acceptance of Post Award Changes**
In the event FEMA determines that an error in the award package has been made, or if an administrative change must be made to the award package, recipients will be notified of the change in writing. Once the notification has been made, any subsequent requests for funds will indicate recipient acceptance of the changes to the award. Please email FEMA Grant Management Operations at: ASK-GMD@fema.dhs.gov for any questions.

**Article 51**  **Disposition of Equipment Acquired Under the Federal Award**
When original or replacement equipment acquired under this award is no longer needed for the original project or program or for other activities currently or previously supported by a federal awarding agency, the non-state recipient or subrecipient (including subrecipients of a State or Tribal Nation), must request instructions from FEMA to make proper disposition of the equipment pursuant to 2 C.F.R. section 200.313(e). State recipients must follow the disposition requirements in accordance with State laws and procedures. 2 C.F.R. section 200.313(b). Tribal Nations must follow the disposition requirements in accordance with Tribal laws and procedures noted in 2 C.F.R. section 200.313(b); and if such laws and procedures do not exist, then Tribal Nations must follow the disposition instructions in 2 C.F.R. section 200.313(e).

**Article 52**  **Prior Approval for Modification of Approved Budget**
Before making any change to the FEMA approved budget for this award, a written request must be submitted and approved by FEMA as required by 2 C.F.R. section 200.308. For purposes of non-construction projects, FEMA is utilizing its discretion to impose an additional restriction under 2 C.F.R. section 200.308(i) regarding the transfer of funds among direct cost categories, programs, functions, or activities. For awards with an approved budget where the federal share is greater than the simplified acquisition threshold (currently $250,000) and where the cumulative amount of such transfers exceeds or is expected to exceed ten percent (10%) of the total budget FEMA last approved, transferring funds among direct cost categories, programs, functions, or activities is unallowable without prior written approval from FEMA. For purposes of awards that support both construction and non-construction work, 2 C.F.R. section 200.308((f)(9) requires the recipient to obtain prior written approval from FEMA before making any fund or budget transfers between the two types of work. Any deviations from a FEMA approved budget must be reported in the first Federal Financial Report (SF-425) that is submitted following any budget deviation, regardless of whether the budget deviation requires prior written approval.

**Article 53**  **Indirect Cost Rate**
2 C.F.R. section 200.211(b)(16) requires the terms of the award to include the indirect cost rate for the federal award. If applicable, the indirect cost rate for the award is stated in the budget documents or other materials approved by FEMA and included in the award file.

| Article 54 | **Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification**<br>In addition to the DHS Standard Terms & Conditions regarding Required Use of American Iron, Steel, Manufactured Products, and Construction Materials, recipients and subrecipients of FEMA financial assistance for programs that are subject to BABAA must include a Buy America preference contract provision as noted in 2 C.F.R. section 184.4 and a self-certification as required by the FEMA Buy America Preference in FEMA Financial Assistance Programs for Infrastructure (FEMA Interim Policy #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). This requirement applies to all subawards, contracts, and purchase orders for work performed, or products supplied under the FEMA award subject to BABAA. |
|---|---|
| Article 55 | **Summary Description of Award and Subprograms**<br>The purpose of the FY 2025 HSGP is to support state and local efforts to prevent terrorism and other catastrophic events and to prepare the Nation for the threats and hazards that pose the greatest risk to the security of the United States. The HSGP provides funding to implement investments that build, sustain, and deliver the 32 core capabilities essential to achieving the National Preparedness Goal of a secure and resilient Nation. Among the five basic homeland security missions noted in the DHS Quadrennial Homeland Security Review, HSGP supports the goal to Strengthen National Preparedness and Resilience. The building, sustainment, and delivery of these core capabilities are not exclusive to any single level of government, organization, or community, but rather, require the combined effort of the whole community. This HSGP award consists of State Homeland Security Program (SHSP) funding in the amount of $28,759,327, Urban Area Security Initiative (UASI) funding in the amount of $77,028,653, Austin-Round Rock-Georgetown $11,980,549, Dallas-Fort Worth-Arlington $25,028,168, Houston-The Woodlands-Sugar Land $23,218,292, San Antonio-New Braunfels $16,801,644, and Operation Stonegarden (OPSG) funding in the amount of $33,708,000. |
| Article 56 | **HSGP Performance Goal**<br>In addition to the Biannual Strategy Implementation Report (BSIR) submission requirements outlined in the Preparedness Grants Manual, recipients must demonstrate how the grant-funded project addressed the core capability gap associated with this project and identified in the Threat and Hazard Identification and Risk Analysis (THIRA) or Stakeholder Preparedness Review (SPR) or sustains existing capabilities as applicable. The capability gap reduction must be addressed in the Project Description of the BSIR for each project. |
| Article 57 | **Operation Stonegarden Program Hold**<br>The recipient is prohibited from drawing down OPSG funding under this award or reimbursing OPSG subrecipients of this award until each unique, specific, or modified county level, tribal, or equivalent Operations Order or Fragmentary Order (FRAGO) has been reviewed by FEMA/GPD and Customs and Border Protection/United States Border Patrol (CBP/USBP). The recipient will receive the official notification of approval from FEMA/GPD. |

