**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>*Defendants.* | No. 1:25-cv-00495 |

**PLAINTIFF STATES' OPPOSITION
TO MOTION TO INTERVENE BY STATE OF TEXAS**

The State of Texas seeks to intervene to rehash the same legal arguments that defendants will make (and, indeed, have already made) to bolster the challenged agency actions. In these circumstances, where "a would-be intervenor seeks to appear alongside a governmental body in defense of the validity of some official action, a rebuttable presumption arises that the government adequately represents the interests of the would-be intervenor." *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020). Texas fails to rebut this presumption that the federal defendants will adequately represent its interests. Further, Texas delayed filing its motion to intervene until the original parties had already stipulated to a preliminary injunction and begun expedited summary-judgment briefing in the shadow of a rapidly approaching deadline to accept the federal grants at issue. *See* ECF 34. Permitting intervention now would thus inflict prejudice on Plaintiff States without any meaningful benefit to Texas. The Court should deny leave to intervene. If, however, the Court grants the motion, it should direct Texas to file a cross-motion for summary judgment and opposition to Plaintiff States' motion for summary judgment on or before November 20, 2025, consistent with the already agreed-upon schedule.

## BACKGROUND

The Homeland Security Grant Program ("HSGP") and the Emergency Management Performance Grant ("EMPG") deliver to the States over a billion dollars in critical emergency preparedness funds each year. *See* Am. Compl. ¶ 39. In issuing the HSGP and EMPG award documents for fiscal year 2025, defendants took three agency actions that Plaintiff States have challenged in this suit. The Reallocation Decision slashed nearly $242 million in HSGP funding to Plaintiff States—relative to the original HSGP award amounts in the August 1, 2025, notice of funding opportunity—and redistributed their funding to other States. *See id.* ¶¶ 98–106, 123–144. The Performance Period Decision reduced the period of performance on HSGP and EMPG awards to one year from the ordinary three years. *Id.* ¶¶ 153–160. And the Population Certification Requirement froze all EMPG funding unless and until States develop a methodology to determine their state population counts in real time. *Id.* ¶¶ 168–172.

This case began in an emergency posture on September 29, 2025, two days after defendants implemented the Reallocation Decision without warning over a weekend. (The awards were dated September 26, but they issued on September 27. *Id.* ¶ 125.) Plaintiff States filed a complaint and motion for a temporary restraining order ("TRO") to freeze matters in place before the end of the federal fiscal year. ECF 1, 3. Defendants appeared at the TRO hearing on September 30 and presented argument opposing entry of the TRO. The Court granted the motion and entered a TRO, ECF 14, and further ordered the Parties "to meet and confer and advise the Court by close of business on 10/3/2025 regarding Preliminary Injunction/TRO." Text Order Dated Sept. 30, 2025. These events were immediately the subject of national news coverage.[1]

[1] *See, e.g.*, Grace Ashford & Stefanos Chen, *Trump Cuts to Counterterrorism Funds for New York Reach $187 Million*, N.Y. Times (Sept. 30, 2025), https://tinyurl.com/5ah55ktn; Dietrich Knauth, *Judge Blocks Trump From Cutting Counterterrorism Funds For Democratic-Led States*, Reuters (Sept. 30, 2025), https://tinyurl.com/nsrf6t67.

After the TRO issued, the parties presented further argument through additional briefs on the scope of the order. ECF 27, 28, 30. That dispute centered on how the TRO should address the HSGP awards made to non-plaintiff States, including Texas, with defendants pressing for narrower relief to diminish the impact on non-party States. ECF 27 at 4; ECF 30 at 2. The Court ultimately adopted a proposal made by Plaintiff States to narrow the original TRO to allow non-party States to receive their original awards as planned before the Reallocation Decision, ECF 31 ¶ 2, whereas defendants' proposal would have preserved Texas's post-reallocation award, ECF 30-1.