| **Article 58** | **OPSG Program Performance Goal** |
| | In addition to the Biannual Strategy Implementation Report (BSIR) submission requirements outlined in the Preparedness Grants Manual, recipients must demonstrate how the grant-funded project addressed the core capability gap associated with this project and identified in the Threat and Hazard Identification and Risk Analysis (THIRA) or Stakeholder Preparedness Review (SPR) or sustains existing capabilities as applicable. The capability gap reduction or capability sustainment must be addressed in the Project Description of the BSIR for each project. |
| **Article 59** | **Funding Hold: Additional Information Required** |
| | FEMA has placed a funding hold on this award, and $139,495,980 is on hold in the FEMA financial systems. The recipient is prohibited from obligating, expending, or drawing down the funds associated with the following Homeland Security Grant Program subprogram(s)/investment(s). To release the funding hold, the recipient must provide a detailed cost breakdown and justification for the investments/projects listed above. FEMA will rescind the funding hold upon its review and approval of the detailed cost breakdown and justification. If you have questions about this funding hold, please contact the DHS/FEMA Headquarters Preparedness Officer. |
| **Article 60** | **Non-Applicability of Specific Agreement Articles** |
| | Notwithstanding its inclusion in this award package, the following Agreement Article does not apply to this grant award: 1. Termination of a Federal Award. This provision is consistent with any terms of the Notice of Funding Opportunity that state Paragraph C.XL (Termination of a Federal Award) of the FY 2025 DHS Standard Terms and Conditions does not apply to this award. Refer to the Notice of Funding Opportunity for the terms governing award termination. |
| **Article 61** | **Period of Performance and Budget Period** |
| | Notwithstanding language in the Obligating Document or in the other terms of this award package, the Period of Performance and the Budget Period for this grant award is October 1, 2025 to September 30, 2026. The Period of Performance and Budget Period stated in the Obligating Document shall not apply. |

**Article 62**    **State Homeland Security Program: Compliance with Federal Immigration Law**
The following term applies to State Homeland Security Program funding under this award: 1. Prohibition a. The state, territorial, or local recipient is prohibited from being designated by the Department of Homeland Security or the Department of Justice as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state or territory as a sanctuary jurisdiction after the Department of Homeland Security makes a grant award, the state or territorial recipient is prohibited from making any financial obligations under the grant award on or after the date of designation until the Department of Homeland Security removes that designation. The Department of Homeland Security will suspend that portion of the grant award supported by risk-based funding and not make payments to the state or territorial recipient on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. This term and condition applies to the funding provided under the relative risk methodology pursuant to Section 2007 of the Homeland Security Act of 2002 (6 U.S.C. § 608) and does not apply to the minimum allocation to that state or territory required by Section 2004(e) of the Homeland Security Act of 2002 (6 U.S.C. § 605(e)). b. The state, territorial, or local recipient is prohibited from making subawards to a state, territorial, or local government that the Department of Homeland Security or Department of Justice has designated as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state, territorial, or local government as a sanctuary jurisdiction after the state, territorial, or local government recipient makes a subaward to that state, territorial, or local government, the state, territorial, or local recipient must suspend the subaward, the state, territorial, or local recipient must not make any additional payments to the state, territorial, or local government, and the state, territorial, or local government is prohibited from making any financial obligations under the subaward on and after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. This term and condition applies to all funding provided to the state or territorial recipient, including both the statutory minimum as well as risk-based funding allocations. c. The Department of Homeland Security designates a state, territory, or local government as a sanctuary jurisdiction if it fails to comply with that requirements set forth in paragraphs 2.a.i to v of this term and condition. 2. Certification a. The state, territorial or local recipient and subrecipients must certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity. ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes. iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be

a removable alien. v. They will not leak or otherwise publicize the existence of an immigration enforcement operation. b. The state or territorial recipient must require a state, territorial, or local government subrecipient to make the certification above before providing them with any funding under the subaward. 3. Materiality and Remedies for Noncompliance This term and condition is material to the Department of Homeland Security's decision to continue with this grant award and the Department of Homeland Security may take any remedy for noncompliance, including termination, if the state or territorial recipient or a local government subrecipient fails to comply with this term and condition.