At the same time, throughout the month of October, and pursuant to the Court's order at the TRO hearing, the parties diligently negotiated the next steps in this matter. As reflected in their stipulation filed on October 24, the parties reached agreement to convert the TRO to a preliminary injunction and proceed to expedited summary-judgment briefing. *See* ECF 34. Defendants have agreed to extend the deadline for accepting HSGP and EMPG awards through December 31. *Id.* ¶ 9. That end-of-year deadline, combined with Plaintiff States' urgent need to access funds under these critical emergency preparedness programs, requires Plaintiff States to press forward as quickly as possible with seeking relief from this Court. The stipulation accordingly follows a tight schedule under which briefing on the summary-judgment motions would close by November 28, 2025, *id.* ¶¶ 6–8, including an eight-day response deadline for Plaintiff States over the Thanksgiving holiday, *id.* ¶ 8.

On November 10, 2025, six weeks after Plaintiff States filed this case and moved for an emergency TRO, Texas moved to intervene. Texas wishes to preserve its allocation as reflected in its HSGP award, after the Reallocation Decision. ECF 42-1 at 7–8. It concedes that "Texas and the existing federal Defendants do share the same ultimate objective of defending the HSGP award amounts." *Id.* at 9. As to the other challenged agency actions, Texas suggests in its motion that it

might agree with Plaintiff States that the Performance Period Decision was unlawful, *id.*, but Texas's proposed answer says the opposite, denying Plaintiff States' allegations about the Performance Period Decision wholesale, ECF 42-2 ¶¶ 153–158, 160–165, 225, 227–232. Texas does not mention the Population Certification Requirement in its motion, but again the proposed answer takes defendants' side in every respect. *Id.* ¶¶ 167–180, 233–255.

## ARGUMENT

Texas's requests to intervene as of right under Civil Rule 24(a) and by permission under Rule 24(b) are both addressed to the Court's discretion. *See R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7–8 (1st Cir. 2009). The Court should exercise its discretion to decline those requests. The First Circuit presumes "that the government will adequately defend its actions." *State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). Texas carries "the burden of persuasion" to rebut this presumption by "'a strong affirmative showing' that the [defendant] agency … is not fairly representing [Texas's] interests." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) (quoting *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)). Texas does not carry its burden. Moreover, its motion was untimely, coming six weeks after Texas learned its interests could be affected and after the original parties had negotiated a path to the timely resolution of this matter. In these circumstances, the Court should not upend the expedited briefing schedule to which the parties have already stipulated, with Texas's interests already represented in the dispute. The Court should at most grant Texas leave to file an amicus brief alongside defendants' summary-judgment motion, which would enable Texas to express its views on the Reallocation Decision.

### I. Intervention As Of Right Should Be Denied.

"Rule 24(a) provides that an applicant seeking intervention as of right must meet four requirements. First, the application must be timely. Second, the applicant must have a direct and

substantial interest in the subject matter of the litigation. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest. Finally, the applicant's interest must be inadequately represented by existing parties." *Caterino v. Barry*, 922 F.2d 37, 39–40 (1st Cir. 1990). "The failure to satisfy any one of [these preconditions] dooms intervention." *Patch*, 136 F.3d at 204. Texas's motion fails to establish both the last and first conditions: It does not identify any specific reasons that defendants do not adequately represent its asserted interests, and its motion was not timely filed.

**A. Texas Fails To Disprove That Defendants Adequately Represent Its Interests.**

The First Circuit's "decisions have proceeded on the assumption, subject to evidence to the contrary, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor." *U.S. Fish & Wildlife Serv.*, 262 F.3d at 19. Defendants have not yet taken a position on Texas's motion, but the presumption will apply "even if the governmental defendant itself consents to intervention." *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000). Texas bears "the burden of overcoming the presumption" that the federal defendants will adequately represent Texas's interests in defending the Reallocation Decision. *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999). It has not carried that burden.