| Article 63 | **State Homeland Security Program: Non-Applicability of Specific Terms and Agreement Articles** |
|---|---|

**State Homeland Security Program: Non-Applicability of Specific Terms and Agreement Articles**

The following term applies to State Homeland Security Program funding under this award: Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; and (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package.

**Article 64    State Homeland Security Program: Impact of San Francisco v. Trump Preliminary Injunction**

The following term applies to State Homeland Security Program funding under this award: Pursuant to the preliminary injunction order issued on August 22, 2025, in City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the preliminary injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article. If the preliminary injunction is stayed, vacated, or extinguished, the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article will immediately become effective.

**Article 65**    **State Homeland Security Program: Impact of State of Illinois v. FEMA Injunction**
Pursuant to the memorandum and order issued on September 24, 2025, in State of Illinois, et al. v. Federal Emergency Management Agency, et. al, No. 25-206 (D. R.I.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article. If the injunction is stayed, vacated, or extinguished, the "State Homeland Security Program: Compliance with Federal Immigration Law" Agreement Article will immediately become effective.

**Article 66**     **Urban Area Security Initiative: Compliance with Federal Immigration Law**

The following term applies to Urban Area Security Initiative funding under this award: 1. Prohibition a. The state, territorial, or local government recipient is prohibited from being designated by the Department of Homeland Security or Department of Justice as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates the state, territory, or local government as a sanctuary jurisdiction after the Department of Homeland Security has made the grant award, the state, territorial, or local government recipient is prohibited from making any financial obligations under the grant award on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. The Department of Homeland Security will suspend the grant award and not make payments to the state, local, or territorial recipient on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. b. The state, local, or territorial recipient is prohibited from making subawards to a state, local, or territorial government that the Department of Homeland Security or Department of Justice has designated as sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state, local, or territorial government as a sanctuary jurisdiction after the recipient makes a subaward, the recipient must suspend the subaward, the recipient must not make any additional payments to the subrecipient, and the subrecipient is prohibited from making any financial obligations under the subaward on and after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. c. The Department of Homeland Security designates a state, territory, or local government as a sanctuary jurisdiction if it fails to comply with that requirements set forth in paragraphs 2.a.i to v of this term and condition. 2. Certification a. The state, territorial or local recipient and subrecipients must certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity. ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes. iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien. v. They will not leak or otherwise publicize the existence of an immigration enforcement operation. b. The state or territorial recipient must require a state, territorial, or local government subrecipient to make the certification above before providing them with any funding under the subaward.

| Article 67 | **Urban Area Security Initiative: Non-Applicability of Specific Terms and Agreement Articles**<br>The following term applies to Urban Area Security Initiative funding under this award: Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; and (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package. |
|---|---|
| Article 68 | **Urban Area Security Initiative: Impact of San Francisco v. Trump Preliminary Injunction**<br>The following term applies to Urban Area Security Initiative funding under this award: Pursuant to the preliminary injunction order issued on August 22, 2025, in City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the preliminary injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Urban Area Security Initiative: Compliance with Federal Immigration Law" Agreement Article. If the preliminary injunction is stayed, vacated, or extinguished, the "Urban Area Security Initiative; Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |
| Article 69 | **Urban Area Security Initiative: Impact of State of Illinois v. FEMA Injunction**<br>The following term applies to Urban Area Security Initiative funding under this award: Pursuant to the memorandum and order issued on September 24, 2025, in State of Illinois, et al. v. Federal Emergency Management Agency, et. al, No. 25-206 (D. R.I.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Urban Area Security Initiative: Compliance with Federal Immigration Law" Agreement Article. If the injunction is stayed, vacated, or extinguished, the "Urban Area Security Initiative: Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |

| Article 70 | **Operation Stonegarden: Non-Applicability of Specific Terms and Agreement Articles** |
|---|---|
| | The following term applies to Operation Stonegarden funding under this award. Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; and (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package. |