To start, the presumption applies with full force here because, by all indications, defendants and Texas are "in legal lockstep." *Patch*, 136 F.3d at 208. Federal defendants have already proven through concrete action that they will advocate for the interests of Texas and other non-plaintiff States. After the TRO issued, defendants immediately initiated a round of briefing on the scope of the TRO with the goal of "prevent[ing] harm to non-parties." ECF 27 at 4. Defendants explicitly sought to prevent "intervention in this lawsuit" by affirmatively safeguarding the interests of non-parties. *Id.* For its part, Texas admits that its interests are aligned with defendants because they

"share the same ultimate objective." ECF 42-1 at 9. Texas's proposed answer throughout contends that the federal government has unfettered discretion to allocate federal funds however it sees fit, adopting an expansive view of federal executive power. *See, e.g.*, ECF 42-2 ¶ 38 *et seq.* (Texas denies repeatedly "that Plaintiff States have a right to rely on future federal grants under applicable law"); *id.* p. 24 ¶ III (Texas contends that the Executive Branch enjoys total "discretion to allocate funds appropriated by Congress for national defense and security"). "This symmetry of interest … ensures adequate representation." *Patch*, 136 F.3d at 208.

Texas offers two arguments to overcome the presumption, but both fail. First, Texas contends that it will present a defense of the Reallocation Decision tailored to Texas's HSGP grant: "Texas is focused on defending the specific $139 million grant to Texas," and it will present "unique facts and circumstances facing Texas that justify that award." ECF 42-1 at 8. But the First Circuit has rejected the argument that interests of this sort are distinct: "The general notion that the [government] represents 'broader' interests at some abstract level is not enough." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999). A bare assertion that a would-be intervenor has "a more specialized interest," where the government and intervenor "have the same ultimate goal of upholding and defending" the challenged action, does not suffice. *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982). Adequate representation does not require "perfect identity of motivational interests between the movant-intervenor and the government." *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021).

Texas's assertion that it will offer "unique facts and circumstances" regarding itself to defend the Reallocation Decision, ECF 42-1 at 8, does not overcome the presumption of adequacy. To the extent Texas's suggestion is that it will make a different legal argument than defendants will, Texas would need to make a specific showing that "pursuit of the shared goal obviously calls

for [an] argument to be made" that defendants have disavowed or avoided. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 476 (1st Cir. 2015). Texas has not even tried to identify a specific failing in defendants' litigation position; again, defendants have been "zealously interested in upholding the validity of" the Reallocation Decision. *Mass. Food Ass'n*, 197 F.3d. at 567. And to the extent Texas intends to present facts that would support the Reallocation Decision, it forgets that, in this suit brought under the Administrative Procedure Act, "judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quotation omitted). Texas cannot conjure up some additional basis for the Reallocation Decision that defendants themselves are not able to present to the Court. *See U.S. Fish & Wildlife Serv.*, 262 F.3d at 20 (denying intervention where "[n]o one has suggested that the record of agency action will not permit the argument to be made that [would-be intervenors] wish to pursue"). Any Texas-specific reasons for reallocation that defendants did not consider would be "new rationalizations" that "should be disregarded" when assessing APA compliance. *Sierra Club v. Marsh*, 976 F.2d 763, 772–73 (1st Cir. 1992).

Texas's second argument to rebut the presumption of adequate representation is even weaker. Texas notes that it, like Plaintiff States, "is adversely affected [by] Defendants' decision to shorten the length of its HSGP grants from three years to one year"—the Performance Period Decision—posing a "potential adversity of interest." ECF 42-1 at 9. But the reduction of the period of performance is not the interest that Texas invokes in seeking to intervene. Texas's invoked interest is the money that it won in the Reallocation Decision. *Id.* at 7–8. The existing defendants "adequately represent *that interest*." Fed. R. Civ. P. 24(a)(2) (emphasis added). Texas cites no authority for the counter-intuitive idea that disagreement about one claim can permit intervention

to litigate a different, unrelated claim. In any event, Texas also takes inconsistent positions on the Performance Period Decision. Texas's proposed answer, far from contesting the Performance Period Decision, aligns wholly with defendants and against Plaintiff States, denying all allegations about the unlawfulness and detrimental impact of the Performance Period Decision. ECF 42-2 ¶¶ 153–158, 160–165, 224–225, 227–232. The Court, in the exercise of its discretion, need not credit Texas's opportunistic invocation of the Peformance Period Decision in its brief when Texas's proposed pleading reveals that it intends to side with defendants on that issue as well.

Finally, Texas cites some district court decisions from outside this circuit that have allowed States to intervene alongside the federal government. ECF 42-1 at 8–9. But to the extent Texas contends that these cases weigh in its favor because "Federal Defendants' duty runs to the interests of the American people as a whole," whereas "the state-intervenors will primarily consider the interests of their own citizens," *WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017), that is misplaced. The First Circuit requires a more concrete showing than a "general notion" that the government "represents 'broader' interests at some abstract level." *Daggett*, 172 F.3d at 112; *see also NAACP v. New York*, 413 U.S. 345, 368 (1973) (affirming denial of intervention where "appellants' claim of inadequate representation by the United States was unsubstantiated"). Far from supporting Texas's claim to inadequate representation, *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), exemplifies the more specific showing needed: It held that "in this instance [federal] governmental representation is not adequate" based on the specific "circumstances" of a conflict between the private and public interests at issue, *id.* at 45. Moreover, as the First Circuit has later noted, "in *Conservation Law Foundation*, the government did not answer or defend the case but simply agreed to a consent decree that imposed additional burdens on … intervenors." *U.S. Fish & Wildlife Serv.*, 262 F.3d at 20.

Here, in contrast to *Conservation Law Foundation*, the normal presumption applies. The existing federal defendants have "conducted a robust defense, and [Texas] ha[s] not identified even a single shortcoming in [their] handling of the litigation." *T-Mobile*, 969 F.3d at 40. "A showing of inadequate representation cannot rest on so flimsy a foundation." *Id.* If Texas wishes to present "unique facts and circumstances" that could justify its reallocation, ECF 42-1 at 8, Plaintiff States have no objection to the Court's granting Texas leave to file an amicus brief, if it does so on defendants' existing November 20, 2025, deadline. *See Mass. Food Ass'n*, 197 F.3d at 567 (if a prospective intervenor wishes merely to offer "legal arguments" to defend a government defendant, it can do so by filing an amicus brief).

**B. Texas's Motion To Intervene Was Untimely.**

A motion to intervene must also be "timely." Fed. R. Civ. P. 24(a). "Rule 24's timeliness requirement is of great importance." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992). The First Circuit applies a four-factor test: "(1) the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiocratic circumstances which, fairly viewed, militate for or against intervention." *Id.* at 1231; *see Culbreath v. Dukakis*, 630 F.2d 15, 20–24 (1st Cir. 1980). An "assessment of prejudice in the context of the particular litigation" weighs heavily in the analysis, and "unjustified delay for a relatively short period of time can support denial of intervention where the prejudice to the other litigants would be significant." *Puerto Rico Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 15 (1st Cir. 2011). "[A] district court's disallowance of intervention based on a finding of untimeliness is entitled to considerable deference." *Id.* at 14.

Texas's delay here ran to six weeks. Plaintiff States filed their complaint and TRO motion on September 29, 2025. ECF 1, 3. The clock started running then: "the law contemplates that a party must move to protect its interest no later than when it gains *some actual knowledge that a measurable risk exists*." *Banco Popular*, 964 F.2d at 1231 (emphasis added); *see also NAACP*, 413 U.S. at 366 (potential intervenors "knew or should have known of the pendency" of the suit based on news coverage of a public controversy); *R & G Mortg.*, 584 F.3d at 8 (clock starts at "actual or constructive notice of the impending threat"). Texas moved to intervene six weeks later on November 10. ECF 42. "[T]here are no ironclad rules about just how celeritously, in terms of days or months, a person must move to protect himself." *R & G Mortg.*, 584 F.3d at 8. But, in the context of this emergency litigation concerning billions of dollars of federal funds, six weeks was a long time to wait. *See NAACP*, 413 U.S. at 367 (holding that a 17-day delay was too long where "it was incumbent upon the appellants, at that stage of the proceedings, to take immediate affirmative steps to protect their interests"); *R & G Mortg.*, 584 F.3d at 9 n.4 (holding that denial of intervention based on a seven-week delay would be within the discretion of the trial court).

Importantly, intervention at this stage would prejudice Plaintiff States because the original parties already negotiated an orderly path to resolution of Plaintiff States' claims while Texas was voluntarily absent. It was no foregone conclusion that defendants would stipulate to a preliminary injunction, permitting this case to move to expedited cross-motions for summary judgment. *See* ECF 34. Had Texas moved to intervene earlier, it could have tried to join those negotiations—but it chose not to. Plaintiff States have now given up the potential benefit of moving immediately for a preliminary injunction in exchange for defendants' extension of award acceptance deadlines through the end of 2025. *Id.* ¶ 9. But this case remains in an urgent posture, with Plaintiff States facing that impending deadline to accept critical emergency-preparedness funds.

In these circumstances, Texas's six-week delay looms larger than it might in the mine-run civil lawsuit. Texas's "belated motion to intervene, if granted, could cause substantial delay," as it "might well seek to reopen negotiations and discuss areas already covered by the parties or … even seek to prevent the case from going to summary judgment." *United Nuclear*, 696 F.2d at 143; *see also Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014) ("[D]elay caused by a potential intervenor was sufficient to constitute prejudice where a decision on the merits was pending."). Defendants have themselves stated that the intervention of non-parties "would likely complicate and prolong this case." ECF 27 at 5. In the exigent circumstances of this matter, Texas needed to move faster. *See R & G Mortg.*, 584 F.3d at 7 ("As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies.").

On the other side of the ledger, the prejudice to Texas caused by denying intervention is nonexistent. Texas "is not likely to suffer any prejudice at all if not allowed to intervene because," as discussed above, "the [federal government] adequately represents [Texas's] alleged interests." *United Nuclear*, 696 F.3d at 143. And any potential prejudice to Texas could, again, be mitigated by permitting it to file an amicus brief. *See Mass. Food Ass'n*, 197 F.3d at 567. Nor are there any special considerations militating in favor of allowing intervention. *See* ECF 42-1 at 6 (Texas identifies none). The motion to intervene was untimely.

**II. Permissive Intervention Should Also Be Denied.**

Texas's failure to establish the requisites for intervention as of right "effectively disposes of the permissive intervention question as well." *Caterino*, 922 F.2d at 39. As to timeliness, "whether the intervention is of right or is permissive, it must be timely." *Cadle Co. v. Schlichtmann, Conway, Crowley & Hugo*, 338 F.3d 19, 21 (1st Cir. 2003). So "when a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to

the former normally applies to the latter." *R & G Mortg.*, 584 F.3d at 11. Likewise, permissive intervention is appropriately denied where existing parties adequately represent the would-be intervenor's interest. *See T-Mobile*, 969 F.3d at 41; *Mass. Food Ass'n*, 197 F.3d at 568; *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992). If "the movant-intervenors [do] not show that the government would not adequately protect their interests," then "the amicus procedure," rather than permissive intervention, "provides sufficient opportunity for them to present their view." *Victim Rts. L. Ctr.,* 988 F.3d at 564.

## CONCLUSION

Plaintiff States respectfully request that the Court deny the State of Texas leave to intervene in this matter.

November 14, 2025

Respectfully submitted,

**ROB BONTA**
ATTORNEY GENERAL OF CALIFORNIA

Michael L. Newman
*Senior Assistant Attorney General*
Joel Marrero
Lee I. Sherman
James E. Stanley
*Supervising Deputy Attorneys General*
Luke Freedman
Delbert Tran
*Deputy Attorneys General*

/s/ Deylin Thrift-Viveros
Deylin Thrift-Viveros
*Deputy Attorney General*
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
(213) 269-6000
deylin.thriftviveros@doj.ca.gov

*Attorneys for the State of California*

**KWAME RAOUL**
ATTORNEY GENERAL OF ILLINOIS

/s/ Alex Hemmer
Alex Hemmer
*Deputy Solicitor General*
Christopher G. Wells
*Chief of the Public Interest Division*
Paul Berks
*Complex Litigation Counsel*
R. Sam Horan
Michael M. Tresnowski
R. Henry Weaver
*Assistant Attorneys General*
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(773) 590-7932
alex.hemmer@ilag.gov

*Attorneys for the State of Illinois*

**MATTHEW J. PLATKIN**
ATTORNEY GENERAL OF NEW JERSEY

/s/ Shankar Duraiswamy
Shankar Duraiswamy
*Deputy Solicitor General*
Mayur P. Saxena
*Assistant Attorney General*
Olivia C. Mendes
Phoenix N. Meyers
Daniel Resler
*Deputy Attorneys General*
New Jersey Office of Attorney General
25 Market Street, PO Box 093
Trenton, NJ 08625-0093
(609) 376-2745
shankar.duraiswamy@law.njoag.gov

*Attorneys for the State of New Jersey*

**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini (R.I. Bar No. 8486)
*Chief, Civil Division*
*Special Assistant Attorney General*
Paul Meosky (RI Bar No. 10742)
*Special Assistant Attorney General*
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 1882
ksabatini@riag.ri.gov

*Attorneys for the State of Rhode Island*

**WILLIAM TONG**
ATTORNEY GENERAL OF CONNECTICUT

/s/ Ashley Meskill
Ashley Meskill
*Assistant Attorney General*
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
ashley.meskill@ct.gov

*Attorneys for the State of Connecticut*

**KATHLEEN JENNINGS**
ATTORNEY GENERAL OF DELAWARE

/s/ Ian R. Liston
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Rose Gibson
*Assistant Attorney General*
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Attorneys for the State of Delaware*

**BRIAN L. SCHWALB**
ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA

/s/ Mitchell P. Reich
Mitchell P. Reich
*Senior Counsel to the Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Attorneys for the District of Columbia*

**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF MASSACHUSETTS

/s/ Katherine Dirks
Katherine Dirks
*Chief State Trial Counsel*
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**KEITH ELLISON**
ATTORNEY GENERAL OF MINNESOTA

/s/ Brian S. Carter
Brian S. Carter
*Special Counsel*
Minnesota Attorney General's Office
445 Minnesota Street
Suite 1400
St. Paul, MN 55101
(651) 757-1010
brian.carter@ag.state.mn.us

*Attorneys for the State of Minnesota*

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

/s/ Stephen Thompson
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Stephen C. Thompson
*Special Counsel*
Julie Dona
*Special Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-6183
stephen.thompson@ag.ny.gov

*Attorneys for the State of New York*

**JENNIFER SELBER**
GENERAL COUNSEL

/s/ Jacob B. Boyer
Jacob B. Boyer
*Deputy General Counsel*
Pennsylvania Office of the Governor
30 North 3rd Street
Suite 200
Harrisburg, PA 17101
jacobboyer@pa.gov

*Attorneys for Governor Josh Shapiro*

**CHARITY R. CLARK**
ATTORNEY GENERAL OF VERMONT

/s/ Julio A. Thompson
Jonathan T. Rose
*Solicitor General*
Julio A. Thompson
*Co-Director, Civil Rights Unit*
Officer of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-5519
julio.thompson@vermont.gov

*Attorneys for the State of Vermont*

**NICHOLAS W. BROWN**
ATTORNEY GENERAL OF WASHINGTON

/s/ Tyler Roberts
Tyler Roberts
*Assistant Attorney General*
Washington State Office of the Attorney General
800 Fifth Avenue
Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Tyler.Roberts@atg.wa.gov

*Attorneys for the State of Washington*